UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TERRORIST ATTACKS ON<br>SEPTEMBER 11, 2001 | Civil Action No.<br>03 MDL 1570 (GBD) |
| FIONA HAVLISH, in her own right<br>and as Executrix of the ESTATE OF<br>DONALD G. HAVLISH, JR., Deceased, et al., | |
| Plaintiffs,<br>v. | |
| USAMA BIN LADEN, | CIVIL ACTION NO. 03-CV-9848 - |
| RCC<br>AL QAEDA/ISLAMIC ARMY,<br>an unincorporated association, *et al* | Case Transferred from the United<br>States District Court for the<br>District of Columbia |
| FOREIGN STATE DEFENDANTS, | Case Number   1:02CV00305 |
| THE ISLAMIC REPUBLIC OF IRAN,<br>ALI AKBAR HASHEMI RAFSANJANI<br>Previously Identified and Served as<br>Unidentified Terrorist 1, | |
| IRANIAN MINISTRY OF<br>INFORMATION AND SECURITY, | |
| THE ISLAMIC REVOLUTIONARY<br>GUARD CORPS, | **AFFIDAVIT OF<br>EDGAR A. ADAMSON** |
| HEZBOLLAH,<br>an unincorporated association, | |
| THE IRANIAN MINISTRY OF PETROLEUM, | |
| THE NATIONAL IRANIAN<br>TANKER CORPORATION | |

*Affidavit of Edgar A. Adamson, page 1*

Previously identified as Unidentified Terrorist 2, :

THE NATIONAL IRANIAN OIL CORPORATION, :

THE NATIONAL IRANIAN GAS COMPANY :
Previously Identified as Unidentified Terrorist 4, :

IRAN AIRLINES :
Previously Identified as Unidentified Terrorist 5, :

THE NATIONAL IRANIAN
PETROCHEMICAL COMPANY :
Previously Identified as Unidentified Terrorist 6, :

IRANIAN MINISTRY OF
ECONOMIC AFFAIRS AND FINANCE
IRANIAN MINISTRY OF COMMERCE, :

IRANIAN MINISTRY OF DEFENSE
AND ARMED FORCES LOGISTICS, :

THE CENTRAL BANK OF THE
ISLAMIC REPUBLIC OF IRAN, *et al.* :
Previously Identified as Unidentified Terrorist 7, :

     Defendants. :

## *Affidavit of Edgar A. Adamson*

I, **Edgar A. Adamson,** being duly sworn, do hereby swear and affirm under penalty of perjury that the contents of this Affidavit are true and correct to the best of my knowledge, information, and belief.

### Qualifications of the Witness

1.  My name is Edgar A. Adamson. I am an adult citizen of the United States and reside in Vienna, Virginia.

2. My occupation is in the field of professional law enforcement. I retired from professional law enforcement in 2003, after 33 years, but I continue to be involved in the field as a consultant and as a contractor in matters of law enforcement and security.

3. I possess a graduate degree from the City University of New York – John Jay College of Criminal Justice.

4. I make this affidavit on the basis of my own personal knowledge.

5. INTERPOL is an international criminal police organization, in fact, the world's largest international police organization, with 188 member countries. Its headquarters are in Lyon, France. The correct full name of the organization is "The International Criminal Police Organization – INTERPOL."

6. The current General Secretary of INTERPOL is an American, Ronald Noble. He is serving his second five-year term, the first having started in 2000.

7. Created in 1923, INTERPOL facilitates cross-border police co-operation, and supports and assists all organizations, authorities, and services whose mission is to prevent or combat international crime.

8. INTERPOL aims to facilitate international police co-operation even where diplomatic relations do not exist between particular countries.

9. Action is taken by INTERPOL within the limits of existing laws in different countries and in the spirit of the Universal Declaration of Human Rights. INTERPOL's constitution prohibits "any intervention or activities of a political, military, religious or racial character."

10. Each of INTERPOL's member countries task professional law enforcement officers

of the country's national police to a National Central Bureau ("NCB") to supervise INTERPOL-related cases.

11. The United States does not have a national police force, so the U.S. National Central Bureau – INTERPOL is located in the U.S. Department of Justice and is staffed by law enforcement professionals from more than 15 different law enforcement agencies. (The number actually varies: for example, today there are 14 federal agencies involved as well as the District of Columbia Metropolitan Police Department.) Prominent among the agencies involved is the Federal Bureau of Investigation ("FBI"), the Drug Enforcement Administration ("DEA"), Immigration and Customs Enforcement ("ICE"), and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), among others. There is also a permanent staff of analysts, translators, and information technology specialists, among others.

12. I served 11 years at the U.S. National Central Bureau – INTERPOL and was its Deputy Director from March 1997 until 2000. I was in charge of the US NCB as its Director from 2000 until August 2003.

13. All 50 states, the District of Columbia, and 14 of the largest cities in the U.S., have a central office that interfaces directly with the U.S. National Central Bureau – INTERPOL.

14. INTERPOL allows the national police of member countries to communicate directly, police-to-police via their respective National Central Bureau, without having to work through the country's foreign policy ministry, or, in the case of the U.S., the State Department.

