# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| *In re Terrorist Attacks on September 11, 2001* | 03 MDL 1570 (RCC) |
|---|---|
| | ECF Case |

This document relates to:

*Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.*, No. 03-CV-5738
*Thomas Burnett, Sr., et al. v. Al Baraka Invest. & Develop. Corp., et al.*, No. 03-CV-9849
*Federal Insurance Co., et al. v. Al Qaida, et al.*, No. 03-CV-6978
*Continental Casualty Co. et al, v. Al Qaeda, et al.*, No. 04-CV-5970
*New York Marine & General Insurance Co. v. Al Qaida, et al.*, No. 04-CV-6105
*Euro Brokers Inc., et al., v. Al Baraka, et al.*, No. 04-CV-7279
*WTC Properties LLC, et al. v. Al Baraka, et al.*, No. 04-CV-7280

## PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANTS MOHAMED ALI MUSHAYT <u>AND THE MUSHAYT FOR TRADING ESTABLISHMENT</u>

September 20, 2005

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. iii

I.    INTRODUCTION ....................................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................................... 1

      A.  Mushayt Provided Material Support To Al Qaeda ........................................... 1

      B.  Al Qaeda Openly And Publicly Announced Its Terrorist Agenda And
          Targeted The United States .............................................................................. 2

III.  APPLICABLE LAW ................................................................................................... 3

      A.  Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's Prima Facie
          Showing Of Personal Jurisdiction May Be Established Solely By Legally
          Sufficient Allegations Of Jurisdiction ............................................................ 3

      B.  A Motion To Dismiss Under Rule 12(B)(6) Merely Tests The Legal
          Feasibility Of The Complaint .......................................................................... 4

IV.   ARGUMENT ............................................................................................................... 8

      A.  This Court Has Personal Jurisdiction Over Defendants .................................. 8

          1.   Personal Jurisdiction Exists Under New York's Long-Arm Statute ..................... 8

          2.   The Exercise Of Jurisdiction Comports With Due Process ................................... 9

          3.   The Defendants Directed Their Conduct At The United States ............................ 9

      B.  Plaintiffs Have Sufficiently Pled The Causal Connection Between
          Defendants And The September 11 Terrorist Attacks ................................... 10

      C.  Defendants Are Not Entitled To Dismissal Of Plaintiffs' Tort Claims ......................... 11

          1.   Plaintiffs Sufficiently Plead Their Claims Under The ATA ................................. 11

          2.   Plaintiffs' Claims Under the Alien Tort Claims Act Should Not Be
               Dismissed ............................................................................................................... 12

          3.   Plaintiffs Sufficiently Plead Their Common Law Claims .................................... 13

          4.   Plaintiffs' Intentional Infliction Of Emotional Distress, Assault, And
               Battery Claims Are Not Barred By The Statute Of Limitations .......................... 13

5. Plaintiffs' Claims For Punitive Damages And Conspiracy Should Not Be Dismissed ................................................................................... 14

D. Plaintiffs Properly State RICO Claims Against Defendants.......................................... 15

E. Plaintiffs Have Properly Served Defendants ................................................. 19

V. CONCLUSION................................................................................................... 24

# TABLE OF AUTHORITIES

Page

## CASES

*Abdullahi v. Pfizer, Inc.*,
No. 01CIV8118, 2002 WL. 31082956 (S.D.N.Y. Sept. 17, 2002) , *vac'd on other grounds*, 2003 WL 22317923 (2d Cir. Oct. 8, 2003) ...............................................13

*American Land Co. v. Zeiss*,
219 U.S. 47 (1911)...............................................................................20

*Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters*,
459 U.S. 519 (1983)..............................................................................18

*Baisch v. Gallina*
346 F.3d at 376 .............................................................................16, 17

*Ball v. Metallurgie Hoboken Overpelt, S.A.*,
902 F.2d 194 (2d Cir.), cert. denied, 498 U.S. 854 (1990) ..................................3

*Bigio v. Coca-Cola Co.*,
239 F.3d 440 (2d Cir. 2001)....................................................................12

*Blinn v. Nelson*,
222 U.S. 1 (1911).................................................................................20

*Boim v. Quranic Literacy Institute*,
291 F.3d 1000 (7th Cir. 2002) ...........................................................1, 10, 12

*Burger King v. Rudzewicz*,
471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).....................................9

*Calder v. Jones*,
465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984).....................................9

*Chance v. Armstrong*,
143 F.3d 698 (2d Cir. 1998), *aff'd on appeal after remand*,
159 F.3d 1345 (2d Cir. 1998)..................................................................4

*Commercial Cleaning Services, LLC v. Colins Service Systems, Inc.*,
231 F.3d 374 (2d Cir. 2001)...................................................................15

*Conley v. Gibson*,
355 U.S. 41 (1957).............................................................................4, 5

*Continental Casualty Co. et al, v. Al Qaeda, et al.*,

No. 04-CV-5970 .................................................................................................................1

*Daliberti v. Iraq*,
    97 F. Supp. 2d 38 (D. D.C. 2000) ......................................................................9

*Davis v. Barrett Day Securities, Inc.*,
    1995 U.S. Dist. LEXIS 15434 (M.D.N.C. 1995) ..............................................10

*De Falco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001) .............................................................................16

*DiStefano v. Carozzi North America, Inc.*,
    286 F.3d 81 (2d Cir. 2001) .................................................................................3

*Doe v. Islamic Salvation Front*,
    257 F. Supp. 2d 115 (D.D.C.2003) ..................................................................12

*Dubai Islamic Bank v. Citibank, N.A.*,
    256 F. Supp. 2d 158 (S.D. N.Y. 2003) .............................................................16

*Ehrenfeld v. Bin Mahfouz*,
    2005 U.S. Dist. LEXIS 4741 (S.D.N.Y. March 23, 2005) ................................21

*First Capital Asset Management v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004), *citing Baisch v. Gallina*, 346 F.3d 366 (2d Cir.
    2003) .................................................................................................................16

*Flatow v. Islamic Republic of Iran*,
    999 F. Supp. 1 (D.D.C. 1998) ..........................................................................15

*Friedman v. Hartmann*,
    1994 WL. 376058 (S.D. N.Y. July 15, 1994) ..................................................17

*Geisler v. Petrocelli*,
    616 F.2d 636 (2d Cir. 1980) ...............................................................................4

*Goodrich v. Ferris*,
    214 U.S. 71 (1909) ...........................................................................................20

*Grannis v. Ordean*,
    234 U.S. 385 (1914) ...................................................................................20, 23

*Holmes v. Security Investor Prot. Corp.*,
    503 U.S. 258 (1992) .........................................................................................18

*In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*,

2004 U.S. Dist. LEXIS 3892 (S.D. N.Y. Mar. 12, 2004) ..................................................14

*Johnson v. Nyack Hospital*,
86 F.3d 8 (2d Cir. 1996)...............................................................................................14

*Jones v. R.R. Donnelly & Sons Co.,* ,
541 U.S. 369 (2004)......................................................................................................13

*Kadic v. Karadzic*,
70 F.3d 232 (2d Cir. 1996)...........................................................................................12

*Leatherman v. Tarrant County*,
507 U.S. 163 (1993)........................................................................................................5

*Lerner v. Fleet Bank, N.A.*,
318 F.3d 113 (2d Cir. 2003).........................................................................................17

*Linde, et al. v. Arab Bank, PLC*,
2005 U.S. Dist. LEXIS 18864 (E.D. N.Y. September 2, 2005)....................................6-7

*In re: Magnetic Audiotape Antitrust Litigation*,
334 F.3d 204 (2d Cir. 2003)......................................................................................3, 10