15. INTERPOL has a system of "notices" that are issued regarding persons wanted by the police of one or more countries. At the request of member countries, INTERPOL circulates internationally electronic notices containing identification details and judicial information about wanted criminals.

16. The notices are noted by colors, with a "Red Notice" being the most well known.[1] A Red Notice is <u>not</u> an international arrest warrant. Rather, it is an international "look-out" notice that is meant to alert police of member countries that another country has issued an arrest warrant and asking the police to stop the subject individual with an eye toward possible extradition to the country that has the outstanding arrest warrant.

17. A Red Notice identifies the crime(s) or type of crime(s) involved, indicates whether the issuing country wants the person extradited (and is willing to pay for it), and requests, in effect, whether the subject in country, and, if not or if unknown, to be on the lookout for the individual.

18. Thus, a Red Notice is a notice that the person(s) concerned is/are wanted by national jurisdictions or by International Criminal Tribunals, where appropriate, and the Red Notice is intended to help police identify or locate these individuals with a view to their arrest and extradition.

19. The country looking for the subject person(s) fills out an application for a Red Notice, and the notice itself is issued by the General Secretariat of INTERPOL in Lyon.

20. Prior to, or at the same time that a Red Notice application is forwarded to the

---

[1] For example, a "Green Notice" is for a missing person. A "Black Notice" signifies a body that has been found. There are several other colors used as well, signifying other reasons why the subject person is of interest to the police in the issuing country.

General Secretariat, a message is often initiated to all member countries to "be on the lookout" for one or more persons of interest. This message is called a "diffusion." A diffusion does not necessarily mean a Red Notice application is being made, but it does mean that a country has an interest in locating an individual for a stated crime.

21. In the cases of the bombings of the Israeli Embassy (killing 29 persons and injuring more than 250) and the Israeli-Argentine Mutual Association (AMIA) building (killing 86 persons and injuring more than 250) in Buenos Aires, Argentina in 1992 and 1994, respectively, there was a great deal of maneuvering and politics surrounding the issuance of Red Notices for those wanted for the crimes.

22. I know that, in November 2006, the Argentine authorities originally applied for nine persons to be named in Red Notices in connection with the AMIA bombing.

23. The Argentine's application was vigorously contested by the INTERPOL National Central Bureau for Iran, arguing that the issuance of Red Notices would violate INTERPOL's constitution and rules.

24. Iran contacted the INTERPOL General Secretariat "to appeal" this matter after being alerted to it, possibly by a diffusion, and characterized it as a "political issue" in violation of INTERPOL rules due to high political figures being implicated in the Buenos Aires crimes.

25. This challenge created a dispute between the NCBs of two member countries concerning the proper use of the notices system, which triggered application of INTERPOL's dispute resolution process under which the Executive Committee based its conclusions.

26. Other than the effort by Iran, described above, I have never before, or since, heard of any similar procedural obstacle being raised to block issuance of a Red Notice by INTERPOL.

27. There followed two years of intensive negotiations between Iran and the world law enforcement community within and around the INTERPOL notice-issuing process.

28. At Iran's insistence, in November 2006, the General Secretariat rejected the Argentine's application for Red Notices for several Iranian governmental leaders involved in the Buenos Aires bombings.

29. However, in March 2007, INTERPOL's Executive Committee unanimously decided to authorize the issuance of six of the nine Red Notices requested by the Argentines. The three Iranians who were excluded from the Red Notices were former President of Iran, Ali Akbar Rafsanjani, former Minister of Foreign Affairs, Ali Akbar Velayati, and former Iranian Ambassador to Argentina, Hadi Soleimanpour.

30. Iran appealed this decision for Red Notices involving the six Iranian government leaders, again, something I had not encountered at INTERPOL. Publication of the Red Notices was suspended until the matter could be put before the 2007 General Assembly.

31. In October 2007, the General Assembly met in Marrakesh, Morocco. The delegates of the General Assembly upheld the decision by INTERPOL's Executive Committee to issue six out of the nine Red Notices requested by the Argentines in connection with the 1994 bombing of the AMIA building in Buenos Aires.

32. Finally, in January 2008, the six Red Notices were finally issued for the following: Imad Fayez Moughnieh (Hizballah terrorism commander), Ali Fallahijan

(MOIS Minister), Mohsen Rabbani (Iranian cultural attaché), Ahmad Reza Asghari (senior MOIS official), Ahmad Vahidi (Qods Force commander) and Mohsen Rezai (IRGC commander).

33. Red Notices were never issued for the other three persons, all high government officials of Iran, who were sought by Argentina for the AMIA bombing: Ali Akbar Rafsanjani (President of Iran), Ali Akbar Velayati (Iranian Foreign Minister), and Hadi Soleimanpour (Iran's Ambassador to Argentina).

**Further the Affiant Sayeth Not.**

This Affidavit is comprised of 33 separately numbered paragraphs.

I, EDGAR A. ADAMSON, being duly sworn, do hereby swear and affirm under penalty of perjury that the contents of this Affidavit are true and correct to the best of my knowledge, information, and belief.

_____
Edgar A. Adamson

Sworn to before me this the 1st day of November, 2010, in Washington, D.C.

_____
Notary Public
Notary Public, District of Columbia
My Commission Expires November 14, 2014