*Milliken v. Meyer*,
311 U.S. 457 (1940)......................................................................................................20

*Morin v. Trupin*,
832 F. Supp. 93 (S.D.N.Y. 1993).................................................................................17

*Mullane v. Central Hanover Trustee Co.*,
339 U.S. 306 (1950)................................................................................................. 19-20

*Mwami, et al. v. Osama Bin Laden, et al.*,
Case No. 99-0126 (D.D.C. Aug. 2, 1999).....................................................................21

*Mwani v. Bin Laden*,
417 F.3d 1 (D.C. Cir. 2005) ...........................................................................................9

*National Asbestos Workers Medical Fund v. Philip Morris, Inc.*,
74 F. Supp. 2d 221 (E.D.N.Y. 1999) ...........................................................................18

*Pelman v. McDonald's Corp.*,
396 F.3d 508 (2d Cir. 2005)...........................................................................................6

*Phelps v. Kapnolas*,
308 F.3d 180 (2d Cir. 2002)........................................................................................4-6

*Presbyterian Church of Sudan  v. Talisman Energy, Inc.*,
 244 F. Supp. 2d 289 (S.D.N.Y.2003) ...............................................................................12

*Priest v. Board of Trustees of Town of Las Vegas*,
 232 U.S. 604 (1914) .........................................................................................................20

*Pugh v. Socialist People's Libyan Arab Jamahiriya*,
 290 F. Supp. 2d 54 (D. D.C. 2003) ....................................................................................9

*Rachman Bag Co. v. Liberty Mutual Insurance Co.*,
 46 F.3d 230 (2d Cir. 1995) .................................................................................................1

*Rasul v. Bush*,
 124 S. Ct. 2686 (2004) .....................................................................................................16

*Rein v. Socialist People's Libyan Arab Jamahiriya*,
 995 F. Supp. 325 (E.D. N.Y. 1998) ...................................................................................9

*Roller v. Holly*,
 176 U.S. 398 (1900) .........................................................................................................20

*S.E.C. v. Tome*,
 833 F.2d 1086 (2d Cir.1987) ..................................................................................19-20, 23

*Sosa v. Alvarez-Machain*,
 124 S. Ct. 2739 (2004) .....................................................................................................12

*Sparrow v. United Airlines, Inc.*,
 216 F.3d 1111 (D.C. Cir. 2000), appeal dismissed after remand,
 2001 WL 936257 (D.C. Cir. July 12, 2001) ......................................................................5

*Swierkiewicz v. Sorema*,
 534 U.S. 506 (2002) ...........................................................................................................4

*In re Terrorist Attacks on September 11, 2001*,
 349 F. Supp. 2d 765 (S.D.N.Y. 2005) ......................................................................8, 10-13

*United States v. Allen*,
 155 F.3d 35 (2d Cir. 1998) ...............................................................................................16

*United States v. Coonan*,
 938 F.2d 1553 (2d Cir. 1991) ...........................................................................................16

*United States v. Turkette*,
 452 U.S. 576 (1981) .........................................................................................................16

*United States v. Yunis*,
924 F.2d 1086 (D.C. Cir. 1991) ...................................................................................13

*Von Bulow v. Von Bulow*,
634 F. Supp. 1284 (S.D. N.Y. 1986) .............................................................................18

*Wagh v. Metris Direct, Inc.*,
348 F.3d 1102 (9th Cir. 2003) ......................................................................................15

*Whyte v. Contemporary Guidance Servs.*,
03 CV 5544  2004 U.S. Dist. LEXIS 12447 (S.D. N.Y. July 2, 2004)..............................1

*Woodford v. Community Action Agency*,
239 F.3d 517 (2d Cir. 2001)............................................................................................4

*Wynder v. McMahon*,
360 F.3d 73 (2d Cir. 2004)..............................................................................................4

*Yeadon v. New York Transit Authority*,
719 F. Supp. 204 (S.D. N.Y. 1989)...............................................................................14

## RULES AND STATUTES

18 U.S.C. §§ 1962(a) ...........................................................................................................15

18 U.S.C. § 2333...................................................................................................................11

42 Pa.C.S. § 5524 (2005) .....................................................................................................13

137 Cong. Rec. 54511 04 (April 16, 1991) .........................................................................14

Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA") .........................................................12

Fed. R. Civ. P. 4(k)(1)...........................................................................................................8

Fed. R. Civ. P. 8(a)(2)...........................................................................................................4

Fed. R. Civ. P. 9(b) ...............................................................................................................5

Fed. R. Civ. P. 12(b)(6).........................................................................................................4

Fed. R. Civ. P. 15(a) .............................................................................................................1

N.Y. Est. Powers & Trusts Law § 5-4.1 (2003).................................................................14

New York's Long-Arm Statute, N.Y. C.P.L.R. § 302(a)(2) (McKinney 2002).............................8

Restatement (Second) of Torts § 302..........................................................................................11

Restatement (Second) of Torts §§ 876, 877................................................................................11

RICO Statements under Rule 6(b)(2) .........................................................................................15

Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350 ....................................................11

## I.    INTRODUCTION

Plaintiffs allege that Mohamed Ali Mushayt and the Mushayt for Trading Establishment ("Defendants") knowingly participated in al Qaida's global conspiracy to commit terrorist attacks in the United States, of which the September 11, 2001 Attack was a natural, intended and foreseeable result.  When these factual assertions are taken as true, as they must be here, the Plaintiffs' allegations state valid claims against Defendants under the Anti-Terrorism Act (the "ATA"), the Alien Tort Claims Act (the "ATCA"), the Racketeering Influenced and Corrupt Organizations Act ("RICO"), and several state common law tort theories.  Plainly, responsibility for international terrorism rests not only with those "who pull the trigger or plant the bomb" or pilot the airplanes, but also with those who facilitated such unlawful activities through financial or other means.  *Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1021 (7th Cir. 2002).

Accordingly, Defendants' motion to dismiss must be denied in its entirety.  In the event, however, that this Court finds the Plaintiffs' Complaints lacking in detail, leave to amend should be granted.  *See* Fed. R. Civ. P. 15(a); *see also Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995); *Whyte v. Contemporary Guidance Servs.*, 03 CV 5544 (GBD) 2004 U.S. Dist. LEXIS 12447, at *13-14 (S.D. N.Y. July 2, 2004).

## II.    FACTUAL BACKGROUND

### A.    Mushayt Provided Material Support To Al Qaeda

The Complaints adequately allege that Mushayt provided material support to Osama bin Laden and al Qaeda.  As alleged in the Complaints, Mushayt chairs a company founded by Muhammed Galeb Kalaje Zouaydi called Mushayt for Trading Establishment ("MFT"), which was used to transfer funds for al Qaeda operations in Europe.  *WTC* ¶ 850-855.   Mushayt caused or allowed Zouaydi to funnel money from MFT through Spanish corporations to the al Qaeda network in Europe, including donations to Abdul Fattah Zammar and Mamoun Darkazanli (both

of whom are awaiting trial in Germany on charges of providing financial and logistical support to the organization of the September 11, 2001 attacks) who maintained the bank accounts of hijacker Mohamed Atta, and other members of the Hamburg al Qaeda cell.  *WTC* ¶ 712, 713, 852.  Zouaydi was among several members of al Qaeda who were arrested in Spain in April 2002; he is considered a senior financier of al Qaeda in Europe.  *WTC* ¶ 836.  Mushayt for Trading Establishment in Jeddah, Saudi Arabia, sheltered and materially and economically supported Nabil Nanakli Kosaibati Nabil, who was convicted for terrorist activities in Yemen. *WTC* ¶ 851.  Zouaydi sent $227,000 dollars to Nabil Sayadi, a radical Muslim extremist in charge of the Fondation Secours Mondial and Defendant Global Relief Foundation in Belgium, through Mushayt for Trading Establishment.  *WTC* ¶ 853.  From 1996 to 2001, the al Qaeda network in Europe received at least $1 million dollars from MFT "donations" and false contracts that were used to cover up Zouaydi's and Mushayt's sponsorship of al Qaeda. *WTC* ¶ 843. Mushayt thus is alleged to have assisted Zouaydi in financing al Qaeda cells in Europe, including the Hamburg Cell, of which the September 11 hijackers were members.  *WTC* ¶ 833, 834.

In providing this financial assistance to al Qaeda, Mushayt purposefully directed his conduct at the United States because, as demonstrated below, the evidence that plaintiffs have gathered to date shows that, throughout the 1990's, al Qaeda's target was the United States. Moreover, Osama bin Laden announced this, repeatedly and publicly, so that individuals like Mushayt who provided material support in that period plainly knew that they were targeting the United States when they assisted al Qaeda with its terrorist agenda.

**B.**     **Al Qaeda Openly And Publicly Announced Its Terrorist Agenda And Targeted The United States**

It has been publicly known since the mid-1990s, if not well before, that Osama bin Laden and his Al Qaida terrorist network had launched an international campaign of terror directed at the United States.  Plaintiffs have addressed this argument in Plaintiffs' Consolidated

Memorandum of Law in Opposition to the Motion to Dismiss of Defendant Hamad Al-Husaini.

Rather than repeat that argument here, Plaintiffs instead respectfully refer the Court to, and

incorporate by reference, that discussion.

## III.    APPLICABLE LAW

### A.    Prior To Discovery On A Rule 12(b)(2) Motion, A Plaintiff's *Prima Facie* Showing Of Personal Jurisdiction May Be Established Solely By Legally Sufficient Allegations Of Jurisdiction

In this Circuit, the nature of the plaintiff's obligation to allege and prove personal

jurisdiction varies depending upon the procedural posture of the litigation.

> Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, [citation omitted] legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations.  After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant. [citations omitted].  At that point, the *prima facie* showing must be factually supported.

*Ball v. Metallurgie Hoboken Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), cert. denied, 498

U.S. 854 (1990).   Thus, in order to defeat a motion challenging jurisdiction under Rule 12(b)(2),

a plaintiff need only present allegations that connect the defendant with the applicable forum,

here, the United States.  In deciding such a motion, the plaintiff's jurisdictional averments must

be taken as true.  *Id*.;  *In re: Magnetic Audiotape Antitrust Litigation*, 334 F.3d 204, 206 (2d Cir.

2003).  Moreover, the court must construe the pleadings in a light most favorable to plaintiff,

resolving all doubts in his favor.  *DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81 (2d Cir.

2001).

**B.     A Motion To Dismiss Under Rule 12(B)(6) Merely Tests The Legal Feasibility Of The Complaint**

Defendants move to dismiss the Complaints pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief could be granted.  Such a motion must be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Wynder v. McMahon*, 360 F.3d 73, 78 n.8 (2d Cir. 2004); *Phelps v. Kapnolas*, 308 F.3d 180, 184 (2d Cir. 2002) (per curiam).  The Court's role is "not to assay the weight of the evidence which might be offered in support" of the Complaint, but "merely to assess the legal feasibility" of the Complaint.  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).

In evaluating whether Plaintiffs ultimately could prevail, the Court must accept as true the facts alleged in the Complaints and RICO Statements and draw all reasonable inferences in Plaintiffs' favor.  *Wynder*, 360 F.3d at 78; *Phelps*, 308 F.3d at 184.  Plaintiffs are not required to prove their case at the pleading stage.  Indeed, the Second Circuit has cautioned that "[t]he pleading of evidence should be avoided."  *Woodford v. Community Action Agency*, 239 F.3d 517, 526 (2d Cir. 2001).  The issue on a Rule 12(b)(6) motion "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims."  *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998), *aff'd on appeal after remand*, 159 F.3d 1345 (2d Cir. 1998).

A Rule 12(b)(6) motion is analyzed in the context of the requirements of Fed. R. Civ. P. 8(a)(2), which is extremely permissive.  *Swierkiewicz v. Sorema*, 534 U.S. 506, 512-13 (2002).  Indeed, Rule 8(a)(2) provides that a complaint only need include "a short and plain statement of the claim showing that the pleader is entitled to relief" and that such a statement simply shall "give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests."  *Id.* at 512 (quoting *Conley*, 355 U.S. at 47 (1957)); *Wynder*, 360 F.3d at 77; *see also*

*Sparrow v. United Airlines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000), appeal dismissed after remand, 2001 WL 936257 (D.C. Cir. July 12, 2001) (allegation "I was turned down for a job because of my race" would be sufficient to survive a Rule 12(b)(6) motion.).  Further, in the absence of averments of fraud or mistake, which must be pled with particularity pursuant to Fed. R. Civ. P. 9(b), a federal court is prohibited from imposing more demanding requirements than those proscribed under Rule 8(a).  *See, e.g., Leatherman v. Tarrant County*, 507 U.S. 163, 168-69(1993).

Two recent Second Circuit cases underscore and re-affirm these principles.  In *Phelps*, the plaintiff alleged that the employees of the prison where he was incarcerated had violated his Eighth and Fourteenth Amendment rights by inflicting cruel and unusual punishment.  308 F.3d at 182.  Plaintiff further alleged that defendants "knew or recklessly disregarded" that the diet the defendants had placed him on was inadequate and would cause pain and suffering.  *Id*.  The district court dismissed the complaint, finding that it failed to state a claim, in part because the court said plaintiff had not sufficiently alleged that defendants acted with the requisite *scienter*, deliberate indifference.  The district court found plaintiff's allegations of *scienter* conclusory and held that plaintiff had failed to allege facts from which the Court could infer the defendants' knowledge.  *Id*. at 184.  The Second Circuit reversed, holding that a district court "may not go beyond FRCP 8(a)(2) to require the plaintiff to supplement his pleadings with additional facts that support his allegation of knowledge either directly or by inference."  *Id*. at 186-87.  The Court explained:

> It was improper to dismiss Phelps's Amended Complaint for failing to supplement Phelps's basic allegations with additional facts to support them by inference, for it does not appear from the face of the complaint beyond doubt that Phelps "can prove no set of facts in support of his claim which would entitle him to relief."

*Phelps*, 308 F.3d at 187 (quoting *Conley*, 355 U.S. at 45-46).

5

Moreover, the Court explained that dismissal was improper because, through discovery, the plaintiff might uncover direct evidence to support his allegations. *Phelps*, 308 F.3d at 187. Thus, the Second Circuit cautioned:

> Despite the pressures to weed out apparently meritless cases at the earliest point, courts must take care lest judicial haste in dismissing a complaint in the long run makes waste. Untimely dismissal may prove wasteful of the court's limited resources rather than expeditious, for it often leads to a shuttling of the lawsuit between the district and appellate courts.

*Id.* at 185 (citations omitted).

In *Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005), the Second Circuit again vacated a district court's 12(b)(6) dismissal and reiterated the minimal pleading standards to be applied. In *Pelman*, the district court had dismissed because, it had ruled, plaintiffs had failed to "draw an adequate causal connection between their consumption of McDonald's food and their alleged injuries." *Id.* at 511. The Second Circuit rejected this approach. It held that the information the district court found to be missing in the Complaint was "the sort of information that is appropriately the subject of discovery, rather than what is required to satisfy the limited pleading requirements of Rule 8(a)." *Id.* at 512. Quoting the unanimous Supreme Court ruling in *Swierkiewiez*, the Court reminded:

> This simplified notice pleading standard of Rule 8(a) relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court.

*Pelman*, 396 F.3d at 512 (*quoting Swierkiewicz*, 534 U.S. at 512-13).

More recently, in *Linde, et al. v. Arab Bank, PLC*, 2005 U.S. Dist. LEXIS 18864 (E.D. N.Y. September 2, 2005), the United States District Court for the Eastern District of New York rejected the defendant's invitation to impose a heightened pleading requirement in a case

presenting claims nearly identical to those at issue here.  In *Linde*, the plaintiffs brought claims against Arab Bank for injuries resulting from terrorist attacks carried out by HAMAS and Palestine Islamic Jihad in Israel, based on the bank's sponsorship and support of those terrorist organizations.  *Id.* at *11-23.  Arab Bank sought dismissal of the plaintiffs' Anti-Terrorism Act (ATA) and common-law claims "on the ground that plaintiffs have not sufficiently alleged knowledge and intent."  *Id.* at *42.  The Court rejected this argument, reasoning that Arab Bank was attempting to impose a heightened pleading standard not warranted by the Rules of Civil Procedure:

> To the extent the defendant is arguing that plaintiffs have not alleged sufficient facts to establish an evidentiary basis for their allegations of knowledge and intent, defendant simply misapprehends the pleading standard.  It is not entitled to dismissal based on the argument that plaintiff's must plead more than the requisite knowledge and intent, either as to their substantive claims or their claims of aiding and abetting a conspiracy.

*Id.*  The *Linde* court likewise rejected the defendant's contention that plaintiffs were required to allege that senior officials of the bank were aware of the misconduct underlying plaintiffs' claims.  "Once again, defendant attempts to impose a standard of pleading beyond that required by the rules.  It is sufficient, for pleading purposes, for plaintiffs to allege the knowledge and intent of Arab Bank and not spell out their proof."  *Id.* at *50.

Nowhere do the Defendants claim not to have fair notice of the allegations being lodged against them.  Defendants clearly knows what has been alleged, and have even attempted to suggest factual evidence at this early stage rebutting Plaintiffs' claims.  Because the complaints provide fair notice, these are properly matters to be resolved after discovery is complete, and this is no grounds for dismissal here.

**IV.    ARGUMENT**

    **A.    This Court Has Personal Jurisdiction Over Defendants**

Defendants contest this Court's authority to exercise personal jurisdiction over them, arguing that the personal jurisdiction requirements of New York's Long-Arm Statute, N.Y. C.P.L.R. § 302(a)(2) (McKinney 2002), and the requirements under Fed. R. Civ. P. 4(k)(1)(D), are not satisfied.

    **1.    Personal Jurisdiction Exists Under New York's Long-Arm Statute**

Defendants' arguments regarding the applicability of New York's Long-Arm Statute are simply wrong.  As this Court has previously recognized, "acts committed by a co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under C.P.L.R. 302(a)(2)."  *In Re Terrorists Attacks*, 349 F. Supp. 2d at 805 (*quoting*, *Chrysler Capitol Corporation v. Sentry Power Corp.*, 778 F. Supp. 1260, 1266, S.D. N.Y. 1991).  Plaintiffs have adequately alleged that Defendants were an active and knowing participant in al Qaida's conspiracy to attack America.  Without question, those who knowingly contribute to a terrorist organization do so in order to see the organization successfully carry out terrorist attacks.  Indeed, in recognition of that fact, the United States Government has declared that those who support terrorists are as culpable as those who carry out the attacks.  Thus, the operatives who carried out the September 11th Attack necessarily were acting for the benefit of al Qaida's material sponsors and supporters, and the New York Long-Arm Statute consequently provides a statutory basis for exercising personal jurisdiction over al Qaida's co-conspirators, including Defendants.[1]

---

[1] The plaintiffs have asserted claims against these defendants under the ATA and Civil RICO, both of which include nationwide service of process provisions.  As such, the exercise of personal jurisdiction also is authorized under Fed. R. Civ. P. (4)(k)(1)(D), provided that the exercise of jurisdiction comports with due process.  For the reasons set forth in greater detail in Sections D2 and D3, the exercise of personal jurisdiction over these defendants does comport with due process.

### 2.     <u>The Exercise Of Jurisdiction Comports With Due Process</u>

The Defendants' assertion that the exercise of personal jurisdiction over them would violate due process is equally unconvincing.  The Supreme Court has consistently held that the due process clauses of the Fifth and Fourteenth Amendments permit personal jurisdiction so long as the defendant has certain minimum contacts with the forum such that maintaining the suit there does not offend traditional notions of fair play and substantial justice.  *Calder v. Jones*, 465 U.S. 783, 788, 104 S. Ct. 1482, 79 L. Ed. 2d 806 (1984).  Under these standards, due process considerations are satisfied so long as the defendant has "fair warning" that he may be haled into court in the forum to respond for his actions.  *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).  In an action involving harm caused by an intentional tort, the plaintiff's contacts to the forum "may be so manifold as to permit jurisdiction when it would not exist in their absence."  *Calder*, 465 U.S. at 788.  Consistent with this principle, the courts have found that due process is not violated by the exercise of jurisdiction over those who deliberately target our citizens.  *Pugh v. Socialist People's Libyan Arab Jamahiriya*, 290 F.Supp.2d 54 (D. D.C. 2003); *Daliberti v. Iraq*, 97 F. Supp. 2d 38, 54 (D. D.C. 2000); *Rein v. Socialist People's Libyan Arab Jamahiriya*, 995 F. Supp. 325 (E.D. N.Y. 1998); *Mwani v. Bin Laden*, 417 F.3d 1, 28 (D.C. Cir. 2005) (finding that al Qaida and its co-conspirators have "engaged in unabashedly malignant actions directed at and felt in" the United States).

### 3.     <u>The Defendants Directed Their Conduct At The United States</u>

In the present case, Plaintiffs have satisfied their burden to make a *prima facie* showing of personal jurisdiction over Defendants, pursuant to the applicable standards set forth above.  As described above, the defendants, for a period of many years, directly channeled financial and logistical support to al Qaida.  In knowingly sponsoring and directly participating in al Qaida's campaign to attack America, the defendants necessarily directed their conduct at the United States, as it has been publicly known, since at least the mid-1990's, that al Qaida was engaged in

a global campaign of terror directed against the United States.  *In Re Terrorists Attacks*, 349 F. Supp. 2d at 813 ("This Court's record … contains many examples of Osama bin Laden's and al Qaeda's public targeting of the United States").  Thus, the exercise of jurisdiction over the defendants for claims arising from their sponsorship of al Qaida complies with due process.[2]

### B.    Plaintiffs Have Sufficiently Pled The Causal Connection Between Defendants And The September 11 Terrorist Attacks

Defendants argue that Plaintiffs have not sufficiently pled a causal connection between their actions and the September 11 attacks.  This is not the case.  Defendants are alleged to have funneled money to the al Qaeda network in Europe, including donations to Abdul Fattah Zammar and Mamoun Darkazanli who maintained the bank accounts of hijacker Mohamed Atta and other members of the Hamburg al Qaeda cell that was directly responsible for the September 11 attacks.  *See WTC* ¶ 712, 713.  Furthermore, from 1996 to 2001 – the years leading up the events of September 11 attacks – the al Qaeda network in Europe received at least $1 million from MFT "donations" and false contracts used to cover up Zouaydi's and Mushayt's sponsorship of al Qaeda. *WTC* ¶ 843.  Those allegations properly allege that Defendants' support and assistance were a proximate cause of the September 11 attacks.

Plaintiffs allege that "The financial resources and support network of . . . Defendants – charities, banks, front organizations and financiers – are what allowed the attacks of September 11, 2001 to occur.  Terrorists like Osama bin Laden and his al Qaeda network . . . cannot plan, train and act on a massive scale without significant financial power, coordination and backing."  *See WTC* ¶ 1; *Federal* 1AC ¶ 74.  *See also Boim*, 291 F.3d at 1021 ("[T]here would not be a trigger to pull or a bomb to blow up without the resources to acquire such tools of terrorism and to bankroll the persons who actually commit the violence.").  Moreover, this Court has already

---

[2] Plaintiffs' allegations of conspiracy are, in and of themselves, sufficient to satisfy due process at this stage of the litigation.  *In Re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208; *see also Davis v. Barrett Day Securities, Inc.*, 1995 U.S. Dist. LEXIS 15434, *11-12 (M.D.N.C. 1995).

held that "[i]n light of Al Qaeda's public acknowledgments of its war against the United States, the September 11 attacks may be the natural and probable consequence of knowingly and intentionally providing material support to al Qaeda." *See In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 826 (S.D.N.Y. 2005) ["January 18 Order"].  Finally, as this Court has previously recognized, "Plaintiffs do not have to allege that Defendants knew specifically about the September 11 attacks or that they committed any specific act in furtherance of that attack." *Id.* at 829.

Plaintiffs have alleged that Defendants provided at least $1 million to the al Qaeda network in Europe from 1996 to 2001.  *See WTC* ¶ 843.  If so, then Defendants are legally responsible for the September 11 attacks.  *See* Restatement (Second) of Torts §§ 876, 877; *see also* January 18 Order, 349 F. Supp. 2d at 826.  Plaintiffs are entitled to the opportunity to take discovery and prove their allegations and establish that Defendants knowingly and intentionally participated in the sponsorship of al Qaida.

### C.    Defendants Are Not Entitled To Dismissal Of Plaintiffs' Tort Claims

Plaintiffs have sufficiently alleged claims under the Anti-Terrorism Act ("ATA"), the Alien Tort Claims Act ("ATCA"), and the common law.  These claims should not be dismissed.[3]

### 1.    <u>Plaintiffs Sufficiently Plead Their Claims Under The ATA</u>

Under the ATA,[4] a defendant is liable if it provided any material support to al Qaida with knowledge of its terrorist agenda or if it aided and abetted al Qaida or Osama bin Laden in their

---

[3]  Plaintiffs recognize that this Court has dismissed negligence claims against certain defendants on the basis that defendants owed no duty to Plaintiffs.  *See* January 18 Order, 349 F. Supp. 2d at 830-31.  Plaintiffs respectfully disagree with this ruling and refer this Court to the prior briefing on this issue.  *See* Restatement (Second) of Torts § 302 (stating that as a general principle of tort law, every individual has a duty to exercise reasonable care to avoid physical harm to others' person and property).  Plaintiffs also note that they do not currently intend to pursue their claims under the Torture Victims Protection Act ("TVPA"), 28 U.S.C. § 1350, against this defendant.  Plaintiffs reserve the right to replead this claim against Defendants should additional information become available in discovery demonstrating that they acted "under actual or apparent authority or color of law, of any foreign nation" in connection with their support of al Qaeda.

[4]  The Anti-Terrorism Act ("ATA") provides a civil action for "[a]ny national of the United States injured in his person, property or business by reason of an act of international terrorism[.]"  18 U.S.C. § 2333.

course of terrorist conduct.  *See Boim*, 291 F.3d at 1021 ("[I]f we failed to impose liability on aiders and abettors who knowingly and intentionally funded acts of terrorism, we would be thwarting Congress' clearly expressed intent to cut off the flow of money to terrorists at every point along the causal chain of violence.") (emphasis added).[5]

Furthermore, this Court has already recognized that, under the ATA, "material support includes money [and] financial services . . . ."  January 18 Order, 349 F. Supp. 2d at 825.  As demonstrated above, Plaintiffs have alleged that Defendants knowingly and intentionally provided money and financial services to Osama bin Laden and al Qaida.  Accordingly, under the standards set forth in this Court's January 18, 2005 Order, Plaintiffs have properly pled a claim under the ATA.

### 2.    Plaintiffs' Claims Under the Alien Tort Claims Act Should Not Be Dismissed

Defendants contend that the Plaintiffs' claims under the Alien Tort Claims Act, 28 U.S.C. § 1350 ("ATCA"), should be dismissed because they are not state actors and did not engage in specific kinds of conduct that give rise to jurisdiction under that statute.  But the ATCA does not require that the defendant act under color of law and the specific types of conduct that Defendants recognize as covered by the statute – aircraft hijacking and terrorism – are precisely the conduct for which plaintiffs seek to hold him responsible.  Since Defendants concede that aircraft hijacking and terrorism are sufficient to support jurisdiction under the ATCA, Plaintiffs' claims against Defendants for their role in supporting these acts are sufficient and should not be dismissed.  *See Sosa v. Alvarez-Machain*, 124 S.Ct. 2739 (2004); *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 447-48 (2d Cir. 2001); *Kadic v. Karadzic*, 70 F.3d 232, 240 (2d Cir. 1996); *Doe v. Islamic Salvation Front*, 257 F.Supp.2d 115, 120 (D.D.C.2003); *Presbyterian Church of Sudan*

---

[5]  Reviewing the legislative history, the Seventh Circuit concluded:  "All of this history indicates an intent by Congress to allow a plaintiff to recover from anyone along the causal chain of terrorism."  291 F.3d at 1011.

*v. Talisman Energy, Inc.*, 244 F.Supp.2d 289, 309 (S.D.N.Y.2003); *Abdullahi v. Pfizer, Inc.*, No. 01CIV8118, 2002 WL 31082956, at \*4 (S.D.N.Y. Sept. 17, 2002), *vac'd on other grounds*, 2003 WL 22317923 (2d Cir. Oct. 8, 2003); *see generally United States v. Yunis*, 924 F.2d 1086, 1092 (D.C. Cir. 1991) ("Aircraft hijacking may well be one of the few crimes so clearly condemned under the law of nations that states may assert universal jurisdiction to bring offenders to justice, even when the state has no territorial connection to the hijacking and its citizens are not involved"). Consistent with these decisions, this Court has already ruled that the Plaintiffs' claims under the ATCA are viable. January 18 Order, 349 F. Supp. 2d at 826.

### 3. Plaintiffs Sufficiently Plead Their Common Law Claims

Defendants claim that Plaintiffs' common law claims, including claims for intentional infliction of emotional distress, assault and battery, wrongful death, survival, and property destruction should be dismissed because the Plaintiffs have failed to adequately allege causation. This is merely a repetition of Defendants' argument with respect to the ATA and causation generally and should be rejected for the reasons described above.

### 4. Plaintiffs' Intentional Infliction Of Emotional Distress, Assault, And Battery Claims Are Not Barred By The Statute Of Limitations

Contrary to the Defendants' assertion, the Plaintiffs' claims for assault and battery and for intentional infliction of emotional distress are not demonstrably time-barred. At this stage of these proceedings, the substantive law governing most of the claims remains to be determined. As such, it would be manifestly premature to dismiss Plaintiffs' assault, battery and intentional infliction of emotional distress claims, under the mere assumption that the law of New York law applies. *See* 42 Pa.C.S. § 5524 (2005) (establishing two year limitation period for assault, battery and intentional tort claims under Pennsylvania law); *Jones v. R.R. Donnelly & Sons Co.*,

541 U.S. 369 (2004) (holding that federal common law claims arising under Act of Congress after 1990 are governed by a four year limitations period).[6]

Moreover, all of Plaintiffs' claims arise from Defendants' participation in the conspiracy to conduct terrorist attacks against the United States, a conspiracy designed to hide the identity of the participants from disclosure to the outside world. As a result, the statute of limitations was tolled until Plaintiffs reasonably should have become aware of Defendants' involvement within the conspiracy, itself a question of fact to be determined through discovery. *Yeadon v. New York Transit Authority*, 719 F. Supp. 204, 209 (S.D. N.Y. 1989); *In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*, 2004 U.S. Dist. Lexis 3892 at *17-18 (S.D. N.Y. Mar. 12, 2004). Given the clandestine nature of the conspiracy in which Defendants participated, equitable principles require that the statute of limitations be tolled. *See Johnson v. Nyack Hospital*, 86 F.3d 8, 12 (2d Cir. 1996) (holding that "[e]quitable tolling allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances").[7]

## 5.    Plaintiffs' Claims For Punitive Damages And Conspiracy Should Not Be Dismissed

Defendants correctly argue that no independent causes of action exist under New York law for conspiracy or punitive damages. However, at this stage of these proceedings, the substantive law governing each of Plaintiffs' individual claims remains to be determined. Thus, it would be premature to dismiss those causes of action at this time. Moreover, there can be little dispute that Plaintiffs' are entitled to recover punitive damages in the event that they prevail

---

[6] The ATA imports "the remedies of American tort law," 137 Cong. Rec. 54511 04 (April 16, 1991), thus giving rise to federal common law assault, battery and intentional infliction of emotional distress claims thereunder. On this point, Plaintiffs refer the Court to the discussion included in their Consolidated Opposition to the Motion to Dismiss of Perouz Sedaghaty at pp. 16-17, incorporated herein by reference.

[7] Arguably, they are also extended by way of action of the New York Survival cause of action, which the New York legislature specifically extended from 2 years to 2.5 years for 9/11 cases. *See* N.Y. Est. Powers & Trusts Law § 5-4.1 (2003).

against these defendants under the theories advanced.[8]  Under these circumstances, dismissal of

the conspiracy and punitive damages counts would be inappropriate.

### D.    Plaintiffs Properly State RICO Claims Against Defendants

Defendants also contend that none of the Plaintiffs have properly pleaded their RICO

claims.  Defendants are wrong.[9] [10]

Plaintiffs' complaints and RICO Statements assert RICO claims against Defendants

pursuant to 18 U.S.C. §§ 1962(a), (c) and (d).  The enterprise - the al Qaeda movement, also

referred to as Radical Muslim Terrorism - is an association in fact of terrorists and an ongoing

terrorist organization with a definitive structure.  *See, e.g., WTC* ¶ 1081-85.  Its well documented

purpose is to perpetrate acts of terrorism.  Thus, Plaintiffs have sufficiently pled that al Qaida is

---

[8] Punitive damages are designed "to punish [a defendant] for his outrageous conduct and to deter him and others like him from similar conduct in the future."  *Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 32 (D.D.C. 1998).  If the Plaintiffs prove their allegations that Defendants knowingly financed and provided material support to al Qaida giving its purpose to commit terrorist acts against innocent persons in the United States, Defendants' conduct is sufficiently egregious and outrageous to warrant the imposition of punitive damages.

[9] Defendants challenges the standing of the *Burnett* Plaintiffs to pursue RICO claims.  Those Plaintiffs do not intend to pursue those claims at this time, and therefore do no address the defendant's standing argument herein.

[10] As a preliminary matter, defendant argues that Plaintiffs in all cases other than *Federal* are barred from pursuing RICO claims, because they have not filed RICO Statements applicable to the defendant.  However, the Second Circuit has explicitly held that the District Court may not dismiss the RICO claims of a plaintiff on substantive grounds, based on that plaintiff's failure to file a RICO statement which requires information beyond the pleading requirements of the Federal Rules of Civil Procedure.  *See Commercial Cleaning Services, LLC v. Colins Service Systems, Inc.*, 231 F.3d 374, 385-87 (2d Cir. 2001); *see also, Wagh v. Metris Direct, Inc.*, 348 F.3[rd] 1102, 1107-1109 (9th Cir. 2003).  To the extent the defendant is advocating that the Plaintiffs' RICO claims be dismissed as a sanction for failing to comply with this Court's individual practices, this argument lacks both factual and legal merit.  To begin with, this complex litigation is being managed under a comprehensive Case Management Order, dated June 15, 2004 ("CMO 2").  CMO 2 contains a specific provision governing "RICO Statements" in these proceedings, which preempts any relevant individual practice rules governing a typical case.  At the request of the defendants, the Court has held that only the *Federal* Plaintiffs are permitted to file RICO Statements pursuant to CMO2.  Thus, in refraining from filing RICO Statements applicable to these defendants, Plaintiffs simply complied with this Court's Orders and practices, and there exists no violation to complain of.  Even assuming that this Court's individual practices regarding RICO Statements were applicable here, dismissal with prejudice may be imposed as a sanction only in cases of willfulness, bad faith, or serious fault.  *Commercial Cleaning Services*, 231 F.3d at 386.  To the extent there has been any violation of this Court's practices here, such violation is at most the result of a reasonable misinterpretation of CMO 2.  Therefore, dismissal of Plaintiffs' RICO claims would be fundamentally improper.  It should be noted that certain of the Plaintiffs could not possibly have complied with this Court's individual practice requiring that RICO Statements be filed within 20 days of the filing of the Complaint.  For example, *Estate of John P. O'Neill, Sr., et al. v. Republic of Iraq, et al.*, 03 CV 1766 (RBW) (Old case number), 04 CV 1076 (RCC) (new case number), was originally filed in the District of Columbia on  August 20, 2003 and was not assigned to the Honorable Richard Conway Casey for nearly seven (7) months.  In any event, to the extent the Court deems its individual practices applicable, Plaintiffs seek leave to file RICO Statements under Rule 6(b)(2).

"a group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 n.5 (1981); *United States v. Coonan*, 938 F.2d 1553, 1559-60 (2d Cir. 1991).

   Plaintiffs further allege that Defendants engaged in conduct in furtherance of the enterprise which is actionable under § 1962(a).  Pursuant to that section: "it shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt … to use or invest directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect interstate or foreign commerce."  In the present case, Plaintiffs allege that Defendants utilized MFT to transfer funds for al Qaeda operations in Europe.  *See WTC* ¶ 850-855.  As the Supreme Court has explicitly recognized that al Qaida's terrorist endeavors, including the September 11th attacks, directly affect interstate commerce, Plaintiffs have undeniably stated RICO claims under Section 1962(a).  *See Rasul v. Bush*, 124 S. Ct. 2686, 2690 (2004) (stating that the September 11th attacks "severely damaged the U.S. economy").

   Plaintiffs' similarly allege sufficient involvement by Defendants in the enterprise to sustain claims under both §§ 1962(c) and (d).  Although a plaintiff asserting a civil claim under § 1962(c) must allege that the defendant participated in the operation or management of the enterprise, *see Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D. N.Y. 2003), such "discretionary authority" has been described by the Second Circuit as "a relatively low hurdle for plaintiffs to clear."  *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 176 (2d Cir. 2004), *citing Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003); *De Falco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) and *United States v. Allen*, 155 F.3d 35, 42-43 (2d Cir. 1998).  Moreover, as a general rule, it may not be "reasonable to expect that when a defrauded

16

plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether [a defendant] was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise." *Friedman v. Hartmann*, 1994 WL 376058, *2 (S.D. N.Y. July 15, 1994).

With respect to a RICO conspiracy under § 1962(d), the requirements "are less demanding." *Baisch*, 346 F.3d at 376. All that is required is that the conspirator "intend to further an endeavor which, if completed, would satisfy all the elements of the substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id*. at 376-77 (*quoting Salinas v. United States*, 522 U.S. 52, 65 (1997)). Thus, "[a]lthough parties who do not control the organization cannot be liable under § 1962(c), they may still conspire to do so and therefore be liable under § 1962(d)." *Morin v. Trupin*, 832 F. Supp. 93, 100 (S.D.N.Y. 1993).

Here, Plaintiffs have satisfied the pleading standards applicable to their § 1962(c) and § 1962(d) claims. The Plaintiffs allege that Defendants transferred funds for al Qaeda operations in Europe. *See WTC* ¶ 850-855. In view of these allegations regarding Defendants' integral and pervasive sponsorship of al Qaida's operations throughout the world, Plaintiffs have adequately alleged that Defendants played a direct and active role in the management and operation of al Qaida's fundraising scheme. Plaintiffs have, accordingly, met their pleading burden in relation to their claims under §§ 1962(c) and 1962(d), particularly given the fact that Plaintiffs have not been afforded the opportunity to take discovery.

Plaintiffs also have adequately alleged proximate cause under RICO. This requirement is satisfied if plaintiffs allege that defendant's injurious conduct is both the factual and the proximate cause of the injury alleged. *Lerner v. Fleet Bank, N.A*., 318 F.3d 113, 120 (2d Cir. 2003). Because "[t]he legal concept of proximate causation mandates a multi-faceted and highly

fact-specific inquiry," dismissal at the pleadings stage of a RICO claim is generally imprudent. *National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 74 F. Supp. 2d 221, 225 (E.D.N.Y. 1999).  This Court's decision "should be guided by a flexible, case-by-case approach."  *Id.* (citing *Associated Gen'l Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 536-37 (1983), and *Holmes v. Security Investor Prot. Corp.*, 503 U.S. 258, 272 n.20 (1992)).  Indeed, this Court's analysis of proximate causation "must remain flexible, rather than static:  as society, its needs, and its norms change, so too must the contours of tort liability and enforcement procedures."  *Id.*  Further, failure to explain the alleged injury in detail is not fatal.  *Von Bulow v. Von Bulow*, 634 F. Supp. 1284, 1309 (S.D. N.Y. 1986). Allegations of injury, because they necessarily involve questions of fact, must be construed liberally on a motion to dismiss under Rule 12(b)(6).  *Id.*  The Complaint need only "allege[] compensable injury flowing from the commission of the predicate acts."  *Id.* (citations omitted).

Here, Plaintiffs allege that they were directly injured by Defendants' participation in al Qaida's campaign to attack the United States, and in particular, by their provision of "material support and resources to al Qaeda."  Plaintiffs allege that Defendants knowingly provided financial support to al Qaida.  *See* Plaintiffs' allegations set forth in Factual Background *supra*. Defendants participated extensively in al Qaida's global operations and specifically in furthering al Qaida's goal of committing acts of terrorism against the United States by providing al Qaida with the "financial resources, physical assets, membership base, technological knowledge, communication skills, and global reach required to conceive, plan and execute the September 11th attack."  *Federal* 1AC ¶ 74.  Accordingly, Plaintiffs have sufficiently pled causation for purposes of their RICO claims.

E.        **Plaintiffs Have Properly Served Defendants**

Defendants allege that the Plaintiffs failed to properly serve them in accordance with the

Federal Rules of Civil Procedure and that the notices published in the *USA Today, International*

*Herald Tribune, and Al-Quds Al-Arabi* were not proper as a matter of law.  None of the

arguments raised by Defendants relative to service of the complaints upon them warrant

dismissal.

Defendants argue that the Plaintiffs' chosen method to attempt service by publication was

not reasonably calculated to advise them of this lawsuit.  It is difficult to argue credibly that one

has not received notice of a lawsuit when one has retained counsel, appeared, and filed a motion

to dismiss.  Nevertheless, Defendants argue that notice of the lawsuit in the *USA Today*,

*International Herald Tribune*, and the *Al-Quds Al-Arabi* newspapers was insufficient.

Defendants further assert that the *Al-Quds Al-Arabi*, which is published in Arabic, is not

distributed in Saudi Arabia and therefore failed to provide notice of the instant lawsuit.

The Second Circuit stated the following in *S.E.C. v. Tome,* 833 F.2d 1086, 1089 (2d

Cir.1987):

> To submit a party to the jurisdiction of a court, due process has long been held to
> require the giving of notice in such a manner that there can be little doubt that the
> party has actual notice of the claims in order to appear and defend.

Justice Jackson further stated:

> An elementary and fundamental requirement of due process in any proceeding
> which is to be accorded finality is notice reasonably calculated, under all the
> circumstances, to apprise interested parties of the pendency of the action and
> afford them an opportunity to present their objections.

*Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 314 (1950).  The question before this Court

therefore is whether publication in the *USA Today*, *International Herald Tribune*, and the *Al-*

*Quds Al-Arabi* newspapers was "reasonably calculated" to notify Defendants of the suit against

them so as to satisfy due process.  Defendants' appearance in this case sufficiently demonstrates that service by publication was adequate and thus consistent with due process requirements.

The Second Circuit stated in *Tome*:  "The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of the adequacy of constructive notice."  *Tome,* 833 F.2d at 1089.  At a minimum, in this instance there is constructive notice because Defendants have appeared to defend this action.  As the United States Supreme Court stated in *Grannis v. Ordean,* 234 U.S. 385, 394 (1914), "the fundamental requisite of due process of law is the opportunity to be heard."  The record in this matter establishes that service by publication was adequate, that Defendants received notice of the suit, understood that they should hire counsel, and understood their rights because they instructed said counsel to file a motion to dismiss.  This manifests the adequacy of the notice by publication.  Justice Jackson succinctly summed up this matter when he wrote:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  *Milliken v. Meyer,* 311 U.S. 457 (1940); *Grannis v. Ordean,* 234 U.S. 385; *Priest v. Board of Trustees of Town of Las Vegas,* 232 U.S. 604 (1914); *Roller v. Holly,* 176 U.S. 398 (1900).  The notice must be of such nature as reasonable to convey the required information, *Grannis v. Ordean, supra,* and it must afford a reasonable time for those interested to make their appearance, *Roller v. Holly, supra,* and *cf Goodrich v. Ferris,* 214 U.S. 71 (1909). But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.  'The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals.' *American Land Co. v. Zeiss,* 219 U.S. 47, 67 (1911); *and see Blinn v. Nelson,* 222 U.S. 1, 7 (1911).

*Mullane,* 399 U.S. at 314-15.

By its September 15, 2004 Order, this Court agreed that publication in these periodicals was appropriate.[11]  It is significant to point out that Defendants were represented by counsel in

---

[11] Indeed, this Court recognized that publication of the notice in the the *Al-Quds Al-Arabi* was reasonably calculated to apprise defendants of the lawsuit.  The *Al-Quds Al-Arabi* is published in London and is circulated in Europe, the

the consolidated action (03 MDL 1570) at the time of the Order permitting publication and was arguably notified that the Plaintiffs intended to serve them in this manner.[12]   Actual publication did not begin until December 22, 2004.   During that three month period, multiple defendants (both foreign and domestic) who were identified on the publication list came forward to accept service and negotiate briefing schedules.   Counsel for Defendants could have similarly contacted the Plaintiffs to discuss an agreement to accept service on behalf of their client but failed to do so.[13]   *See Ehrenfeld v. Bin Mahfouz*, 2005 U.S. Dist. LEXIS 4741 (S.D.N.Y. March 23, 2005) (holding that service on a foreign defendant's U.S. attorney would successfully provide the defendant with notice of the lawsuit).   Notice by publication is designed to impart information about a lawsuit.   However, there is nothing that requires the target to gain the information directly from reading the notice himself, as opposed to someone else advising him of the notice. Without question, the notice in this case accomplished the goal of informing Defendants of the instant action.

Defendants' further contention that service upon them by publication could only be effected through a newspaper widely distributed within Saudi Arabia is particularly unreasonable and disingenuous.   Saudi Arabia is an absolute monarchy, governed by Islamic law (*Sharia*). The Basic Law (which sets out the system of government, rights of the citizens and powers of the

---

Middle East, North Africa, and North America.   The newspaper has specifically been chosen in the past by terrorists for the granting of interviews, has published several fatwas by Osama bin Laden, and has similarly received statements from al Qaida.   Moreover, this Court is in agreement with other courts that the *Al-Quds Al-Arabi* is an appropriate place to publish the notice of suit.   *See Mwami, et al. v. Osama Bin Laden, et al.*, Case No. 99-0126 (D.D.C. Aug. 2, 1999); *Havlish v. Osama Bin Laden, et al.*, Case No. 02-0305 (D.D.C.) (J.R.); *Burnett v. Al Baraka Investment & Development Corp., et al.*, Case No. 02-1616 (D.D.C) (J.R.).

[12] The MDL docket clearly shows that Ms. Bernabei and Mr. Kabat were counsel of record for Defendants as of March 11, 2004 when this Court signed their *pro hac* admissions and subsequent entry of appearance.   *See* MDL 1570 Docket entries #20 and #21.   Defendants were sufficiently on notice of the Plaintiffs' claims against them at that time, and has been for the past **18** months.

[13] It should be noted that defense counsel did contact the Plaintiffs during this three month period to arrange service agreements for two of their clients who were listed on the publication list, Saudi Arabian Red Crescent Society and Dr. Abdul Rahman Al Swailem.   Curiously, defense counsel did not even attempt to negotiate similar agreements on behalf of other defendants they were representing at that time, and who were also on the publication list, including Defendants.

State) provides "that the media's role is to educate the masses and boost national unity *and that it can be banned if it gives rise to mischief and discord, compromises the security of the State and its public image, or offends man's dignity and rights*."  Consistent with this view of the media's role in Saudi society, the government actively restricts freedom of speech and of the press, and routinely imprisons and otherwise sanctions members of the media who engage in conduct deemed inimical to the interests of the State.  Given the Saudi regime's absolute dominance of the media and the draconian sanctions it has imposed upon members of the press, it is absolutely unreasonable to suggest that any Saudi periodical would have agreed to publish notice of this suit, which names the Saudi government and prominent members of the Saudi Monarchy as defendants.  In fact, the *Federal* Plaintiffs made several attempts to contact the Saudi newspaper Al Hayat, which is owned by Prince Khalid Bin Sultan Bin Abdul Aziz Al Saud, to discuss publication of the notice.  Those calls were never returned.

Defendants further argue that the Plaintiffs have offered no explanation as to why they could not be served by a process server in Saudi Arabia.  This argument is particularly misleading considering the *Burnett* Plaintiffs have briefed this exact issue in their oppositions to several motions to dismiss filed with this Court by Ms. Bernabie and Mr. Kabat.  *See Burnett* Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss of Defendant Shahir A. Batterjee, pp. 10-11 (filed June 30, 2004) (stating that Nelson Tucker, lead process server for the *Burnett* plaintiffs, reports a historical difficulty in finding individuals willing to execute service of process in Saudi Arabia and that the private process server he hired was subsequently murdered while attempting personal service of process in Harad, Saudi Arabia).  Plaintiffs were unwilling to put anyone else in harm's way when publication of the notice of suit, along with the considerable publicity the cases had already received here and in Arab newspapers in Saudi Arabia, would provide sufficient notice of these lawsuits.

Finally, Defendants claim that actual notice is no substitute for proper service of process under Rule 4.   Defendants do not take into account governing precedent that addresses service by publication.  As stated by the Second Circuit in *Tome*, in which defendants were served by publication:  "The 'reasonably calculated' analysis need not be relied on exclusively in this case because we are not dealing with the question of the adequacy of *constructive* notice."  833 F.2d at 1093 (emphasis in original).  At a minimum, in this instance there is constructive notice, because Defendants have appeared to defend this action.  As the United States Supreme Court stated in *Grannis v. Ordean*, 234 U.S. 385, 394 (1914), "the fundamental requisite of due process of law is the opportunity to be heard."  The record in this matter establishes that Defendants did receive notice of the suit, understood that they should hire counsel, and understood their rights because they instructed said counsel to file a motion to dismiss.  This manifests the adequacy of the notice by publication.

Defendants do not contend that Rule 4 contains a specific requirement with which the Plaintiffs did not comply, but rather, contend that service was insufficient to apprise them of this action.  As *Tome* instructs, actual notice is an appropriate consideration in analyzing service by publication made pursuant to a court order under Rule 4(f)(3) (allowing service on a foreign defendant "as directed by order of the court").  Here, Plaintiffs complied with Rule 4 and followed this Court's Order allowing service by publication, proven effective by Defendants' receiving actual notice of this action.

In sum, Plaintiffs obtained permission from this Court to serve Defendants by publication.  Defendants were served in this manner and in fact received notice of the pendency of the action.  The action should not be dismissed for improper service of process.

**V.       CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that Mohamed Ali Mushaty and the Mushayt for Trading Establishment's Motion to Dismiss be denied in all respects, with prejudice.

Respectfully submitted,

| | |
|---|---|
| | COZEN O'CONNOR |
| Dated: September 20, 2005 | BY: _____ |
| |     Stephen A. Cozen, Esquire |
| |     Elliott R. Feldman, Esquire |
| |     Sean P. Carter, Esquire |
| |     Adam C. Bonin, Esquire |
| |     1900 Market Street |
| |     Philadelphia, PA 19103 |
| |     Tele: (215) 665-2000 |
| |     Fax: (215) 665-2013 |
| |     Attorneys for *Federal Insurance* Plaintiffs |
| |     Ronald L. Motley, Esq. (RM-2730) |
| |     Jodi Westbrook Flowers, Esq. |
| |     Donald A. Migliori, Esq. |
| |     Michael Elsner, Esq. (ME-8337) |
| |     MOTLEY RICE LLC |
| |     28 Bridgeside Boulevard |
| |     P.O. Box 1792 |
| |     Mount Pleasant, South Carolina 29465 |
| |     Telephone: (843) 216-9000 |
| |     Paul J. Hanly, Jr., Esq. (PH-5486) |
| |     Jayne Conroy, Esq. (JC-8611) |
| |     Andrea Bierstein, Esq. (AB-4618) |
| |     HANLY CONROY BIERSTEIN & |
| |       SHERIDAN, LLP |
| |     415 Madison Avenue |
| |     New York, NY 100 17-11 1 1 |
| |     Telephone: (212) 401-7600 |
| |     Attorneys for *Burnett*, *EuroBrokers* and *WTC Properties* Plaintiffs |

|  | Robert M. Kaplan (RK1428)<br>FERBER FROST CHAN & ESSNER, LLP<br>530 Fifth Avenue, 23rd Floor<br>New York, New York 10036-5101<br>(212) 944-2200<br><br>Attorneys for *Continental* Plaintiffs |
|--|--|
|  | Attorney for the O'Neill Plaintiffs<br>David H. Fromm, Esq. (DH-9334)<br>Frank J. Rubino, Jr., Esq. (FR-6202)<br>BROWN GAVALAS & FROMM LLP<br>355 Lexington Avenue<br>New York, New York 10017<br>(212) 983-8500<br><br>Attorneys for Plaintiff *New York Marine And General Insurance Company* |

PHILA1\2347234\1 117430.000