**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x

IN RE TERRORIST ATTACKS ON                          CIVIL ACTION NO.

    SEPTEMBER 11, 2001                          03 MDL 1570 (GBD)

----------------------------------------------------------x

FIONA HAVLISH, in her own right                      :
and as Executrix of the ESTATE OF                    :
DONALD G. HAVLISH, JR., Deceased,                    :
                                                     :      CIVIL ACTION NO.
RUSSA STEINER, in her own right                      :      03-CV-9848 – GBD
and as Executrix of the ESTATE OF                    :
WILLIAM R. STEINER, Deceased,                        :      Case Transferred from the
                                                     :      United States District Court
CLARA CHIRCHIRILLO, in her own right                 :      for the District of Columbia
and as Executrix of the ESTATE OF                    :      Case Number 1:02CV00305
PETER CHIRCHIRILLO, Deceased,                        :
                                                     :
TARA BANE, in her own right,                         :      **PLAINTIFFS' PROPOSED**
and as Executrix of the ESTATE OF                    :      **FINDINGS OF FACT AND**
MICHAEL A. BANE, Deceased,                           :      **CONCLUSIONS OF LAW**
                                                     :      **WITH RESPECT TO**
GRACE M. PARKINSON-GODSHALK, in her                  :      **DAMAGES**
own right and as Executrix of the ESTATE OF          :
WILLIAM R. GODSHALK, Deceased,                       :
                                                     :
ELLEN L. SARACINI, in her own right                  :
and as Executrix of the ESTATE OF                    :
VICTOR J. SARACINI, Deceased,                        :
                                                     :
THERESANN LOSTRANGIO, in her own right               :
and as Executrix of the ESTATE OF                    :
JOSEPH LOSTRANGIO, Deceased, *et al.*,               :
                                                     :
               Plaintiffs,      :
      v.                                     :
                                                     :
SHEIKH USAMAH BIN-MUHAMMAD                           :
BIN-LADEN, a.k.a. OSAMA BIN-LADEN,                   :
                                                     :
AL-QAEDA/ISLAMIC ARMY,                               :
an unincorporated association, *et al.*,             :

*FOREIGN STATE DEFENDANTS*:  :
  :
THE ISLAMIC REPUBLIC OF IRAN,  :
  :
AYATOLLAH ALI-HOSEINI  KHAMENEI,  :
  :
ALI AKBAR HASHEMI RAFSANJANI,  :
  :
IRANIAN MINISTRY OF  :
INFORMATION AND SECURITY,  :
  :
THE ISLAMIC REVOLUTIONARY  :
GUARD CORPS,  :
  :
HEZBOLLAH,  :
an unincorporated association,  :
  :
THE IRANIAN MINISTRY  :
OF PETROLEUM,  :
  :
THE NATIONAL IRANIAN  :
TANKER CORPORATION,  :
  :
THE NATIONAL IRANIAN  :
OIL CORPORATION,  :
  :
THE NATIONAL IRANIAN  :
GAS COMPANY,  :
  :
IRAN AIRLINES,  :
  :
THE NATIONAL IRANIAN  :
PETROCHEMICAL COMPANY,  :
  :
IRANIAN MINISTRY OF  :
ECONOMIC AFFAIRS AND FINANCE,  :
  :
IRANIAN MINISTRY OF  :
COMMERCE,  :
  :
IRANIAN MINISTRY OF DEFENSE  :
AND ARMED FORCES LOGISTICS,  :

THE CENTRAL BANK OF THE                    :
ISLAMIC REPUBLIC OF IRAN, *et al.*,        :
                                            :
                              Defendants.   :

## *TABLE OF CONTENTS*

I.    PLAINTIFFS' PROPOSED FINDINGS OF FACT

    a.   Proposed Findings of Fact Regarding Claimants…………...…..¶ 1 to ¶ 182

    b.   Proposed Findings of Fact Regarding Expert Reports………..¶ 183 to ¶ 231

II.   PLAINTIFFS' PROPOSED CONCLUSIONS OF LAW

    a.   Damages Available Under FSIA………………………………..¶ 232 to ¶ 239

    b.   Damage Awards to Decedents' Estates……………...……..¶ 240 to ¶ 290

    c.   Damage Awards to Individual Claimants……………...……..¶ 291 to ¶ 301

    d.   Punitive Damage Awards to Plaintiffs……………...……….¶ 302 to ¶ 314

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND**

## CONCLUSIONS OF LAW WITH RESPECT TO DAMAGES

AND NOW, with liability against all Defendants having been established by the entry of Plaintiffs' Findings of Fact and Conclusions of Law on December 22, 2011, Plaintiffs now come to hereby respectfully submit Plaintiffs' Proposed Findings of Fact and Conclusions of Law with Respect to Damages.

**A.  PROPOSED FINDINGS OF FACT**

### The Claimants

**a)  Claims Involving Decedents' Estates and Their Families**

1.      Plaintiff **Fiona Havlish** is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **Donald G. Havlish, Jr.**, a decedent who was killed as a result of a terrorist attacks on the World Trade Center Towers in New York City on September 11, 2001.[1]  **Donald G. Havlish, Jr.** was employed by AON, Inc. and worked on the 101st floor of the South Tower of the World Trade Center, Two World Trade Center, New York, New York.  Plaintiff **Fiona Havlish** has been appointed the Executrix of the **Estate of Donald G. Havlish, Jr**.  **Fiona Havlish**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action in her capacity as the Executrix of the Estate. See Folder 1, provided via CD, for photos of the Decedent. See also Third Amended Complaint, ¶¶ 4-6

2.      Plaintiff **Fiona Havlish** also makes a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Donald G. Havlish** on September 11, 2001. It was not until April 4, 2002, that Plaintiff **Fiona**

---

[1]    With the exception of Ms. Havlish, who is listed as the lead Plaintiff in this case, the remaining Plaintiffs who represent the Estates of a Decedent have been listed in alphabetical order for organizational purposes.

**Havlish** received definitive confirmation that her husband was killed as a result of the terrorist attacks perpetrated by Defendants on September 11, 2001.  On that day, the Federal Bureau of Investigation, the local police chief, and the family's minister arrived at the home of Plaintiff **Fiona Havlish** to inform her that a small part of Decedent **Donald G. Havlish, Jr.'s** body had been found and identified via DNA testing.  In the context of the horrific suffering experienced by thousands of families as a result of the 9/11 attacks, Plaintiff **Fiona Havlish** grimly refers to herself as one of the "lucky ones" because at least some small portion of Decedent **Donald G. Havlish, Jr.** was found and identified.  "On September 12, 2001," **Fiona Havlish** writes, "[our 3 year old daughter] Michaela woke up and looked at me with a smile and said "Where is Daddy?" I took a deep breath and the tears began.  I held her and told her that daddy was in heaven and was one of her guardian angels now."  See Folder 2, provided via CD.  See also Third Amended Complaint, ¶¶ 4-6; 375-421; Declaration of Fiona Havlish ¶ 6, 9.

3.      Decedent **Donald G. Havlish, Jr.** is also survived by his father, **Donald Havlish, Sr.**, who is a resident of the State of South Carolina.  Plaintiff **Donald Havlish, Sr.** makes a claim for wrongful death and other causes of action against all Defendants as a result of the murder of **Donald G. Havlish, Jr.** on September 11, 2001.  "I miss my son very much," **Donald Havlish, Sr.** writes in his Declaration.  "I am sorry that I do not have the fellowship with him that I looked forward to, particularly in my later years. Each Sunday, at Church, I visit the columbarium where Don's ashes, those from the World Trade Center, are buried.  I say a prayer for both Don and his mother.  To this day I still mourn his absence."  See Folder 3, provided via CD.  See also Third Amended Complaint, ¶ 69; ¶¶ 375-421; Declaration of Donald Havlish, Sr. ¶ 11.

4.      Decedent **Donald G. Havlish, Jr.** is also survived by his brother, **William Havlish**, who is a resident of the State of Georgia.  Plaintiff **William Havlish** makes a claim for wrongful death and other causes of action against all Defendants as a result of the murder of **Donald G. Havlish** on September 11, 2001.  "All of the media frenzy did not allow me to go through the normal process of grieving," **William Havlish** writes in his Declaration.  "When my mother had died of cancer, for instance, I had dealt with it much better and was able to put it behind me. Don's death is different because it is brought up year after year, again and again.  It does not help the grieving process."  See Folder 4, provided via CD.  See also Third Amended Complaint, ¶ 69; ¶¶ 375-421; Declaration of William Havlish ¶ 7.

5.      Decedent **Donald G. Havlish, Jr.** is also survived by his sister, **Susan Conklin**, who is a resident of the State of Georgia.  Plaintiff **Susan Conklin** makes a claim for wrongful death and other causes of action against all Defendants as a result of the murder of **Donald G. Havlish** on September 11, 2001.  "I gained at least 100 pounds [following the death of **Donald G. Havlish**]," **Susan Conklin** writes in her Declaration. "Don's death was a horrible experience for me and my family.  Our family gatherings and holidays have all changed.  When you lose people, those family ties are never the same afterward.  Don's death has been a devastating thing for his daughter and the rest of the family."  See Folder 5, provided via CD.   See also Third Amended Complaint, ¶ 69; ¶¶ 375-421. See also Declaration of **Susan Conklin** ¶ 10, 11.

6.      Plaintiff **Tara Bane** is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **Michael A. Bane**, a decedent who was killed as a result of a terrorist attacks on the World Trade Center Towers in New York City on September 11, 2001.

**Michael A. Bane** was employed by Marsh & McLennan Company on the 100th floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Tara Bane** has been appointed the **Executrix of the Estate of Michael A. Bane.  Tara Bane**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity of the Executrix of the Estate.  See Folder 6, provided via CD, for materials from **Michael A. Bane's** Memorial Service and photographs. See also Third Amended Complaint, ¶¶ 13-14; 375-421.

7.     Plaintiff **Tara Bane** also makes a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Michael A. Bane** on September 11, 2001.  The body of Decedent **Michael A. Bane,** a former high school drop-out who eventually earned a college degree before being named an Assistant Vice President at Marsh & McLennan Company, has never been recovered. "I never did get a call from Michael that day," writes **Tara Bane** in her Declaration.  "I later spoke with his co-worker's wife who received a call from her husband, but all she could hear were screams.  He called her several times but did not speak.  All she heard were the screams of others.  What is clear to me is that Michael most definitely suffered greatly.  I don't know for how long, but I do know that no human being should have had to endure what my husband had to endure.  I believe that the intense fear and panic I felt was nothing compared to what he experienced in his last minutes, or his last hours, of his life." See Folder 7, provided via CD.  See also Third Amended Complaint, ¶¶ 13-14; 375-421; Declaration of Tara Bane (now Tara Bane DellaCorte), ¶ 10; Declaration of Christina Bane-Hayes ¶ 23.  See also proprietary materials of Marsh & McLennan Company filed under seal via CD.

8.    Decedent **Michael A. Bane** is also survived by his father, **Donald Bane**, who is a
resident of the State of New York.  Plaintiff **Donald Bane** makes a claim for wrongful
death and other causes of action against all Defendants as a result of the murder of
**Michael A. Bane** on September 11, 2001.  Of his son, **Donald Bane** writes, "Michael
and I had established a very good and loving adult relationship, communicating on a
mature level.  He would have been a dependable and trustworthy son throughout our
lives.  His loss is also great to his siblings.  He made a remarkable adaptation to life in
spite of his early handicaps, completing his education, finding good employment, and
succeeding in his field to the position of Assistant Vice-President at Marsh & McLennan.
His violent departure from this life had has a terrible and profound effect on this family.
We are still devastated."  <u>See</u> Folder 8, provided via CD.  <u>See also</u> Third Amended
Complaint, ¶ 67; ¶¶ 375-421; Declaration of Jack Donald Bane ¶ 18.

9.    Decedent **Michael A. Bane** is also survived by his sister, **Christina Bane-Hayes**, who is
a resident of the Commonwealth of Virginia.  Plaintiff **Christina Bane-Hayes**, under
§1605(a) of the Foreign Sovereign Immunities Act, makes a claim for wrongful death and
asserts other causes of action against all Defendants as a result of the murder of **Michael
A. Bane** on September 11, 2001. **Christina Bane-Hayes** writes of her brother, "I have
Michael's Stony Brook sweatshirt.  When I wear it I feel safe, as though he has his arms
wrapped around me, holding on to me for dear life.  To take it off is a sorrowful feeling,
letting go of him again.  And yet feeling him near me is worth the angst."  <u>See</u> Folder 9,
provided via CD. <u>See</u> also Third Amended Complaint, ¶¶ 66; 375-421; Declaration of
Christina Bane-Hayes ¶ 36.

10.   Plaintiff **Krystyna Boryczewski** is a resident of the State of New Jersey and is the

surviving natural mother of **Martin Boryczewski**, a decedent who was killed as a result of the terrorist attacks on the World Trade Center Towers in New York City on September 11, 2001.  **Martin Boryczewski** worked on the 104th Floor of the North Tower of the World Trade Center, One World Trade Center.  Plaintiff **Krystyna Boryczewski** has been appointed as the Executrix of the **Estate of Martin Boryczewski**. **Krystyna Boryczewski**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the Estate. See Folder 10, provided via CD, for a photo of the Decedent in his minor league baseball uniform.  See also Third Amended Complaint, ¶¶ 103-105; 375-421.

11.     Plaintiff **Krystyna Boryczewski** also makes a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Martin Boryczewski** on September 11, 2001.  Neither the body nor any personal effects of Decedent **Martin Boryczewski** were ever recovered from Ground Zero.  A Certificate of Death was issued by The City of New York on October 20, 2001.  The cause of death is listed as homicide. "Holidays have not been the same for me and my family," **Krystyna Boryczewski** writes in her Declaration. "[The holidays] are extremely trying and difficult.  I don't like them, but when the family gets together I try to make the best of it. I haven't had a Christmas tree since 2001 and I don't know if I will ever have a tree again. The pain I feel over the loss of my son Marty has not lessened in the years since 9/11. The hole that has been left in my heart as a result of my son Marty has not shrunk one iota." See Folder 11, provided via CD. See also Third Amended Complaint, ¶¶ 103-105; 375-421; Declaration of Krystyna Boryczewski ¶ 13, 14.

12.     Decedent **Martin Boryczewski** was also survived by his father, **Michael Boryczewski,**

who was a resident of the State of New Jersey.  Plaintiff **Michael Boryczewski** made a claim for wrongful death and asserted other causes of action against all Defendants as a result of the murder of **Martin Boryczewski** on September 11, 2001. **Michael Boryczewski** has since expired and an award will be made to the Estate of **Michael Boryczewski**.  While alive, Plaintiff **Michael Boryczewski** composed a statement regarding the loss of his son on September 11, 2001.  It reads, in part, "I came to America for a better life for my Family and myself.  In my wildest nightmare, I never would have imagined the fate of my only Son in the land of liberty and justice.  After what I have endured in my life,[2] the fate of my only Son is physically, mentally, emotionally devastating and horrific.  If I could give my life for my Son, I would, so that He may have the opportunity to live a beautiful, full life.  I love Him, I miss Him, and I will forever." <u>See</u> Folder 12, provided via CD.  <u>See also</u> Third Amended Complaint, ¶¶ 103-105; 375-421; My Son, Martin Boryczewski by His Father, Michael Boryczewski.[3]

13.  Decedent **Martin Boryczewski** is also survived by his sister, **Julia Boryczewski**, a resident of the State of New Jersey.  Plaintiff **Julia Boryczewski** makes a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Martin Boryczewski** on September 11, 2001.  **Julia Boryczewski** writes of her experience, "Marty never came home.  And, we never got anything of him back.  Nothing. Not any personal effects. Not a piece of him. How sick is it that you now talk about pieces of human being identified as a good thing?  Family members were

---

[2]  Mr. Boryczewski was interred in German labor camps during World War II and was hospitalized for 8 months   for malnutrition after being liberated by American forces.

[3]  Plaintiff Michael Boryczewski expired during the pendency of this lawsuit.  Any award will be made to the Estate of Michael Boryczewski.  A Suggestion of Death will be filed contemporaneously with this document.

encouraged when any remains of their loved one were found. It's so sick and twisted. But that's what a post-September 11th world looks like."  See Folder 13, provided via CD.  See also Third Amended Complaint, ¶¶ 106; 375-421; Declaration of Julia Boryczewski, ¶ 4.

14.    Decedent **Martin Boryczewski** is also survived by his sister, **Michele Boryczewski**, a resident of the State of New Jersey.  Plaintiff **Michele Boryczewski** makes a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Martin Boryczewski** on September 11, 2001.  Of the horror of the attacks of September 11, 2001, **Michele Boryczewski** writes, "Although no one had spoken directly to Marty after the attacks, I did speak to a gentleman at one of Cantor Fitzgerald's offices that was located in another state. I don't remember his name or where his office was located. I do know that I spoke to him prior to the North Tower collapse. He was hysterical. He had been on a conference call with the NYC Cantor office at the time it was hit by the plane. I asked him if he knew anything about how the people in the NYC office were or what was happening there. He was crying hysterically and said that the man he had been on the phone with at the time of and immediately after the attack was screaming in agony, screaming that his skin was melting off his body.  After hearing this, I dropped the phone.  I don't know who was on the phone from my brother's office, but I do know it was someone on my brother's floor and someone on my brother's team. Perhaps it was my brother, for his team was small, comprised of only 6 people.  I will never know.  I do know that my brother and the rest of his team endured horrible pain and suffering."  See Folder 14, provided via CD.  See also Third Amended Complaint, ¶¶ 106; 375-421; Declaration of Michele Boryczewski, ¶ 6.

15.     Plaintiff **Richard A. Caproni** and is a resident of the State of Maryland and is the

surviving father of **Richard M. Caproni**, a decedent who was killed as a result of the

terrorist attacks on the World Trade Center Towers in New York City on September 11,

2001.  **Richard M. Caproni** was employed by Marsh & McLennan Company and

worked on the 98th Floor of the North Tower of the World Trade Center, One World

Trade Center, New York, New York. Plaintiff **Richard A. Caproni** has been appointed

as the Administrator of the **Estate of Richard M. Caproni**.  **Richard A. Caproni, Sr.**,

under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against

all Defendants in his capacity as the Administrator of the Estate. See Folder 15, provided

via CD, for family photos and a Newsday article.  See also Third Amended Complaint, ¶¶

147-149; 375-421.

16.     **Richard A. Caproni** also brings a claim in his own right for wrongful death and asserts

other causes of action against all Defendants as a result of the murder of **Richard M.**

**Caproni** on September 11, 2001.  Decedent **Richard M. Caproni** went to work early on

the morning of September 11, 2001, with his close friend Mike Harmon in order to catch

up on paperwork.  Plaintiff **Lisa Caproni-Brown** was informed eight days following the

attacks perpetrated by Defendants that Decedent **Richard M. Caproni** was engaged in a

telephone conversation with a colleague in Chicago, IL at the time American Airlines

Flight 11 struck the North Tower.  A Certificate of Death was issued by The City of New

York for Decedent **Richard M. Caproni** on October 11, 2001.  The cause of death was

listed as homicide.  An intact body was never recovered and the decedent was eventually

identified only through DNA testing a year following the attacks.  The remains of

Decedent **Richard M. Caproni** were finally laid to rest in April 2005.  **Richard A.**

**Caproni** writes in his Declaration that, "My beautiful son was exploded all over lower Manhattan.  How could somebody do this to an innocent human being?  I pray that no other family will endure what we have had to endure since 9/11.  We lost something precious, a life that can never be replaced."  <u>See</u> Folder 16, provided via CD.  <u>See</u> <u>also</u> Third Amended Complaint, ¶¶ 147-149; 375-421; Declaration of Richard Caproni ¶¶ 7, 10; Declaration of Dolores Caproni ¶¶ 7-8; Declaration of Lisa Caproni-Brown, ¶ 8.

17.     Decedent **Richard M. Caproni** is also survived by his natural mother, **Dolores Caproni**, who is a resident of the State of Maryland.  Plaintiff **Dolores Caproni** brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Richard M. Caproni** on September 11, 2001.  Plaintiff **Dolores Caproni** writes in her Declaration that, "[Richard] was only 34 years old.  He had dreams and ambitions.  He will never have the wonderful feeling of getting married, becoming a father, and being an uncle to his sisters' and brothers' children.  This has affected my whole life.  I'm not the person I was."  <u>See</u> Folder 17, provided via CD.  <u>See</u> <u>also</u> Third Amended Complaint, ¶¶ 147-149; 375-421; Declaration of Dolores Caproni, ¶ 8.

18.     Decedent **Richard M. Caproni** is also survived by his brother, **Christopher Caproni**, who is a resident of the State of Maryland. Plaintiff **Christopher Caproni**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Richard M. Caproni** on September 11, 2001.  **Christopher Caproni** had a clear view of the Twin Towers through a window in his office building on that day.  He personally saw the North Tower, the building where Decedent **Richard M. Caproni** was employed, burning after being deliberately struck by American Airlines Flight 11 following the hijacking

effectuated by, or enabled by, Defendants.  **Christopher Caproni** also personally witnessed United Flight Airlines 175 slam into the South Tower following the hijacking effectuated by, or enabled by, Defendants.  **Christopher Caproni's** apartment was only blocks from Ground Zero.  Not only was he without access to his apartment for two weeks, but he was forced to view the site where his brother had died every day after he was permitted back into his apartment.  See Folder 18, provided via CD. See also Third Amended Complaint, ¶ 150; ¶¶ 375-421; Declaration of Christopher Caproni ¶¶ 14, 20.

19. Decedent **Richard M. Caproni** is also survived by his brother, **Michael Caproni**, who is a resident of the State of New York.  Plaintiff **Michael Caproni**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of  **Richard M. Caproni** on September 11, 2001.  **Michael Caproni** writes in his Declaration that, "To assess the actual damage that my brother's loss has taken on our family is impossible.  It is many years later and I still have trouble sleeping.  During the week of September 11th, I have trouble speaking to people.  I am constantly reminded of my brother's death and there are times that I feel he will never rest in peace.  I try to remember what a great person Rich was and how influential he was in my life, but it is constantly overshadowed by the way he died."  See Folder 19, provided via CD. See also Third Amended Complaint, ¶ 150; ¶¶ 375-421; Declaration of Michael Caproni, ¶ 8.

20. Decedent **Richard M. Caproni** is also survived by his sister, **Lisa Caproni-Brown**, a resident of the State of New York.  Plaintiff **Lisa Caproni-Brown**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of  **Richard A. Caproni**

on September 11, 2001. On December 15, 2011, Plaintiff **Lisa Caproni-Brown** wrote, "We went to the World Trade Ceremony for seven years.  It is like attending the same funeral every year.  No holiday or birthday or day will ever be the same.  Words can't really describe the toll this has taken on our family.  It is important for people to be held accountable for the enormous amount of pain that they have caused." See Folder 20, provided via CD. See also Third Amended Complaint, ¶ 150; ¶¶ 375-421; Declaration of Lisa Caproni-Brown, ¶¶ 10-11.

21.     Plaintiff **Clara Chirchirillo** is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **Peter Chirchirillo**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Peter Chirchirillo** was employed by Marsh, Inc. on the 98th floor of the North Tower in the World Trade Center, One World Trade Center, New York, New York. Plaintiff **Clara Chirchirillo** has been appointed the Executrix of the **Estate of Peter Chirchirillo**.  **Clara Chirchirillo,** under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the Estate. See Folder 21, provided via CD for media and memorabilia related to **Peter Chirchirillo**.  See also Third Amended Complaint, ¶¶ 10-12; 375-421.

22.     Plaintiff **Clara Chirchirillo** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Peter Chirchirillo** on September 11, 2001.  Clara Chirchirillo wrote on January 12, 2012, that, "To date, I have received Peter's remains on two separate occasions.  Were it not for the descriptions that accompanied the remains of my deceased husband, no one, not even my family, would be able to recognize them.  The two discoveries were years apart, opening

up wounds once again that I thought were healed.  With each find, and with each new discovery of his remains, and with each newly revised death certificate, I revisit and relive the most painful time in my life."  See Folder 22, provided via CD. See also Third Amended Complaint, ¶¶ 10-12; 375-421; Declaration of Clara Chirchirillo, ¶ 17.

23.    Decedent **Peter Chirchirillo** is also survived by his sister, **Livia Chirchirillo.**  Plaintiff **Livia Chirchirillo**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Peter Chirchirillo** on September 11, 2001.   Plaintiff **Livia Chirchirillo**, who was working eight blocks from the World Trade Center Complex at the time of the terrorist attacks, personally heard and witnessed American Airlines Flight 11 flying low overhead and its crash into the North Tower where her brother, Decedent **Peter Chirchirillo**, was working.  She tried reaching him on his office phone upon arriving in her office but was unable.  As she was leaving her office to rush to the World Trade Center Complex to find her brother, the elevator in which she was a passenger shook from the impact of United Airlines Flight 175 striking the South Tower. See Folder 23, provided via CD. See also Third Amended Complaint, ¶ 12; ¶¶ 375-421; Declaration of Livia Chirchirillo, ¶ 4.

24.    Decedent **Peter Chirchirillo** is also survived by his sister, **Catherine Deblieck**.  Plaintiff **Catherine Deblieck**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Peter Chirchirillo** on September 11, 2001.  On January 29, 2012, Plaintiff **Catherine Deblieck** wrote of the attacks, "Peter was a victim.  We are all victims because his murder has affected my whole family." See Folder 24, provided via

CD. See also Third Amended Complaint, ¶ 12; ¶¶ 375-421; Declaration of Catherine
Deblieck, ¶ 19.

25.    Plaintiff **William Coale** is a resident of the Commonwealth of Pennsylvania and is the

surviving father of **Jeffrey Alan Coale**, a citizen of the Commonwealth of Pennsylvania

and a decedent who was killed as a result of a terrorist attack on the World Trade Center

Towers in New York City on September 11, 2001.  **Jeffrey Alan Coale** was employed as

the Assistant Wine Steward at the Windows on the World restaurant, located on the 106th

floor of the North Tower, One World Trade Center, New York, New York.  Plaintiff

**William Coale** has been appointed the Administrator of the **Estate of Jeffrey Alan**

**Coale.  William Coale,** under §1605(a) of the Foreign Sovereign Immunities Act, brings

a survival action against all Defendants in his capacity as the Administrator of the Estate.

See Folder 25, provided via CD, for photos and memorial service materials for **Jeffrey**

**Alan Coale**.  See also Third Amended Complaint, ¶¶ 31-33; 375-421.

26.    Plaintiff **William Coale** also brings claims in his own right for wrongful death and

asserts other causes of action against all Defendants as a result of the murder of **Jeffrey**

**Alan Coale** on September 11, 2001.  Decedent **Jeffrey Alan Coale** left the financial

world at Cantor Fitzgerald in order to work toward his dream of opening his own

restaurant.  He was originally scheduled off for September 11, 2001, but came to work

because the restaurant was hosting a breakfast.  On January 20, 2012, Plaintiff **William**

**Coale** wrote, "Jeffrey was only 31 when he was murdered.  He had a full working life

ahead of him…[a]t the time of his death he had not only a business plan but investors

committed in order to [attain] his goal.  I am sure he would have owned a successful

restaurant, but that is an unknown, so we all go forward as Jeff would have wanted us to,

thanking God for the special gift he gave us on 7/17/70 and took back on 9/11/01." <u>See</u> Folder 26, provided via CD.  <u>See also</u> Third Amended Complaint, ¶¶ 31-33; 375-421; Declaration of William Coale, ¶ 8.

27.     Plaintiff **Frances Coffey** is a resident of the State of New York and is the surviving spouse of **Daniel M. Coffey**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Daniel M. Coffey** worked on the 94th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Frances M. Coffey** has been appointed as the Executrix of the **Estate of Daniel M. Coffey**.  **Frances M. Coffey**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the Estate.  <u>See</u> Third Amended Complaint, ¶¶ 133-135; 375-421.

28.     Plaintiff **Frances M. Coffey** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Daniel M. Coffey** on September 11, 2001.  Decedent **Daniel M. Coffey** had survived the attack on the World Trade Center in 1993.  On September 11, 2001, Plaintiff **Frances M. Coffey** lost both her husband and a son.  "The constant media attention is also very painful to bear," **Frances M. Coffey** writes in her Declaration.  "We are constantly bombarded by reporters, even now ten years later.  Every year, on the anniversary, we hear from them.  It makes it very difficult to grieve, to be constantly reminded of what happened.  On one hand, I understand them.  They are curious, and they want a 'story.'  But, they do not understand that we are real people and that our pain and suffering is not a 'story.'  No one can understand what we went through.  No one should ever have to live

through what I did." See Folder 28, provided via CD.  See also Third Amended

Complaint, ¶¶ 133-135; 375-421; Declaration of Frances M. Coffey, ¶ 8.

29.     Decedent **Daniel M. Coffey** is also survived by an adult child, **Daniel D. Coffey, M.D.**,

who is a resident of the State of New York.  Plaintiff **Daniel D. Coffey, M.D.**, under

§1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and

asserts other causes of action against all Defendants as a result of the murder of **Daniel

M. Coffey** on September 11, 2001.  On February 6, 2012, Dr. Coffey wrote, "I did not

and do not want to go into the City.  I could not handle seeing constant reminders of

September 11th.  There was no way to escape the media attention, even around our

hometown.  Many other people lost loved ones on September 11th, but we were one of the

few families that lost two loved ones that day.  People knew that we had lost two people

in the attack, and receiving that kind of attention was horrible.  People would say to one

another as we walked by, 'You know, they lost two.'"  See Folder 29, provided via CD.

See also Third Amended Complaint, ¶ 136; ¶¶ 375-421; Declaration of Daniel M. Coffey

¶ 5.

30.     Decedent **Daniel M. Coffey** is also survived by an adult child, **Kevin M. Coffey**, who is

a resident of the State of New York.  Plaintiff **Kevin M. Coffey**, under §1605(a) of the

Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other

causes of action against all Defendants as a result of the murder of **Daniel M. Coffey** on

September 11, 2001.  "[On September 14, 2001], I felt like I had a definitive answer as to

whether or not [**Daniel M. Coffey** and **Jason M. Coffey**] were gone," writes **Kevin M.

Coffey** in his Declaration.  "But I don't think this is something one comes to terms with.

I learned to deal with it.  I manage.  It is not like they died of cancer or another natural

cause.  This is not even like a bus accident.  This is…they are bits and pieces.  All they did was go to work.  They went to work and sat at their desk and a plane hit their building.  I can't say that I will ever necessarily deal with that.  I just learned to manage it."  See Folder 30, provided via CD.  See also Third Amended Complaint, ¶ 136; ¶¶ 375-421; Declaration of Kevin M. Coffey, ¶ 7.

31.  Plaintiff **Frances M. Coffey** is a resident of the State of New York and is the surviving mother of **Jason M. Coffey**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Jason M. Coffey** worked on the 98th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Frances M. Coffey** has been appointed as Administratrix of the **Estate of Jason M. Coffey**.  **Frances M. Coffey**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Administratrix of the Estate.  See Third Amended Complaint, ¶¶ 137-139; 375-421.

32.  Plaintiff **Frances M. Coffey** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Jason M. Coffey** on September 11, 2001.  "September 11, 2001, was supposed to be a happy day," **Frances M. Coffey** writes in her Declaration.  "It was a day full of plans and exciting events for [**Daniel M. Coffey** and **Jason M. Coffey**].  The father and son both worked together in the World Trade Center and were planning to meet for lunch and pick up Colleen's [**Jason M. Coffey's** girlfriend] engagement ring. Little did we suspect that this happy, exciting day would turn out to be the most horrible one of our lives!!!  It turned out later that Jason was on the phone with Colleen when the plane hit.  All she heard was

a loud noise and they were cut off."   See Folder 32, provided via CD.  See also Third

Amended Complaint, ¶¶ 137-139; 375-421; Declaration of Frances M. Coffey, ¶ 7.

33.       Decedent **Jason M. Coffey** is survived by his brother, **Daniel D. Coffey, M.D.**, who is a

resident of the State of New York.  Plaintiff **Daniel D. Coffey, M.D.**, under §1605(a) of

the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts

other causes of action against all Defendants as a result of the murder of **Jason M.**

**Coffey** on September 11, 2001. "Jason and I would talk once a week," writes Dr. Coffey

in his Declaration.  "The weekend before September 11th, Jason called me.  Jason asked if

I was getting married any time soon.  I responded that I was not and asked why he had

asked.  He said, 'Good, because I am finally going to beat you at something!' He was

dating a beautiful girl named Colleen and was planning on proposing to her.  In fact, he

had picked out the ring and was going to buy it [on September 11, 2001]." See Folder 33,

provided via CD.  See also Third Amended Complaint, ¶¶ 140; 375-421; Declaration of

Daniel M. Coffey, ¶ 9.

34.       Decedent **Jason M. Coffey** is survived by his brother, **Kevin M. Coffey**, who is a

resident of the State of New York. Plaintiff **Kevin M. Coffey**, under §1605(a) of the

Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other

causes of action against all Defendants as a result of the murder of **Jason M. Coffey** on

September 11, 2001. "I wonder how [**Daniel M. Coffey** and **Jason M. Coffey**] died, but I

didn't look into it because I did not really want the answer.  As soon as we found out that

they found parts just for a lack of a better term, I didn't want to know.  I do not want to

know if they burned, or if they had died when the building came down.  Were these

questions going through my head?  Yes.  That is part of what kept me from being able to

sleep.  Not on a normal day, I wouldn't think about it but in the quiet of the night it would

sneak out." <u>See</u> Folder 34, provided via CD.   <u>See also</u> Third Amended Complaint, ¶

140; ¶¶ 375-421; Declaration of Kevin M. Coffey, ¶ 13.

35.     Plaintiff **Keith A. Bradkowski** is a resident of the State of California and is the

appointed Administrator of the Estate of **Jeffrey D. Collman**, a decedent who was killed

as a result of a terrorist attack on the World Trade Center Towers in New York City on

September 11, 2001.  **Jeffrey D. Collman** was employed by American Airlines as flight

attendant on American Airlines Flight 11, which was crashed into the North Tower, One

World Trade Center by a hijacker.  Plaintiff **Keith A. Bradkowski**, under §1605(a) of the

Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his

capacity as the Administrator of the **Estate of Jeffrey D. Collman**.  <u>See</u> Folder 35,

provided via CD, for photographs and memorabilia of **Jeffrey D. Collman**. <u>See also</u>

Third Amended Complaint, ¶¶ 183-184.

36.     Decedent **Jeffrey D. Collman** is survived by his natural father, **Dwayne W. Collman**,

who is a resident of the State of Illinois.  Plaintiff **Dwayne W. Collman**, under §1605(a)

of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts

other causes of action against all Defendants as a result of the murder of **Jeffrey D.**

**Collman** on September 11, 2001.  On December 7, 2011, Mr. Collman wrote, "[Jeffrey]

was a great son and I miss him a lot.  Not a day goes by that I don't think about him, that

I do not visualize his blue eyes and blonde hair.  Frequently, I get a glimpse of someone

who resembles Jeff and my heart stops for a minute.  I hurt every day.  On Sunday,

September 11, 2011, I read the names of the Flight 11 crew at a memorial in Oswego, IL.

They had a pair of empty shoes for each of the 2997 victims of the terrorist attack lined

along the road to allow us to visualize the missing people.  This brought tears to everyone's eyes and illustrated yet again the enormity of America's loss and my own."  See Folder 36, provided via CD.   See also Third Amended Complaint, ¶ 185; ¶¶ 375-421; Declaration of Dwayne W. Collman, ¶¶ 4, 7.

37.　　Decedent **Jeffrey D. Collman** is survived by his brother, **Brian Collman**, who is a resident of the State of Nevada.  Plaintiff **Brian Collman**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Jeffrey D. Collman** on September 11, 2001.  On December 16, 2011, **Brian Collman** wrote, "I will always remember 9/11 with intense emotional feelings.  It is now part of our American history.  I lost a brother and a friend on September 11th.  My love for Jeffrey Dwayne Collman has not died."  See Folder 37 provided via CD.  See also Third Amended Complaint, ¶ 186; ¶¶ 375-421; Declaration of Brian Collman, ¶¶ 7, 10.

38.　　Decedent **Jeffrey D. Collman** is survived by his brother, **Charles Collman**, who is a resident of the State of North Carolina.  Plaintiff **Charles Collman**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Jeffrey D. Collman** on September 11, 2001.  On January 24, 2012, **Charles Collman** wrote, "My brother Jeffrey and I were very close.  I was his younger brother by one year and eight months.  We would speak once per week or once every two weeks, at the latest.  I had spoken to him on Sunday, September 9, two days before the attacks.  He did not mention about having an upcoming flight to Los Angeles.  I was told that he took another flight attendant's place at the last minute.  Every September 11th, I sit down and pray for my

brother at the time when the first plane hit the World Trade Center."  See Folder 38,
provided via CD. See also Third Amended Complaint, ¶ 186; ¶¶ 375-421; Declaration of
Charles Collman, ¶¶ 8, 16.

39.     Decedent **Jeffrey D. Collman** is survived by his sister, **Brenda Sorenson**, who is a
resident of the State of Florida.  Plaintiff **Brenda Sorenson**, under §1605(a) of the
Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other
causes of action against all Defendants as a result of the murder of **Jeffrey D. Collman**
on September 11, 2001.  On December 6, 2011, **Brenda Sorenson** wrote, "When I think
of Jeffrey I think about how much he loved traveling.  His job as a flight attendant was
perfect for him as it allowed him to travel.  [One] time when my parents asked Jeffrey to
watch me while they were out of town, he took me to the Bahamas!  I miss Jeffrey every
day.  I wish that I could talk to him.  I am sad that my four daughters did not and will not
get to know their uncle.  I think of him often.  He was just over forty when he died.  So
young, so very young, and so much life ahead of him."  See Folder 39, provided via CD.
See also Third Amended Complaint, ¶ 186; ¶¶ 375-421; Declaration of Brenda Sorenson,
¶¶ 7-9.

40.     Plaintiff **Loisanne Diehl** is a resident of the State of New Jersey and is the surviving
spouse of **Michael Diehl**, a decedent who was killed as a result of a terrorist attacks on
the World Trade Center Towers in New York City on September 11, 2001.  **Michael
Diehl** was employed by Fiduciary Trust Company and worked on the 90th Floor of the
South Tower of the World Trade Center, Two World Trade Center, New York, New
York.  Plaintiff **Loisanne Diehl** has been appointed the Executrix of the **Estate of
Michael Diehl**.  Plaintiff **Loisanne Diehl**, under §1605(a) of the Foreign Sovereign

Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of Michael Diehl**.  <u>See</u> Folder 40, provided via CD, for article from the *Newark Star-Ledger*.  <u>See also</u> Third Amended Complaint, ¶¶ 43-45; 375-421.

41.     Plaintiff **Loisanne Diehl** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Michael Diehl** on September 11, 2001.  Plaintiff **Loisanne Diehl** writes in her Declaration, "We had a funeral service in a small chapel where Michael's right hand, the only part of him that had been found, was to be entombed during the service.  His hand was placed into a rectangular urn next to the altar.  Then, it was carried by the funeral director to the wall and placed in a space that was intended for a normal-sized casket.  It was a very surreal experience.  By this time I had been to three memorial services, visited 'Ground Zero,' and been told that Michael was probably vaporized when the plane exploded near his office.  Now, with the presence of physical evidence, I did not know hot Michael had died, or how much he had suffered.  Thoughts of Michael suffering haunt me to this day."  <u>See</u> Folder 41, provided via CD; <u>See also</u> Third Amended Complaint, ¶¶ 43-45; 375-421; Declaration of Loisanne Diehl ¶ 17.

42.     Plaintiff **Morris Dorf** is a resident of the State of New Jersey and the surviving father of **Stephen Scott Dorf**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Stephen Scott Dorf** was employed by Euro Brothers, Inc. and worked on the 84th Floor of the South Tower of the World Trade Center, Two World Trade Center, New York, New York.  Plaintiff **Morris Dorf** has been appointed as the Executor of the **Estate of Stephen Scott Dorf**.  Plaintiff **Morris Dorf,** under §1605(a) of the Foreign Sovereign Immunities Act,

brings a survival action against all Defendants in his capacity as the Executor of the **Estate of Stephen Scott Dorf**.  See Third Amended Complaint, ¶¶ 96-98; 375-421.

43.     Plaintiff **Morris Dorf** also brings claims in his own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Stephen Scott Dorf** on September 11, 2001.  On February 19, 2010, Plaintiff **Morris Dorf** wrote, "My son always stood by the family and was constantly doing things for others.  I could always depend on him to take me to the doctors or the store.  He was a wonderful, responsible son."  See Folder 43, provided via CD.  See also Third Amended Complaint, ¶¶ 96-98; 375-421; Declaration of Morris Dorf ¶¶ 5,7.

44.     Decedent **Stephen Scott Dorf** is also survived by his sister, **Ann Marie Dorf**, who is a resident of the State of New Jersey.   Plaintiff **Ann Marie Dorf**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Stephen Scott Dorf** on September 11, 2001.  On December 15, 2011, Plaintiff **Ann Marie Dorf** wrote, "Stephen was the fire warden[4] for his company [located in the South Tower].  After the first plane hit the North Tower, he called my sister to let her know what was happening.  She called me and I turned on the radio, I then turned on the TV and saw everything.  Knowing my baby brother, the one who was always there for the family, was in a burning building and there was nothing I could do was unbearable.  My sister told him to just get out.  But knowing Stephen, he embraced his responsibilities as a fire warden.  Stephen's

---

[4]   To address the problems encountered during the response to the 1993 bombing of the World Trade Center, the Port Authority created "fire safety teams" from the civilian employees on each floor of the building, which consisted of a fire warden, deputy fire warden, and searchers.  Fire wardens would lead co-workers during fire safety drills.   Some civilians told the 9/11 Commission that their evacuation on September 11th was greatly aided by changes and training implemented by the Port Authority after the 1993 bombing.  See *The 9/11 Commission Report*, pp. 280-81.

co-worker told me that when the second plane hit, he was on the stairwell.  He said it

shook and people started running down the stairs.  The man suffered a broken leg, but he

got out alive.  He told me Stephen saved his life.  *Many people are still alive today*

*talking about what my baby brother did for them on Sept 11.*" (italics in original). <u>See</u>

Folder 44, provided via CD.  <u>See</u> <u>also</u> Third Amended Complaint, ¶ 99; ¶¶ 375-421;

Declaration of Ann Marie Dorf, ¶ 5.

45.     Decedent **Stephen Scott Dorf** is also survived by his brother, **Joseph Dorf**, who is a

resident of the State of New York.   Plaintiff **Joseph Dorf**, under §1605(a) of the Foreign

Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of

action against all Defendants as a result of the murder of **Stephen Scott Dorf** on

September 11, 2001. "I have hesitated to write this since the terrorist attacks first

ensued," states Plaintiff **Joseph Dorf** in his Declaration. "There are no words profound

enough to express my feelings.  Stephen will be missed dearly by everyone who knew

him." <u>See</u> Folder 45, provided via CD. <u>See</u> <u>also</u> Third Amended Complaint, ¶ 99; ¶¶

375-421; Declaration of Joseph Dorf, ¶ 8.

46.     Decedent **Stephen Scott Dorf** is also survived by his sister, **Michelle Dorf**, who is a

resident of the State of New Jersey.  Plaintiff **Michelle Dorf**, under §1605(a) of the

Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other

causes of action against all Defendants as a result of the murder of **Stephen Scott Dorf**

on September 11, 2001.  Plaintiff **Michelle Dorf** was the last member of her family to

speak to Decedent **Stephen Scott Dorf** while he was alive, immediately after the North

Tower was struck by American Airlines Flight 11.  "He was so upset when we were

talking that his voice was cracking every which way, he seemed scared to death," she

writes in her Declaration.  "Stephen said that bodies were being thrown from the windows because people were killing themselves.  I could not imagine what he was saying.  I told my brother to go downstairs and get out, but I did not really think his building would get hit.  If I had, I would have urged him more strongly, but I wasn't thinking at the time.  I wish I had told him, 'I love you, I do.'  I got a phone call from one of my brother's friends telling me that Stephen helped everyone get out.  Stephen was a fire warden and his friend saw him on the way back up to get others.  That was so like Stephen, even in this situation, he helped people with no fear for his own life."  See Folder 46, provided via CD.  See also Third Amended Complaint, ¶ 99; ¶¶ 375-421; Declaration of Michelle Dorf, ¶¶ 10, 13.

47.     Decedent **Stephen Scott Dorf** is also survived by his brother, **Robert Dorf**, who is a resident of the State of New Jersey.  Plaintiff **Robert Dorf**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Stephen Scott Dorf** on September 11, 2001.  Plaintiff **Robert Dorf** is an elementary school teacher in Manhattan.  He writes in his Declaration, "Every time they show those planes crashing into the towers they crash into my heart.  I had to go to work each day afterwards knowing that those planes flew over my school on the way to the World Trade Center."  Folder 47, provided via CD.  See also Third Amended Complaint, ¶ 99; ¶¶ 375-421; Declaration of Robert Dorf, ¶ 8.

48.     Decedent **Stephen Scott Dorf** is also survived by his sister, **Linda Sammut**, who is a resident of the State of New Jersey.  Plaintiff **Linda Sammut**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other

causes of action against all Defendants as a result of the murder of **Stephen Scott Dorf**

on September 11, 2001.  See Third Amended Complaint, ¶ 99; ¶¶ 375-421.

49.    Plaintiff **Corazon Fernandez** is a resident of the State of New Jersey and is the surviving

mother of **Judy Fernandez**, a decedent who was killed as a result of a terrorist attack on

the World Trade Center Towers in New York City on September 11, 2001.  **Judy**

**Fernandez** was 27 years of age and employed by Cantor Fitzgerald in the North Tower,

One World Trade Center.  Plaintiff **Corazon Fernandez** is the Personal Representative

of the **Estate of Judy Fernandez.**  Plaintiff **Corazon Fernandez**, under §1605(a) of the

Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her

capacity as the Personal Representative of the **Estate of Judy Fernandez**.  See Folder

49, provided via CD, for family photographs of Judy Fernandez.  See also Third

Amended Complaint, ¶¶ 180-181.

50.    **Corazon Fernandez** also brings claims in her own right for wrongful death and asserts

other causes of action against all Defendants as a result of the murder of **Judy**

**Fernandez** on September 11, 2001.  "We planned a joint Memorial Service with my

brother's family, the Santillans, for Judy and their daughter, Maria Theresa," writes

**Corazon Fernandez** in her Declaration. "They were so close we had just one service.

Since we had no remains, it was a Memorial service. We really wanted to do something

special for Judy, to have a place where we could go visit every morning, but we will

never be able to do that because her body was never found.  That hurts us very much, and

there is no closure.  The pain will never go away no matter what."  See Folder 50,

provided via CD. See also Third Amended Complaint, ¶¶ 180-181; 375-421; Declaration

of Corazon Fernandez ¶ 12.

51.     Plaintiff **Grace M. Parkinson-Godshalk** is a resident of the Commonwealth of

Pennsylvania and is the surviving natural mother of **William R. Godshalk**, a resident of

the State of New York and a decedent who was killed as a result of a terrorist attack on

the World Trade Center Towers in New York City on September 11, 2001.  **William R.**

**Godshalk** was employed by Keefe, Bruyette & Woods located on the 89th floor of the

South Tower, Two World Trade Center, New York, New York.  Plaintiff **Grace M.**

**Parkinson-Godshalk** has been appointed the Administratrix of the **Estate of William R.**

**Godshalk**.  Plaintiff **Grace M. Parkinson-Godshalk**, under §1605(a) of the Foreign

Sovereign Immunities Act, brings a survival action against all Defendants in her capacity

as the Administratrix of the **Estate of William R. Godshalk**.  See Third Amended

Complaint, ¶¶ 16-18; 375-421.

52.     Plaintiff **Grace M. Parkinson-Godshalk** also brings claims in her own right for

wrongful death and asserts other causes of action against all Defendants as a result of the

murder of **William R. Godshalk** on September 11, 2001.  **Grace M. Parkinson-**

**Godshalk,** along with Plaintiffs **Fiona Havlish, Ellen Saracini,** and **Tara Bane** were the

driving force behind creating a Memorial for not only the 18 victims of 9/11 in their

community, but for all of the all of the victims of the 9/11 terrorist attacks.  It is located at

a former farm called North Park in Pennsylvania.  "Bill's remains were never identified,"

**Grace M. Parkinson-Godshalk** writes in her Declaration.  "I'm deeply hurt by not

having a grave for my son.  Bill is the first thing I think about in the morning and the last

thing I think about at night."  See Folder 52, provided via CD.  See also Third Amended

Complaint, ¶¶ 16-18; 375-421; Declaration of Grace M. Parkinson-Godshalk ¶ 10, 15, 16.

53.     Plaintiff **Tina Grazioso** is a resident of the State of New Jersey and is the surviving

spouse of **John Grazioso**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001. **John Grazioso** was employed by eSpeed (Cantor Fitzgerald) on the 105th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York. Plaintiff **Tina Grazioso** has been appointed the Executrix of the **Estate of John Grazioso**. Plaintiff **Tina Grazioso**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of John Grazioso**. See Third Amended Complaint, ¶¶ 46-48; 375-421.

54.     **Tina Grazioso** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **John Grazioso** on September 11, 2001. After being informed by the authorities that the first remains of Decedent **John Grazioso** had been recovered, Plaintiff **Tina Grazioso** requested that she be able to hold her husband's body one last time. She was told that this was not possible due to fragmentation. See Folder 54, provided via CD. See also Third Amended Complaint, ¶¶ 46-48; 375-421; Declaration of Tina Grazioso, ¶ 14.

55.     Plaintiff **Maureen R. Halvorson** is a resident of the State of Connecticut and is the surviving spouse of **James D. Halvorson**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001. **James D. Halvorson** worked on the 99th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York. Plaintiff **Maureen R. Halvorson** has been appointed Executrix of the **Estate of James D. Halvorson**. Plaintiff **Maureen R. Halvorson**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the

**Estate of James D. Halvorson**.  <u>See</u> Third Amended Complaint, ¶¶ 123-125.

56.     Plaintiff **Maureen R. Halvorson** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **James D. Halvorson** on September 11, 2001. In addition to losing her husband, Plaintiff **Maureen R. Halvorson** also lost her brother, **William Wilson**.  Ms. Halvorson called her son Doug, who was working in Manhattan, after hearing a radio report that a small plane had hit the World Trade Center.  Describing her son Doug's reaction, **Maureen R. Halvorson** writes, "With a sound in his voice that I have never heard before and with the background of hysteria, my son said, 'It was a huge plane and it went into the building and it didn't come out.' He described a huge fire plume burning on top of the North Tower.  Then he said, 'Dad is gone.'" **James D. Halvorson** "traveled the world for his job, especially in the Muslim world: Iraq, Pakistan, Saudi Arabia, Lebanon and Indonesia.  He never had a complaint about his dealings there.  Doug and I struggle not to hate in memory of Jim and Bill."  <u>See</u> Folder 56, provided via CD. <u>See</u> <u>also</u> Third Amended Complaint, ¶¶ 123-125; 375-421; Declaration of Maureen R. Halvorson ¶¶ 19, 39.

57.     Plaintiff **Jin Liu** is a resident of the State of New Jersey and is the surviving spouse of **Liming Gu**, a decedent who was killed as a result of the terrorist attack on the World Trade Center on September 11, 2001.  **Liming Gu** was 34 years of age and worked on the 95th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Jin Lu** has been appointed as the Executor of the **Estate of Liming Gu**.  Plaintiff **Jin Lu**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the

**Estate of Liming Gu**.  See Third Amended Complaint, ¶¶ 171-173; 375-421.

58.     Plaintiff **Jin Lu** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Liming Gu** on September 11, 2001.  "One of my co-workers had a TV in their office, and we all went to watch **Jin Liu** writes in her Declaration.  "That's where I watched the events that took place on the morning of 9/11.  I knew [**Liming Gu**] worked on one of the top floors.  I started to call him.  And I think what happened is, when I was calling him he was calling me, so I did not get a chance to speak with him.  But he left me a message.  I could not really hear the message clearly; there was too much going on in the background.  I can hear people screaming.  There was a lot of noise and yelling.  I am guessing he was probably hurt as well since the floor that he worked was where the plane went in."  See Folder 58, provided via CD.  See also Third Amended Complaint, ¶¶ 171-173; 375-421; Declaration of Jin Liu ¶ 6.

59.     Plaintiff **Jin Lu** also brings a claim for wrongful death and asserts other causes of action against all Defendants on behalf of **Alan Gu**, a minor, as beneficiary of such claims as a result of the murder of **Liming Gu** on September 11, 2001.  "My son, **Alan Gu**, was one year and nine months old on September 11, 2001. Every year, he understands more and more about what happened to his father. At first, he used to ask, 'Where is my Daddy?' He went to therapy for a while, and I hope now he accepts what has happened. The truth is, I do not really know what Alan thinks.  He is very quiet on the subject and does not say much." See Folder 59, provided via CD. See Third Amended Complaint, ¶¶ 171-173; 375-421; Declaration of Jin Liu on behalf of Alan Gu, ¶¶ 6, 7.

60.     Plaintiff **Grace Kneski** is a resident of the State of South Carolina and is a surviving

relative (natural mother) of **Steven Cafiero**, a decedent who was killed as a result of a terrorist attacks on the World Trade Center Towers in New York City on September 11, 2001. **Steven Cafiero** was employed by AON, Inc. and worked on the 92nd floor of the South Tower of the World Trade Center, Two World Trade Center, New York, New York. Plaintiff **Grace Kneski** has been appointed the Executrix of the **Estate of Steven Cafiero**. Plaintiff **Grace Kneski**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of Steven Cafiero**. See Third Amended Complaint, ¶¶ 52-54; 375-421.

61.     Plaintiff **Grace Kneski** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Steven Cafiero** on September 11, 2001. Decedent **Steven Cafiero**, the only son of Plaintiff **Grace Kneski**, telephoned his mother after American Airlines Flight 11 stuck the North Tower to inform her that he was safe. She urged him to leave the South Tower, but the decedent chose to follow the instructions over the public address system to stay at his work station in light of the fact that he was a new employee on the job for only 22 days. During the conversation between Decedent **Steven Cafiero** and Plaintiff **Grace Kneski**, Plaintiff suddenly heard people screaming in the background. Decedent **Steven Cafiero**, immediately before the line went dead, uttered words to the effect of, "Oh, no. Oh, my God." It was at this time that United Airlines Flight 175 crashed into the South Tower through the 77th to 85th Floors. Decedent **Steven Cafiero** was working only 7 floors above the impact zone. Neither his body nor any remains were ever recovered, leaving Plaintiff **Grace Kneski** with no sense of closure. "Losing a child is not natural," she writes in her Declaration. "We are not supposed to outlive our children." See Folder 61,

provided via CD.  See also Third Amended Complaint, ¶¶ 52-54; 375-421.  See also *The 9/11 Commission Report*, p. 293; Declaration of Grace Kneski, ¶¶ 6, 9, 19.

62.     Plaintiff **Roni Levine** is a resident of the State of New York and the surviving spouse of **Robert Levine**, a decedent who was killed as a result of the terrorist attacks on the World Trade Center Towers in New York City on September 11, 2001.  **Robert Levine** worked on the 104th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Roni Levine** has been appointed as the Executrix of the **Estate of Robert Levine**.  Plaintiff **Roni Levine**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of Robert Levine**.  See Folder 62, provided via CD, for a photograph of the Decedent with family members and a photo of his charred work badge from Cantor Fitzgerald.  See Third Amended Complaint, ¶¶ 113-115; 375-421.

63.     Plaintiff **Roni Levine** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Robert Levine** on September 11, 2001. Six months to the day of the attacks, the FBI visited the family home to inform **Roni Levine** that a portion of her husband's skull was found with all of his teeth intact.  "He had just broken up into little pieces, spread all over the place," **Roni Levine** writes in her Declaration. See Folder 63, provided via CD. See also Third Amended Complaint, ¶¶ 113-115; 375-421; Declaration of Roni Levine ¶ 6.

64.     Plaintiff **Theresann Lostrangio** is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **Joseph Lostrangio**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11,

2001.  **Joseph Lostrangio** was employed by Devonshire Group on the 77th Floor of the

North Tower in the World Trade Center, One World Trade Center, New York, New

York.  Plaintiff **Theresann Lostrangio** has been appointed the Executrix of the **Estate of**

**Joseph Lostrangio**.  Plaintiff **Theresann Lostrangio**, under §1605(a) of the Foreign

Sovereign Immunities Act, brings a survival action against all Defendants in her capacity

as the Executrix of the **Estate of Joseph Lostrangio**.  See Folder 64, provided via CD;

See also Third Amended Complaint, ¶¶ 113-115; 375-421.  See Third Amended

Complaint, ¶¶ 113-115; 375-421

65.    Plaintiff **Theresann Lostrangio** also brings claims in her own right for wrongful death

and asserts other causes of action against all Defendants as a result of the murder of

**Joseph Lostrangio** on September 11, 2001. The family's children were 19 and 17 at the

time of the attacks.  **Theresann Lostrangio** first learned of the attacks when her son left

a message on the family answering machine that said, "Mom, I think a plane hit Dad."

The line then sounded as if it disconnected.  See Folder 65, provided via CD.  See also

Third Amended Complaint, ¶¶ 113-115; 375-421; Declaration of Theresann Lostrangio ¶

11.

66.    Plaintiff **Joanne Lovett** is a resident of the State of New York and is a surviving relative

(natural mother) of **Brian Nunez**, a decedent who was killed as a result of a terrorist

attack on the World Trade Center Towers in New York City on September 11, 2001.

**Brian Nunez** was employed by eSpeed (Cantor Fitzgerald) on the 104th Floor of the

North Tower of the World Trade Center, One World Trade Center, New York, New

York.  Plaintiff **Joanne Lovett** has been appointed the Executrix of the **Estate of Brian**

**Nunez.**   Plaintiff **Joanne Lovett**, under §1605(a) of the Foreign Sovereign Immunities

Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of Brian Nunez**.  <u>See</u> Folder 66, provided via CD; <u>See also</u> Third Amended Complaint, ¶¶ 113-115; 375-421.

67.   Plaintiff **Joanne Lovett** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Brian Nunez** on September 11, 2001.  **Joanne Lovett** was able to clearly see the World Trade Center, where her son was working in the North Tower, from her own place of employment.  She personally witnessed the North Tower burning and the South Tower collapse.  Her son, Decedent **Brian Nunez**, left a message on the family answering machine at 8:51 a.m.  **Joanne Lovett** says of the message, "Brian had to have been delirious.  Brian's voice continued to say that a plane had hit the World Trade Center and he was still inside.  He said there is a lot of smoke, and he said he was having a hard time breathing.  All through the short message, I could hear Brian's Heavy, labored breathing and his voice was cracking as he continued to tell everyone he loved them, and if he didn't make it out of here…there was another pause and he finished his call with a 'bye.' I could hear the panic in his voice."   <u>See</u> Folder 67, provided via CD; <u>See also</u> Third Amended Complaint, ¶¶ 113-115; 375-421; Declaration of Joanne Lovett ¶¶ 13-14.

68.   Plaintiff **Chrislan Fuller Manuel** is a resident of the State of Michigan and is the surviving aunt of **Meta L. Waller**, a decedent who was killed as a result of the terrorist attack on the Pentagon on September 11, 2011.[5]  **Meta L. Waller** worked on the 1st Floor, "E" Wing of the Pentagon when American Airlines Flight 77, hijacked through the actions of Defendants, was intentionally crashed crash into the building. Plaintiff

---

5  The Third Amended Complaint incorrectly lists the Decedent's surname as "Walker."

**Chrislan Fuller Manuel** has been appointed as the Executrix of the **Estate of Meta L. Waller**.  Plaintiff **Chrislan Fuller Manuel**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of Meta L. Waller**.  See Folder 68, provided via CD.

69.     Plaintiff **Chrislan Fuller Manuel** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Meta L. Waller** on September 11, 2001. "Talking about my relationship with [Decedent **Meta L. Waller**] is difficult for me and I struggle to describe it fully.  I have found that people assume that because it was only my aunt that died that we could not have been close enough for me to need to grieve for her and to move on more quickly from her death.  I actually had a boss at my former job that asked me, 'It's only your aunt that died.  Why do you need time off for that?' I become irritated with this lack of sympathy quickly. Meta was so many things to me and such a part of my life.  She was a mother figure, a friend and a confidant.  I will grieve for her the rest of my life." See Folder 69, provided via CD. See also Third Amended Complaint, ¶¶ 110-112; 375-421; Declaration of Chrislan Fuller Manuel. ¶ 9.

70.     Plaintiff **Maria Regina Merwin** is a resident of the Commonwealth of Kentucky and is the sister of **Ronald Gamboa**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers on September 11, 2001.  **Ronald Gamboa** was a passenger on United Airlines Flight 175 which was crashed into the South Tower of the World Trade Center by a hijacker.  Plaintiff **Maria Regina Merwin** has been appointed as the Executrix of the **Estate of Ronald Gamboa**.  Plaintiff **Maria Regina Merwin**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against

all Defendants in her capacity as the Executrix of the **Estate of Ronald Gamboa**. <u>See</u> Folder 70, provided via CD.

71.  Plaintiff **Maria Regina Merwin** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Ronald Gamboa** on September 11, 2001.  On the day of the attacks, **Ronald Gamboa** was on the hijacked UA Flight 175 with his partner and their 3 year-old son.  "I can't imagine the terror Ron went through as he tried to save his son," **Maria Regina Merwin** writes in her Declaration.  "[H]e was so protective of his son and he would do anything do keep him safe so I can't imagine how awful they felt on that plane." <u>See</u> Folder 71, provided via CD. <u>See also</u> Third Amended Complaint, ¶¶ 116-118; 375-421; Declaration of Maria Regina Merwin.

72.  Plaintiff **Margaret Mauro** is a resident of the State of Tennessee and is the surviving twin sister of **Dorothy Mauro**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001. **Dorothy Mauro** worked on the 97th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Margaret Mauro** has been appointed as the Administratrix of the **Estate of Dorothy Mauro**. Plaintiff **Margaret Mauro**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Administratrix of the **Estate of Dorothy Mauro**. <u>See</u> Folder 72, provided via CD.  <u>See also</u> Third Amended Complaint, ¶¶ 84-86; 375-421.

73.  Plaintiff **Margaret Mauro** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Dorothy**

**Mauro** on September 11, 2001. "With [Decedent **Dorothy Mauro**] gone, half of me is missing," writes Margaret in her Declaration. "I have grieved a long time over her loss. Dorothy and I looked alike and sounded alike. Sometimes when I hear myself laughing, I hear her. When I look in the mirror, it's her image staring back at me. My sister was more than just my twin; she was my forever friend, my confidant, and my traveling companion. Dorothy was the most important person in my life." <u>See</u> Folder 73, provided via CD. <u>See also</u> Third Amended Complaint, ¶¶ 84-86; 375-421; Declaration of Margaret Mauro ¶ 7

74. Plaintiff **Ramon Melendez** is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **Mary Melendez**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001. **Mary Melendez** worked on the 90th Floor of the South Tower of the World Trade Center, Two World Trade Center, New York, New York. Plaintiff **Ramon Melendez** has been appointed as the Administrator of the **Estate of Mary Melendez**. Plaintiff **Ramon Melendez**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the Administrator of the **Estate of Mary Melendez**. <u>See</u> Folder 74, provided via CD. <u>See also</u>Third Amended Complaint, ¶¶ 130-132; 375-421.

75. Plaintiff **Ramon Melendez** also brings claims in his own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Mary Melendez** on September 11, 2001. Plaintiff **Ramon Melendez** was speaking on the phone with Decedent **Mary Melendez** after AA Flight 11 struck the North Tower while he was simultaneously watching the television coverage of the attacks. When Mr.

Melendez saw UA Flight 175 strike the South Tower, his wife's phone line at her office

went dead.  <u>See</u> Folder 75, provided via CD.  <u>See</u> <u>also</u> Third Amended Complaint, ¶¶

130-132; 375-421; Declaration of Ramon Melendez, ¶ 5.

76.     Plaintiff **Patricia Milano** is a resident of the State of New Jersey and is the surviving

spouse of **Peter T. Milano**, a decedent who was killed as a result of a terrorist attacks on

the World Trade Center Towers in New York City on September 11, 2001.  **Peter T.**

**Milano** was employed by Cantor Fitzgerald on the 104th Floor of the North Tower of the

World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Patricia**

**Milano** has been appointed the Executrix of the **Estate of Peter T. Milano**.  Plaintiff

**Patricia Milano**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a

survival action against all Defendants in her capacity as the Executrix of the **Estate of**

**Peter T. Milano**. <u>See</u> Folder 76, provided via CD.  <u>See</u> <u>also</u> Third Amended Complaint,

¶¶ 84-86; 375-421.

77.     Plaintiff **Patricia Milano** also brings claims in her own right for wrongful death and

asserts other causes of action against all Defendants as a result of the murder of **Peter T.**

**Milano** on September 11, 2001.  With regard to her experience of losing her husband,

Plaintiff **Patricia Milano** writes, "[P]eople want you to move on, meet someone, and find

happiness again.  I'm tired of trying to explain myself and if they really understood the

kind, thoughtful husband I had, they would be more empathetic. I feel each day is another

day of moving on without him."  At the time of his death, **Peter T. Milano** left behind

two minor children.  <u>See</u> Folder 77, provided via CD.  <u>See</u> <u>also</u> Third Amended

Complaint, ¶¶ 84-86; 375-421; Declaration of Patricia Milano ¶ 4, 6.

78.     Plaintiff **Ivy Moreno** is a resident of the State of New York and the surviving mother of

**Yvette Nichole Moreno**, a decedent who was killed as a result of the terrorist attacks on the World Trade Center Towers in New York City on September 11, 2001. **Yvette Nichole Moreno** worked on the 92nd Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York. Plaintiff **Ivy Moreno** has been appointed Administratrix of the **Estate of Yvette Nichole Moreno**. Plaintiff **Ivy Moreno**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Administratrix of the **Estate of Yvette Nichole Moreno**. See Folder 78, provided via CD.

79. Plaintiff **Ivy Moreno** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Yvette Nichole Moreno** on September 11, 2001. The Decedent's place of employment was the North Tower, but she survived the attack by the hijacked American Airlines Flight 11. She perished while walking on an overpass toward her home as a result of falling debris from the attacks. Her body was identified via dental records and a tattoo a few days following what would have been her 25th birthday. Her mother, Plaintiff **Ivy Moreno**, was so distraught that the Decedent's uncle was sent to identify the body. "I will never hug her again, kiss her, talk and laugh with her, see her get married, or know the grandchildren that she could have had," **Ivy Moreno** wrote of **Yvette Nichole Moreno**. "The terrorists also killed me on that day. I only exist, I no longer live!" See Folder 79, provided via CD. See also Third Amended Complaint, ¶¶ 93-95; 375-421; Declaration of Ivy Moreno. ¶ 5-7.

80. Plaintiff **Estate of Vincent A. Ognibene** is the estate of the surviving father of **Philip Paul Ognibene**, a decedent who was killed as a result of the terrorist attacks on the

World Trade Center Towers in New York City on September 11, 2001.  Decedent **Philip Paul Ognibene** worked on the 89th Floor of the South Tower of the World Trade Center, Two World Trade Center, New York, New York.  Plaintiff **Vincent A. Ognibene** has been appointed as co-Executor of the **Estate of Philip Paul Ognibene**.  Plaintiff **Estate of Vincent A. Ognibene**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the co-Executor of the **Estate of Philip Paul Ognibene**. See Folder 80, provided via CD. See also Third Amended Complaint, ¶¶ 88-90; 375-421.

81.    Plaintiff **Estate of Vincent A. Ognibene** also brings claims in its own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Philip Paul Ognibene** on September 11, 2001.[6]  A Declaration was submitted on behalf of the **Estate of Vincent A. Ognibene** by the Executrix of the Estate, Diane Ognibene.  Ms. Ognibene is the Claimant's widow and Decedent **Philip Paul Ognibene's** step-mother.  Ms. Ognibene states in her Declaration that, "My husband had a very close relationship with Philip.  [W]hen Philip died Vincent's whole life turned upside down.  When he found out that he had cancer back in 2005, his first words were, 'Well, I will finally be with Philip soon.'"  See Folder 81, provided via CD.  See also Third Amended Complaint, ¶¶ 88-90; 375-421; Declaration of Diane Ognibene on Behalf of Vincent Ognibene, Deceased, ¶¶ 5, 8.

82.    Plaintiff **Marie Ann Paprocki** is a resident of the State of New York and is the surviving sister of **Denis Lavelle**, a decedent who was killed as a result of the terrorist attack on the

---

6    Plaintiff Vincent A. Ognibene expired on April 25, 2008, during the pendency of this suit.  Any award will be made to the Estate of Vincent A. Ognibene.  Diane Ognibene is the Executrix of the Estate.  A Suggestion of Death is being filed contemporaneously with this document.

World Trade Center Towers in New York City on September 11, 2011.  **Denis Lavelle** worked on the 94th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Marie Ann Paprocki** has been appointed as Executrix of the **Estate of Denis Lavelle**.   Plaintiff **Marie Ann Paprocki**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of Denis Lavelle**.  See Folder 82, provided via CD.  See also Third Amended Complaint, ¶¶ 107-109; 375-421.

83.     Plaintiff **Marie Ann Paprocki** also brings claims in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Denis Lavelle** on September 11, 2001. "[**Denis Lavelle**] was my mother's sole caregiver," writes Plaintiff **Marie Ann Paprocki** in her Declaration.  "He lived with her, cared for her, and supported her financially.  No remains of Denis were ever recovered  Because we have no remains of Denis, we also have no real closure.  Days, weeks, months, even years later, I have a vision of my brother running to try to save himself for my mother's sake.  I am sure that my mother's face flashed before his eyes as he wondered what would become of her without him to support or care for her."  See Folder 83, provided via CD. See also Third Amended Complaint, ¶¶ 107-109; 375-421.  See also Declaration of Marie Ann Paprocki, ¶¶ 9-10.

84.     Plaintiff **Patricia J. Perry** is a resident of the State of New York and is the surviving spouse of **John William Perry**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **John William Perry,** an officer with the New York City Police Department, was last seen in the mezzanine of the South Tower, Two World Trade Center, New York, New York just

prior to its collapse, which was a result of the attacks perpetrated by Defendants. Plaintiff **Patricia J. Perry** has been appointed the Administratrix of the **Estate of John William Perry**.  Plaintiff **Patricia J. Perry**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Administratrix of the **Estate of John William Perry**.  See Folder 84, provided via CD. See also Declaration of Patricia J. Perry, ¶ 5-7.

85.     Plaintiff **Patricia J. Perry** also brings a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **John William Perry** on September 11, 2001.  The Decedent, who had earned a law degree, was in the process of turning in his badge when the North Tower was struck by American Airlines Flight 11.  He requested that his badge be returned to him and rushed to the scene of the terrorist attacks, where he died while giving someone oxygen in the South Tower.  See Folder 85, provided via CD.  See also Third Amended Complaint, ¶¶ 34-36; 375-421.  See also Declaration of Patricia J. Perry ¶ 5.

86.     Plaintiff **Christine Papasso** is a resident of the State of New York and is the surviving spouse of **Salvatore T. Papasso**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001. **Salvatore T. Papasso** was 34 years of age and employed by the New York State Department of Tax and Finance on the 86th Floor of the South Tower in the World Trade Center, Two World Trade Center, New York, New York.  Plaintiff **Christine Papasso** has been appointed the Executrix of the **Estate of Salvatore T. Papasso**.  Plaintiff **Christine Papasso**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of**

**Salvatore T. Papasso**.  See Folder 86, provided via CD.  See also Third Amended Complaint, ¶¶ 55-57; 375-421.

87.   Plaintiff **Christine Papasso** also brings a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Salvatore T. Papasso** on September 11, 2001.  Plaintiff Christine Papasso worked at an office in Manhattan and personally witnessed the attacks on the Twin Towers.  See Folder 87, provided via CD.  See also Third Amended Complaint, ¶¶ 55-57; 375-421; Declaration of Christine Papasso.

88.   Plaintiff **Rodney Ratchford** is a resident of the State of Alabama and is the surviving husband of **Marsha Dianah Ratchford**, a decedent who was killed as a result of the terrorist attack on the Pentagon on September 11, 2001.  Plaintiff **Rodney Ratchford** has been appointed as the Executor of the **Estate of Marsha Dianah Ratchford**.  Plaintiff **Rodney Ratchford**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the Executor of the **Estate of Marsha Dianah Ratchford**.  See Folder 88, provided via CD. See also Third Amended Complaint, ¶¶ 167, 169; 375-421.

89.   Plaintiff **Rodney Ratchford** also brings a claim in his own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Marsha Dianah Ratchford** on September 11, 2001.  See Folder 89, provided via CD. See also Third Amended Complaint, ¶¶ 167, 169; 375-421; Declaration of Rodney Ratchford.

90.   Decedent **Marsha Dianah Ratchford** is also survived by a minor child, **Rodney M. Ratchford**, who is a resident of the State of Alabama.  Plaintiff **Rodney Ratchford**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful

death and asserts other causes of action against all Defendants on behalf of **Rodney M. Ratchford** as beneficiary of such claims as a result of the murder of **Marsha Dianah Ratchford** on September 11, 2001. <u>See</u> Folder 90, provided via CD. <u>See also</u> Third Amended Complaint, ¶¶ 168, 170; 375-421; Declaration of Rodney Ratchford.

91.   Decedent **Marsha Dianah Ratchford** is also survived by a minor child, **Marshee R. Ratchford**, who is a resident of the State of Alabama.  Plaintiff **Rodney Ratchford**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants on behalf of **Marshee R. Ratchford** as beneficiary of such claims as a result of the murder of **Marsha Dianah Ratchford** on September 11, 2001.  <u>See</u> Folder 91, provided via CD. <u>See also</u> Third Amended Complaint, ¶¶ 168, 170; 375-421; Declaration of Rodney Ratchford.

92.   Decedent **Marsha Dianah Ratchford** is also survived by a minor child, **Miranda C. Ratchford**, who is a resident of the State of Alabama.  Plaintiff **Rodney Ratchford**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants on behalf of **Miranda C. Ratchford** as beneficiary of such claims as a result of the murder of **Marsha Dianah Ratchford** on September 11, 2001.  <u>See</u> Folder 92, provided via CD. <u>See also</u> Third Amended Complaint, ¶¶ 168, 170; 375-421; Declaration of Rodney Ratchford.

93.   Plaintiff **Joyce Ann Rodak** is a resident of the State of New Jersey and is the surviving spouse of **John M. Rodak**, a decedent who was killed as a result of the terrorist attacks on the World Trade Center Towers in New York City on September 11, 2001.  **John M. Rodak** worked on the 104th Floor of the South Tower of the World Trade Center, Two World Trade Center, New York, New York.  Plaintiff **Joyce Ann Rodak** has been

appointed as the Executrix of the **Estate of John M. Rodak**.  Plaintiff **Joyce Ann Rodak**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of John M. Rodak**. <u>See</u> Folder 93, provided via CD.

94.   Plaintiff **Joyce Ann Rodak** also brings a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **John M. Rodak** on September 11, 2001.  <u>See</u> Folder 94, provided via CD. <u>See also</u> Third Amended Complaint, ¶¶ 141, 143; 375-421; Declaration of Joyce Ann Rodak.

95.   Decedent **John M. Rodak** is also survived by one adult child, **Chelsea Nicole Rodak**, who is a resident of the State of New Jersey.  Plaintiff **Chelsea Nicole Rodak**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **John M. Rodak** on September 11, 2001. <u>See</u> Folder 95, provided via CD. <u>See also</u> Third Amended Complaint, ¶¶ 141, 143; 375-421

96.   Decedent **John M. Rodak** is also survived by one minor child, **Devon Marie Rodak,** who is a resident of the state of New Jersey.   Plaintiff **Joyce Ann Rodak** brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **John M. Rodak** on September 11, 2001, with **Devon Marie Rodak** being the rightful beneficiary of such claims as a result of the murder of **John M. Rodak** on September 11, 2001.  <u>See</u> Folder 96, provided via CD.  <u>See also</u> Third Amended Complaint, ¶¶ 142, 144; 375-421; Declaration of Joyce Ann Rodak.

97.   Decedent **John M. Rodak** is also survived by his natural father, **John Rodak,** who is a resident of the Commonwealth of Pennsylvania.  Plaintiff **John Rodak** brings a claim for

wrongful death and asserts other causes of action against all Defendants as a result of the murder of **John M. Rodak** on September 11, 2001. <u>See</u> Folder 97, provided via CD. <u>See</u> Third Amended Complaint, ¶ 146; ¶¶ 375-421.  <u>See</u> <u>also</u> Declaration of John Rodak.

98.    Decedent **John M. Rodak** is also survived by his natural mother, **Regina Rodak,** who is a resident of the Commonwealth of Pennsylvania.  Plaintiff **Regina Rodak** brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **John M. Rodak** on September 11, 2001.  <u>See</u> Folder 98, provided via CD. <u>See</u> <u>also</u> Third Amended Complaint, ¶ 146; ¶¶ 375-421; Declaration of Regina Rodak.

99.    Decedent **John M. Rodak** is also survived by his sister, **Joanne Gori**.  **Joanne Gori** is a resident of the Commonwealth of Pennsylvania and is a party to this action.  **Joanne Gori** brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **John M. Rodak** on September 11, 2001. <u>See</u> Folder 99, provided via CD. <u>See</u> <u>also</u> Third Amended Complaint, ¶ 145; ¶¶ 375-421; Declaration of Joanne Gori.

100.    Plaintiff **Diane Romero** is a resident of the State of New Jersey and is the surviving spouse of **Elvin Romero**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Elvin Romero** was employed by Cantor Fitzgerald on the 104th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Diane Romero** has been appointed the Administratrix of the **Estate of Elvin Romero**.  Plaintiff **Diane Romero**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of Elvin Romero**. <u>See</u> Folder 100, provided via CD.

101.   Plaintiff **Diane Romero** also brings a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Elvin Romero** on September 11, 2001.  See Folder 101, provided via CD.  See also Third Amended Complaint, ¶¶ 61-63; 375-421; Declaration of Diane Romero.

102.   Plaintiff **Loren Rosenthal** is a resident of the State of New Jersey and is the surviving spouse of **Richard Rosenthal**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Richard Rosenthal** worked on the 101st Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Loren Rosenthal** has been appointed as the Executrix of the **Estate of Richard Rosenthal**.  Plaintiff **Loren Rosenthal**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of Richard Rosenthal**.  See Folder 102, provided via CD.  See also Third Amended Complaint, ¶¶ 78-80; 375-421.

103.   Plaintiff **Loren Rosenthal** also brings a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Richard Rosenthal** on September 11, 2001.  Some remains of Decedent **Richard Rosenthal** were located and identified approximately 3-4 weeks following the attacks.  His charred identification card issued by Cantor Fitzgerald was also found.  Plaintiff **Loren Rosenthal** has this identification card in her possession to this day.  See Folder 103, provided via CD.  See also Third Amended Complaint, ¶¶ 78-80; 375-421; Declaration of Loren Rosenthal.

104.   Plaintiff **Judith Jackson Reiss** is a resident of the Commonwealth of Pennsylvania and is

a surviving natural mother of **Joshua Scott Reiss**, a citizen of the Commonwealth of

Pennsylvania and a decedent who was killed as a result of a terrorist attacks on the World

Trade Center Towers in New York City on September 11, 2001.  **Joshua Scott Reiss** was

employed by the Cantor Fitzgerald firm, located on the 105th floor of the North Tower,

One World Trade Center, New York, New York.  Plaintiff **Judith Reiss** has been

appointed the Administratrix of the **Estate of Joshua Scott Reiss.**  Plaintiff **Judith**

**Reiss**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action

against all Defendants in her capacity as the Administratrix of the **Estate of Joshua Scott**

**Reiss**.  See Folder 104, provided via CD.

105.    Plaintiff **Judith Reiss** also brings a claim in her own right for wrongful death and asserts

other causes of action against all Defendants as a result of the murder of **Joshua Scott**

**Reiss** on September 11, 2001.  See Folder 105, provided via CD.  See also Third

Amended Complaint, ¶¶ 28-30; 375-421; Declaration of Judith Reiss.

106.    Plaintiff **Expedito Santillan** is a resident of the State of New Jersey and the surviving

natural father of **Maria Theresa Santillan**, a decedent who was killed as a result of a

terrorist attacks on the World Trade Center Towers in New York City on September 11,

2001.  **Maria Theresa Santillan** worked on the 103rd Floor of the North Tower of the

World Trade Center, One World Trade Center, New York, New York.  Plaintiff

**Expedito Santillan** has been appointed the Administrator of the **Estate of Maria**

**Theresa Santillan**.  Plaintiff **Expedito Santillan**, under §1605(a) of the Foreign

Sovereign Immunities Act, brings a survival action against all Defendants in his capacity

as the Administrator of the **Estate of Maria Theresa Santillan**.  See Folder 106,

provided via CD.

107.   Plaintiff **Expedito Santillan** also brings a claim in his own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Maria Theresa Santillan** on September 11, 2001.  See Folder 107, provided via CD.  See also Third Amended Complaint, ¶¶ 70-73; 375-421; Declaration of Expedito Santillan.

108.   Decedent **Maria Theresa Santillan** is survived by her natural mother, **Ester Santillan**, who is a resident of the State of New Jersey.  Plaintiff  **Ester Santillan,** under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Maria Theresa Santillan** on September 11, 2001.  See Folder 108, provided via CD.  See also Third Amended Complaint, ¶¶ 70-73; 375-421; Declaration of Ester Santillan.

109.   Plaintiff **Ellen L. Saracini** is a resident of the Commonwealth of the Pennsylvania and is the surviving spouse of **Victor J. Saracini**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Victor J. Saracini** was employed by United Airlines and was the pilot of United Flight 175 which crashed into the South Tower, Two World Trade Center, New York.  **Victor J. Saracini** was murdered by the hijackers during the flight.  Plaintiff **Ellen L. Saracini** has been appointed the Executrix of the **Estate of Victor J. Saracini**.  Plaintiff **Ellen L. Saracini**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in her capacity as the Executrix of the **Estate of Victor J. Saracini**. See Folder 109, provided via CD.

110.   **Ellen L. Saracini** also brings a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Victor J. Saracini** on September 11, 2001.  "Terrorists brutally murdered my husband, and

thousands of others in cold blood," she writes in her Declaration.  No remains of **Victor J. Saracini** were ever identified.  His daughters were 13 and 10 at the time of his death.  <u>See</u> Folder 110, provided via CD.  <u>See</u> <u>also</u> Third Amended Complaint, ¶¶ 19-21; 375-421; Declaration of Ellen L. Saracini ¶ 8, 10-11.

111.    Decedent **Victor J. Saracini** is also survived by his mother, **Anne C. Saracini,** who is a resident of the State of New Jersey.  Plaintiff **Anne C. Saracini** brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Victor J. Saracini** on September 11, 2001.  <u>See</u> Folder 111, provided via CD.  <u>See</u> <u>also</u> Third Amended Complaint, ¶ 65; ¶¶ 375-421; Declaration of Anne C. Saracini by Joanne Renzi, Her Daughter.

112.    Decedent **Victor J. Saracini** is also survived by a sibling, **Joanne Renzi**, who is is a resident of the State of New Jersey.   Plaintiff **Joanne Renzi** brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Victor J. Saracini** on September 11, 2001.  <u>See</u> Folder 112, provided via CD.  <u>See</u> Third Amended Complaint, ¶ 64; ¶¶ 375-421.  <u>See</u> <u>also</u> Declaration of Joanne Renzi.

113.    Plaintiff **Paul Schertzer** is a resident of the State of New Jersey and is the surviving father of **Scott Schertzer**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Scott Schertzer** worked on the 104th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Paul Schertzer** has been appointed as Executor of the **Estate of Scott Schertzer**.  Plaintiff **Paul Schertzer**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the Executor of the **Estate of Scott Schertzer**. <u>See</u> Folder 113,

provided via CD.

114.    Plaintiff **Paul Schertzer** also brings a claim in his own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Scott Schertzer** on September 11, 2001.  See Folder 114, provided via CD.  See also Third Amended Complaint, ¶¶ 100-102; 375-421; Declaration of Paul Schertzer.

115.    Plaintiff **Ronald S. Sloan** is a resident of the State of California and is the surviving father of **Paul K. Sloan**, a decedent who was killed as a result of the terrorist attack on the World trade Center Towers in New York City on September 11, 2001.  **Paul K. Sloan** worked on the 89th Floor of the South Tower of the World Trade Center, Two World Trade Center, New York, New York.  Plaintiff **Ronald S. Sloan** has been appointed as the Executor of the **Estate of Paul K. Sloan**. Plaintiff **Ronald S. Sloan**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the Executor of the **Estate of Paul K. Sloan**.   See Folder 115, provided via CD, for photographs and 'An Important Legacy.'

116.    Plaintiff **Ronald S. Sloan** also brings a claim in his own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Paul K. Sloan** on September 11, 2001.  See Folder 116, provided via CD.  See Third Amended Complaint, ¶¶ 100-102; 375-421.  See also Declaration of Ronald S. Sloan.

117.    Plaintiff **Raymond Anthony Smith** is a resident of the Commonwealth of Pennsylvania and is the brother of **George Eric Smith**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **George Eric Smith** was employed by SunGard Asset Management Systems on the 97th floor of the South Tower in the World Trade Center, Two World Trade Center,

New York, New York.  Plaintiff **Raymond Anthony Smith** has been appointed the Administrator of the **Estate of George Eric Smith**.  Plaintiff **Raymond Anthony Smith**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the Administrator of the **Estate of George Eric Smith**. See Folder 117, provided via CD.

118.   Plaintiff **Raymond Anthony Smith** also brings a claim in his own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **George Eric Smith** on September 11, 2001.  See Folder 118, provided via CD.  See Third Amended Complaint, ¶¶ 177-179; 375-421.  See also Declaration of Raymond Anthony Smith.

119.   Plaintiff **Katherine Soulas** is a resident of the State of New Jersey and is the surviving spouse of **Timothy P. Soulas**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Timothy P. Soulas** was employed by Cantor Fitzgerald on the 105th floor of the North Tower in the World Trade Center, One World Trade Center, New York, New York. Plaintiff **Katherine Soulas** has been appointed the Executrix of the **Estate of Timothy P. Soulas.** Plaintiff **Katherine Soulas**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the Executrix of the **Estate of Timothy P. Soulas**. See Folder 119, provided via CD.

120.   Plaintiff **Katherine Soulas** also brings a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Timothy P. Soulas** on September 11, 2001.  At the time of his death, Plaintiff **Katherine Soulas** was pregnant and had children in kindergarten, second, fourth and sixth grade. See Folder

120, provided via CD. See Third Amended Complaint, ¶¶ 174-176; 375-421. See also Declaration of Katherine Soulas.¶¶ 5, 7.

121.   Plaintiff **Russa Steiner** is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **William R. Steiner**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001. **William R. Steiner** was employed by Marsh, Inc. on the 97th floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York. Plaintiff **Russa Steiner** has been appointed the Executrix of the **Estate of William R. Steiner**. Plaintiff **Russa Steiner**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the Executrix of the **Estate of William R. Steiner**. See Folder 121, provided via CD.

122.   Plaintiff **Russa Steiner** also brings a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **William R. Steiner** on September 11, 2001. Plaintiff and Decedent were married for 32 "happy and successful" years and had three children. See Folder 122, provided via CD. See Third Amended Complaint, ¶¶ 7-9; 375-421. See also Declaration of Russa Steiner. ¶ 7.

123.   Plaintiffs **George Stergiopoulos, M.D.** and **Angela Stergiopoulos** are residents of the State of New York and are the surviving parents of **Andrew Stergiopoulos**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001. **Andrew Stergiopoulos** worked on the 105th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York. Plaintiffs **George** and **Angela Stergiopoulos** have been appointed as co-Executors of the **Estate of Andrew Stergiopoulos**. Plaintiffs **George Stergiopoulos,**

**M.D.** and **Angela Stergiopoulos**, under §1605(a) of the Foreign Sovereign Immunities Act, bring a survival action against all Defendants in their capacity as the co-Executors of the **Estate of Andrew Stergiopoulos**.  <u>See</u> Folder 123, provided via CD.  <u>See</u> Third Amended Complaint, ¶¶ 120-122.

124.    Plaintiff **George Stergiopoulos, M.D.,** under §1605(a) of the Foreign Sovereign Immunities Act, also brings a claims in his own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Andrew Stergiopoulos** on September 11, 2001. <u>See</u> Folder 124, provided via CD.  <u>See</u> Third Amended Complaint, ¶¶ 120-122; ¶¶ 375-421.  <u>See also</u> Declaration of George Stergiopoulos, M.D.

125.    Plaintiff **Angela Stergiopoulos**, under §1605(a) of the Foreign Sovereign Immunities Act, also bring a claim in their own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Andrew Stergiopoulos** on September 11, 2001. <u>See</u> Folder 125, provided via CD.  <u>See</u> Third Amended Complaint, ¶¶ 120-122; ¶¶ 375-421.  <u>See also</u> Declaration of Angela Stergiopoulos.

126.    Plaintiff **Sandra Straub** is a resident of the Commonwealth of Massachusetts and is the surviving spouse of **Edward W. Straub**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  At the time of the attack, **Edward W. Straub** was located outside the South Tower of the World Trade Center, Two World Trade Center, New York, New York. Plaintiff **Sandra Straub** has been appointed as the Executrix of the **Estate of Edward W. Straub**.  Plaintiff **Sandra Straub**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the

Executrix of the **Estate of Edward W. Straub**. <u>See</u> Folder 126 provided via CD.

127.   Plaintiff **Sandra Straub** also brings a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Edward W. Straub** on September 11, 2001.  <u>See</u> Folder 127, provided via CD.  <u>See</u> Third Amended Complaint, ¶¶ 81-83; 375-421.  <u>See</u> <u>also</u> Declaration of Sandra Straub.

128.   Plaintiff **Joan E. Tino** is a resident of the State of New Jersey and is the surviving mother of **Jennifer Tino**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Jennifer Tino** worked on the 96th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Joan E. Tino** has been appointed as the Executrix of the **Estate of Jennifer Tino**.  Plaintiff **Joan E. Tino**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the Executrix of the **Estate of Jennifer Tino**.  <u>See</u> Folder 128, provided via CD.

129.   Plaintiff **Joan E. Tino** also brings a claim in her own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Jennifer Tino** on September 11, 2001.  <u>See</u> Folder 129, provided via CD.  <u>See</u> Third Amended Complaint, ¶¶ 151-153; 375-421.  <u>See</u> <u>also</u> Declaration of Joan E. Tino.

130.   Decedent **Jennifer Tino** was also survived by her sister, Plaintiff **Pamela Schiele**, who is a resident of the State of New Jersey.  Plaintiff **Pamela Schiele**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Jennifer Tino** on September 11, 2001.  <u>See</u> Folder 130, provided via CD.  <u>See</u> Third Amended Complaint,

¶¶ 154; 375-421.  See also Declaration of Pamela Schiele.

131.   Plaintiff **Christine Barton** (now **Pence**) is a resident of the State of Florida and is the

surviving mother of **Jeanmarie Wallendorf**, a decedent who was killed as a result of the

terrorist attacks on the World Trade Center Towers in New York City on September 11,

2001.  **Jeanmarie Wallendorf** worked for Keefe, Bruyette & Woods, Inc. on the 89th

Floor of the South Tower of the World Trade Center, Two World Trade Center, New

York, New York.  The Decedent was last known to be on the 86th Floor of the South

Tower.  Plaintiff **Christine Pence** has been appointed as the Administratrix of the **Estate**

**of Jeanmarie Wallendorf**.  Plaintiff **Christine Pence**, under §1605(a) of the Foreign

Sovereign Immunities Act, brings a survival action against all Defendants in her capacity

as the Executrix of the **Estate of Jeanmarie Wallendorf**.  See Folder 131, provided via

CD.  See Third Amended Complaint, ¶¶ 155-157; 375-421.  See also Declaration of

Christine Pence.

132.   Plaintiff **Christine Barton** (now **Pence**) also brings a claim in her own right for wrongful

death and asserts other causes of action against all Defendants as a result of the murder of

**Jeanmarie Wallendorf** on September 11, 2001.  See Folder 132, provided via CD.  See

Third Amended Complaint, ¶¶ 155-157; 375-421.  See also Declaration of Christine

Pence.

133.   Plaintiff **Doyle Raymond Ward** is a resident of the State of California and is the

surviving father of **Timothy Raymond Ward**, a decedent who was killed as a result of

the terrorist attack on the World Trade Center Towers in New York City on September

11, 2001.  **Timothy Raymond Ward** was a passenger on United Airlines Flight 175

which was hijacked by Defendants and which Defendants caused to crash into the South

Tower of the World Trade Center, Two World Trade Center, New York, New York. Plaintiff **Doyle Raymond Ward** has been appointed as the Administrator of the **Estate of Timothy Raymond Ward**.  Plaintiff **Doyle Raymond Ward**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a survival action against all Defendants in his capacity as the Administrator of the **Estate of Timothy Raymond Ward**. See Folder 133, provided via CD.

134.   Plaintiff **Doyle Raymond Ward** also brings a claim in his own right for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Timothy Raymond Ward** on September 11, 2001.  See Folder 134, provided via CD. See Third Amended Complaint, ¶¶ 177-179; 375-421.  See also Declaration of Doyle Raymond Ward.

   b) **Claims Involving Decedents' Families Only**

135.   Plaintiff **Gerald Bingham** is a resident of the State of Tennessee and is the surviving father of **Gerald Kendall Bingham a/k/a Mark K. Bingham**, a decedent who was killed as a result of a terrorist hijacking and subsequent crash of United Airlines Flight 93 in a field near the town of Shanksville, Pennsylvania on September 11, 2001.  **Gerald Bingham**, under §1605(a) of the Foreign Sovereign Immunities Act, makes a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Gerald Kendall Bingham a/k/a Mark K. Bingham** on September 11, 2001.  . Decedent **Gerald Kendall Bingham a/k/a Mark K. Bingham** was a former rugby player for two squads at the University of California that were crowned National Champions.  Cell phone conversations revealed that he actively participated in what *The 9/11 Commission Report* referred to as "The Battle for Flight 93." Decedent **Gerald**

**Kendall Bingham a/k/a Mark K. Bingham** died as a result of fragmentation due to blunt force trauma.  He was running late for the flight and was the last to board the plane.  See Folder 135, provided via CD.  See Third Amended Complaint, ¶ 119; ¶¶ 375-421.  See also *The 9/11 Commission Report*, pp. 10-14; See also Declaration of Gerald Bingham.

136.   Plaintiff **Alice Carpeneto** is a resident of the State of New York and is the surviving mother of **Joyce Ann Carpeneto**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.

**Joyce Ann Carpeneto** was employed by General Telecom and worked on the 83rd Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York. **Alice Carpeneto**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Joyce Ann Carpeneto** on September 11, 2001.  Decedent **Joyce Ann Carpeneto** was 40 years of age at the time of her death and was planning to become engaged during Christmas 2001.  The Certificate of Death issued by The City of New York on November 9, 2001, states that the decedent's body was never recovered.  It lists the cause of death as homicide.  It was verified that Decedent **Joyce Ann Carpeneto** reported to work on the 83rd Floor of the North Tower on September 11, 2001, through electronic communications and phone records, including a call that was placed by the decedent to co-workers of located off-site at 60 Hudson Street to inform them that employees of General Telecom were trapped on the 83rd Floor of the North Tower.  Alice Carpeneto writes in her Declaration that, "It pains me that my daughter will never know what it is like to have children.  Nor will I [ever] be able to hold her

children, my grandchildren, in my arms." See Folder 136 provided via CD.  See Third

Amended Complaint, ¶ 159; ¶¶ 375-421.  See also correspondence by Brian Metherell,

President, General Telecom, dated September 20, 2001; Declaration of Alice Carpeneto

¶¶ 7, 8, 13.

137.    Plaintiff **Stephen L. Cartledge** is a resident of the Commonwealth of Pennsylvania and

is the surviving spouse of **Sandra Wright-Cartledge**, a citizen of the Commonwealth of

Pennsylvania and a decedent who was killed as a result of a terrorist attack on the World

Trade Center Towers in New York City on September 11, 2001.  **Sandra Wright-**

**Cartledge** was a Facilities Manager at Aon Corporation, located on the 102nd floor of the

South Tower, Two World Trade Center, New York, New York.  **Stephen L. Cartledge**,

under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful

death and asserts other causes of action against all Defendants as a result of the murder of

**Sandra Wright-Cartledge** on September 11, 2001.  The Declaration of Steve Cartledge

states, "My wife's co-workers called me later that day [September 11, 2001] to ask if I

had heard from Sandra.  A group of them were about to get inside an elevator to leave the

South Tower, despite instructions to stay, and Sandra was among them.  At the last

second, she returned to her desk.  I later learned that she had left the group to call her

daughter, Michelle Wright, to assure her that she was safe.  United Airlines Flight 175 hit

the South Tower while the two of them were on the phone." See Folder 137 provided via

CD.  See Third Amended Complaint, ¶¶ 41-42; ¶¶ 375-421.  See also Declaration of

Steve Cartledge, ¶ 7.

138.    Decedent **Sandra Wright-Cartledge** is also survived by her daughter, **Michelle Wright**.

Plaintiff **Michelle Wright**, under §1605(a) of the Foreign Sovereign Immunities Act,

brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Sandra Wright-Cartledge** on September 11, 2001. **Michelle Wright** was on the telephone with her mother, Decedent **Sandra Wright-Cartledge**, when United Airlines Flight 175 hit the South Tower.  The decedent was unable to escape the building.  See Folder 138, provided via CD.  See Third Amended Complaint, ¶ 42; ¶¶ 375-421.  See also Declaration of Steve Cartledge. ¶ 7; Declaration of Michelle Wright.

139.    Plaintiff **Maureen R. Halvorson** is the surviving sister of **William Wilson**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **William Wilson** worked in the South Tower of World Trade Center Towers, New York, New York.  Plaintiff **Maureen R. Halvorson**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **William Wilson** on September 11, 2001.  See Folder 139, provided via CD.  See Third Amended Complaint, ¶ 124; ¶¶ 375-421.  See also Declaration of Maureen R. Halvorson.

140.    Plaintiff **Haomin Jian** is a resident of the State of New Jersey and is the surviving son of **Hweidar Jian**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Hweidar Jian** worked on the 103rd Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **Haomin Jian**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Hweidar Jian** on September 11, 2001.  See Folder 140, provided via CD.  See Third Amended Complaint, ¶ 164; ¶¶ 375-

421.  See also Declaration of Haomin Jian.

141.  Decedent **Hweidar Jian** is survived by his natural mother, **FuMei Chien Huang,** who is a resident of the State of New Jersey and is the surviving mother of **Hweidar Jian**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Hweidar Jian** worked on the 103rd Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  Plaintiff **FuMei Chien Huang**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Hweidar Jian** on September 11, 2001.  See Folder 141, provided via CD.  See Third Amended Complaint, ¶ 165; ¶¶ 375-421.  See also Declaration of FuMei Chien Huang.

142.  Decedent **Hweidar Jian** is also survived by a sibling, **Huichun Jian**, who is a resident of Taiwan, Republic of China.  Plaintiff  **Huichun Jian** make claims under §1605(a) of the Foreign Sovereign Immunities Act for wrongful death and assert other causes of action against all Defendants as a result of the murder of **Hweidar Jian** on September 11, 2001. See Folder 142, provided via CD.  See Third Amended Complaint, ¶ 163; ¶¶ 375-421.

143.  Decedent **Hweidar Jian** is also survived by a sibling, **Hui-Chuan Jian**, who is a resident of Taiwan, Republic of China.  Plaintiff **Hui-Chuan Jian** makes claims under §1605(a) of the Foreign Sovereign Immunities Act for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Hweidar Jian** on September 11, 2001.  See Folder 143, provided via CD.  See Third Amended Complaint, ¶ 163; ¶¶ 375-421.

144.  Decedent **Hweidar Jian** is also survived by a sibling, **Hui-Chien Chen**, who is a resident

of Taiwan, Republic of China.  Plaintiff **Hui-Chien Chen** makes claims under §1605(a) of the Foreign Sovereign Immunities Act for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Hweidar Jian** on September 11, 2001.  See Folder 144 provided via CD.  See Third Amended Complaint, ¶ 163; ¶¶ 375-421.

145.   Decedent **Hweidar Jian** is also survived by a sibling, **Hui-Zon Jian**, who is a resident of Taiwan, Republic of China.  Plaintiff **Hui-Zon Jian** makes claims under §1605(a) of the Foreign Sovereign Immunities Act for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Hweidar Jian** on September 11, 2001. See Folder 145, provided via CD.  See also Third Amended Complaint, ¶ 163; ¶¶ 375-421.

146.   Plaintiff **Michael LoGuidice** is a resident of the State of Florida and is the surviving brother of **Catherine LoGuidice**, a decedent who was killed as a result of the terrorist attack on the World Trade Center Towers in New York City on September 11, 2001. **Catherine LoGuidice** worked 105th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  **Michael LoGuidice**, under §1605(a) of the Foreign Sovereign Immunities Act, makes a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Catherine LoGuidice** on September 11, 2001. See Folder 146, provided via CD.  See also Third Amended Complaint, ¶ 166; ¶¶ 375-421; Declaration of Michael LoGuidice.

147.   Plaintiff **Ralph S. Maerz, Jr.** is a resident of the Commonwealth of Pennsylvania and is the surviving relative (natural father) of **Noell Maerz**, a citizen of the State of New York and a decedent who was killed as a result of a terrorist attack on the World Trade Center

Towers in New York City on September 11, 2001.  **Noell Maerz** was a bond trader

employed at Euro Brokers, located on the 84th floor of the South Tower, Two World

Trade Center, New York, New York.  **Ralph S. Maerz, Jr.**, under §1605(a) of the

Foreign Sovereign Immunities Act, makes a claim for wrongful death and asserts other

causes of action against all Defendants as a result of the murder of **Noell Maerz** on

September 11, 2001.  See Folder 147, provided via CD.  See also Third Amended

Complaint, ¶¶ 37-38; ¶¶ 375-421; Declaration of Ralph S. Maerz, Jr.

148.  Plaintiff **Martin Panik** is a resident of the Commonwealth of Pennsylvania and is the

surviving natural father of **Lt. Jonas Martin Panik**, a citizen of the State of Maryland

and a decedent who was killed as a result of a terrorist attack on the Pentagon on

September 11, 2001.  Plaintiff **Martin Panik,** under §1605(a) of the Foreign Sovereign

Immunities Act, brings a claim for wrongful death and asserts other causes of action

against all Defendants as a result of the murder of **Lt. Jonas Martin Panik** on September

11, 2001.  See Folder 148, provided via CD. See also Third Amended Complaint, ¶ 39; ¶¶

375-421.

149.  Plaintiff **Linda Ellen Panik** was a resident of the Commonwealth of Pennsylvania and

was the surviving natural mother of **Lt. Jonas Martin Panik**, a citizen of the State of

Maryland and a decedent who was killed as a result of a terrorist attack on the Pentagon

on September 11, 2001.  **Linda Ellen Panik,** under §1605(a) of the Foreign Sovereign

Immunities Act, brings a claims in her own right for wrongful death and asserts other

causes of action against all Defendants as a result of the murder of **Lt. Jonas Martin**

**Panik** on September 11, 2001.  **Lt. Panik** was a Navy Intelligence officer working in the

"hot wash room" of the Pentagon when American Airlines Flight 77, hijacked through

the actions of Defendants, was intentionally crashed crash into the building.  At the time

of the attack, **Lt. Panik** was in the process of providing a telephone briefing to other

Navy Intelligence officers concerning the terrorist attacks perpetrated by Defendants in

New York, New York.  The body of Decedent **Lt. Jonas Martin Panik** was not found

intact.  At the time of the crash of American Airlines Flight 77 into the Pentagon, as

perpetrated by Defendants, **Lt. Jonas Martin Panik** was briefing Commander David

Radi on the status of the terrorist attacks in New York City.  When the line suddenly went

dead, Commander Radi looked out the window of his Pentagon office, which was

opposite that of the plane strike, and saw chunks of concrete and other debris in the air.

Decedent **Lt. Jonas Martin Panik** was identified via a fingerprint.  His family was given

his charred watch and one of his lieutenant bars, which had been polished but still

showed signs of fire damage.  The family was also provided his leather flight jacket,

which had been cleaned and sealed due to exposure to hazardous materials.  See Folder

149, provided via CD. See also Third Amended Complaint, ¶ 39; ¶¶ 375-421; Declaration

of Martin Panik; Declaration of Linda Panik.[7]

150.     Decedent **Lt. Jonas Martin Panik** is also survived by his sister, **Martina Lyne-Anna**

**Panik-Stanley,** who is a resident of the State of Maryland.  **Martina Lyne-Anna Panik-**

**Stanley**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim in her

own right for wrongful death and asserts other causes of action against all Defendants as

a result of the murder of **Lt. Jonas Martin Panik** on September 11, 2001.  See Folder

150, provided via CD.  See also Third Amended Complaint, ¶ 40; ¶¶ 375-421; See also

---

7   Following the submission of her Declaration, Linda Ellen Panik succumbed to cancer.  For this reason,
    her proposed award is listed as to the Estate of Linda Ellen Panik.  A Suggestion of Death has been
    filed contemporaneously with this document.

Declaration of Martina Lyne-Anna Panik-Stanley.

151.    Plaintiff **Helen Rosenthal** is a resident of the State of New York and is the surviving

sister of **Josh Rosenthal**, a decedent who was killed as a result of the terrorist attacks on

the World Trade Center Towers in New York City on September 11, 2001. **Josh**

**Rosenthal** worked at Fiduciary Trust on the 97th Floor of the South Tower of the World

Trade Center, Two World Trade Center, New York, New York.  **Helen Rosenthal**, under

§1605(a) of the Foreign Sovereign Immunities Act, makes a claim for wrongful death and

asserts other causes of action against all Defendants as a result of the murder of **Josh**

**Rosenthal** on September 11, 2001.  See Folder 151, provided via CD.  See also Third

Amended Complaint, ¶ 158; ¶¶ 375-421; Declaration of Helen Rosenthal.

152.    Plaintiff **Alexander Rowe** is a United States citizen residing in Simonstown, Western

Cape, South Africa and is the surviving father of **Nicholas Rowe**, a decedent who was

killed as a result of the terrorist attack on the World Trade Center Towers in New York

City on September 11, 2001.  **Nicolas Rowe** was working on the 106th Floor of the North

Tower of the World Trade Center, One World Trade Center, New York, New York.

**Alexander Rowe** makes a claim under §1605(a) of the Foreign Sovereign Immunities

Act for wrongful death and asserts other causes of action against all Defendants as a

result of the murder of **Nicolas Rowe** on September 11, 2001.  The body of Decedent

**Nicolas Rowe**, who emigrated to the United States from South Africa while in search of a

better life, was found atop the roof of the hotel adjacent to the North Tower

approximately two days after the attacks.  His body was fully dressed and intact save his

left arm, which was missing, and his right hand contained burn marks.  Nicolas Rowe

was forced to jump to his own death to escape the fire raging on the upper floors of the

North Tower following the crash of American Airlines Flight 11 into the building, as perpetrated by Defendants.   The body of Decedent **Nicolas Rowe** was buried in his home country of South Africa, approximately 200 feet from the home of Plaintiff **Alexander Rowe**. See Folder 152, provided via CD.  See Third Amended Complaint, ¶ 87; ¶¶ 375-421.  See also Declaration of Alexander Rowe.

153. Plaintiffs **Ed Russin** is a resident of the State of New Jersey and the surviving natural father of **Steven Russin**, a decedent who was killed as a result of the terrorist attacks on the World Trade Center Towers in New York City on September 11, 2001.  **Steven Russin** worked on the 104th Floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.  **Ed Russin**, under §1605(a) of the Foreign Sovereign Immunities Act, makes a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Steven Russin** on September 11, 2001.  See Folder 153, provided via CD.  See also Third Amended Complaint, ¶ 76; ¶¶ 375-421; Declaration of Ed Russin.

154. Decedent **Steven Russin** was also survived by his natural mother, **Gloria Russin**, who is a resident of the State of New Jersey.  Plaintiff **Gloria Russin**, under §1605(a) of the Foreign Sovereign Immunities Act, make a claim for wrongful death and assert other causes of action against all Defendants as a result of the murder of **Steven Russin** on September 11, 2001.  See Folder 154, provided via CD.  See also Third Amended Complaint, ¶ 76; ¶¶ 375-421; Declaration of Gloria Russin.

155. Decedent **Steven Russin** is also survived by his brother, **Barry Russin,** who is a resident of the State of New Jersey.  Plaintiff **Barry Russin** brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Steven**

**Russin** on September 11, 2001.  <u>See</u> Folder 155, provided via CD.  <u>See also</u> Third Amended Complaint, ¶ 77; ¶¶ 375-421; Declaration of Barry Russin.

156.   Plaintiff **Leonard Zeplin** is a resident of the State of New York and the surviving natural father of **Marc Scott Zeplin**, a decedent who was killed as a result of the terrorist attacks on the World Trade Center Towers in New York City on September 11, 2001.  **Marc Scott Zeplin** worked on the 104th Floor of the South Tower of the World Trade Center, Two World Trade Center, New York, New York.  **Leonard Zeplin**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Marc Scott Zeplin** on September 11, 2001.  <u>See</u> Folder 156, provided via CD. <u>See also</u> Third Amended Complaint, ¶ 91; ¶¶ 375-421; Declaration of Leonard Zeplin; Declaration of Leona Zeplin.

157.   Decedent **Marc Scott Zeplin** was survived by his natural mother, Plaintiff **Leona Zeplin, who** is a resident of the State of New York. Plaintiff **Leona Zeplin**, under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Marc Scott Zeplin** on September 11, 2001.  <u>See</u> Folder 157, provided via CD.  <u>See also</u> Third Amended Complaint, ¶ 91; ¶¶ 375-421; Declaration of Leonard Zeplin; Declaration of Leona Zeplin.

158.   Decedent **Marc Scott Zeplin** is also survived by his sister, Plaintiff **Joslin Zeplin,** who is a resident of the State of New York.  **Joslin Zeplin,** under §1605(a) of the Foreign Sovereign Immunities Act, brings a claim for wrongful death and asserts other causes of action against all Defendants as a result of the murder of **Marc Scott Zeplin** on

September 11, 2001.  <u>See</u> Folder 158, provided via CD.  <u>See also</u> Third Amended

Complaint, ¶ 92; ¶¶ 375-421.

**<u>The Decedents</u>**

159.   There are 59 Decedents that are the subject of the instant lawsuit.  <u>See</u> Third Amended

Complaint.

160.   Thirty-two of the Decedents were last known to be working in the area of Floors 77 to

106 of the North Tower, One World Trade Center, New York, NY on September 11,

2001.  American Airlines Flight 11 struck the North Tower at 8:46:40 a.m.  The impact

area was Floors 93 to 99.  Evidence placed before the 9/11 Commission suggested that

the North Tower's three stairwells became impassible from the 92nd floor up.  <u>See</u> Third

Amended Complaint, *passim*; <u>See also</u> Declarations of Claimants, *passim*; *The 9/11*

*Commission Report*, p. 285.

161.   American Airlines Flight 11 was a scheduled transcontinental flight from Boston to Los

Angeles.  The aircraft was a Boeing 767, which carries approximately 10,000 gallons of

jet fuel.  The aircraft spent approximately 48 minutes in the air.  Consequently, a large

amount of its jet fuel supply was unexpended.  Flight 11 impacted the North Tower at a

groundspeed of approximately 494.5 miles per hour.  Upon the impact of Flight 11 with

the North Tower, as perpetrated or enabled by all Defendants, a fireball of jet fuel

"erupted upon impact and shot down at least one bank of elevators.  The fireball exploded

onto numerous lower floors, including the 77th and 22nd; the West Street lobby level; and

the B4 level, four stories below ground.  The burning jet fuel immediately created thick,

black smoke that enveloped the upper floors and roof of the North Tower."  <u>See</u> *The 9/11*

*Commission Report*, pp. 32, 285.  <u>See also</u> National Transportation Safety Board, Radar

Data Impact Study, American Airlines Flight 11, United Airlines Flight 175 by Daniel R. Bower, Ph.D. dated February 7, 2002.

162.    One Decedent, **Jeffrey Collman**, was a flight attendant on American Airlines Flight 11. He spent up to 32 minutes traveling in plane that was hijacked, or enabled to be hijacked, by Defendants.  See Third Amended Complaint, ¶ 183; See also Declaration of Brian Collman; Declaration of Charles Collman; Declaration of Dwayne Collman; Declaration of Brenda Sorenson; *The 9/11 Commission Report*, pp. 32

163.    Sixteen of the Decedents were last known to be working in the area of Floors 84 to 104 of the South Tower, Two World Trade Center, New York, NY on September 11, 2001. United Airlines Flight 175 struck the South Tower at 9:03:11 at a groundspeed of 586.5 miles per hour, crashing through an area from Floor 77 to Floor 85.  See *The 9/11 Commission Report*, pp. 32, 293-94.  See also National Transportation Safety Board, Radar Data Impact Study, American Airlines Flight 11, United Airlines Flight 175 by Daniel R. Bower, Ph.D. dated February 7, 2002.

164.    United Airlines Flight 175 was also a scheduled transcontinental flight from Boston to Los Angeles.  The aircraft was a Boeing 767-200, which carries approximately 10,000 gallons of jet fuel.  It was in the air for approximately 49 minutes, leaving much of its jet fuel supply unexpended.  The heart of the impact zone was the 81st floor, where the wing of the aircraft has sliced through the office of the only known survivor from that area.  He described the 81st floor "as a 'demolition' site in which everything was 'broken up' and the smell of jet fuel was so strong that it was almost impossible to breathe."  Within 15 minutes of impact, debilitating smoke had reached Floor 100.  See *The 9/11 Commission Report*, pp. 32, 293-94.

165.    Three of the Decedents were onboard United Airlines Flight 175 including the Captain,

**Victor Saracini**, who was murdered during the flight by the hijackers.  The Decedents

who survived the flight were traveling in a plane that was hijacked, or enabled to be

hijacked, by Defendants for 17 to 21 minutes.  See Third Amended Complaint, ¶¶ 19, 65,

65, 116; 127; 368; See also Declaration of Maria Regina Merwin; Declaration of Ellen

Saracini; Declaration of Raymond Doyle Ward; *The 9/11 Commission Report*, pp. 7, 32.

166.    Three Decedents were working in the Pentagon when it was struck by American Airlines

Flight 77, which was hijacked, or enabled to be hijacked, by Defendants.  Like the other

hijacked aircraft, American Airlines Flight 77 was a scheduled transcontinental flight

from Washington, D.C. to Los Angeles. It was in the air for approximately one hour,

seventeen minutes, leaving much of its jet fuel supply unexpended.  See Third Amended

Complaint, ¶¶ 39, 110, 167.  See also Declaration of Chrislan Fuller Manuel; Declaration

of Martin Panik; Declaration of Linda Ellen Panik; Declaration of Rodney Ratchford; *The

9/11 Commission Report*, pp. 33.

167.    One Decedent, **Gerald Kendall Bingham a/k/a Mark K. Bingham**, was onboard United

Airlines Flight 93 on September 11, 2001, which was a scheduled transcontinental flight

from Newark, NJ to San Francisco.  The Decedent was in the air on a plane hijacked, or

enabled to be hijacked, by Defendants for approximately 35 minutes.  Following a battle

for control of the airplane between the passengers of Flight 93, including the Decedent,

and the hijackers, the plane flipped onto its back and crashed into a field near

Shanksville, PA at a groundspeed of 580 miles per hour.  See Third Amended Complaint,

¶¶ 119; 370.  See also Declaration of Gerald Bingham; *The 9/11 Commission Report*, pp.

13-14, 33.

168.   One Decedent, **John William Perry**, was a member of the New York City Police Department who was in the mezzanine of the South Tower when it collapsed on September 11, 2001.  See Third Amended Complaint, ¶ 34.  See also Declaration of Patricia J. Perry, ¶ 7.

169.   One Decedent, **Edward W. Straub**, was killed on a public street near the South Tower on September 11, 2001.  See Third Amended Complaint, ¶ 81; See also Declaration of Sandra N. Straub, ¶ 25.

170.   One Decedent, **Yvette Nichole Moreno**, worked in the North Tower but called her family from outside after American Airlines Flight 11 struck the building.  She died on an overpass while walking home, which was caused to collapse by falling debris.  See Declaration of Ivy Moreno, ¶ 5.

171.   The passengers of American Airlines Flight 11 knew full well that their plane had been hijacked, was flying too low to the ground, and that death was the likely result for all aboard.  See The 9/11 Commission Report, pp. 4-7.

172.   The passengers of United Airlines Flight 175 knew full well that their plane had been hijacked, was flying too low to the ground, and that death was the likely result for all aboard.  See The 9/11 Commission Report, pp. 7-8.

173.   The passengers of United Airlines Flight 93 were well aware that their plane had been hijacked, that two hijacked planes had been flown into the North Tower and South Tower, and that death was the likely result for all aboard, despite the passengers' heroic attempt to thwart the hijackers. See The 9/11 Commission Report, pp. 10-14.

174.   Civilians in the South Tower were aware that an incident had occurred in the North Tower, leading to a fire and billowing black smoke surrounding the North Tower.  See

Declarations of Plaintiffs, *passim*.

175.   Civilians in the South Tower witnessed the approach of United Airlines Flight 175 toward their building.  <u>See</u> Declaration of Grace Kneski, ¶ 6.

176.   Both civilians and military officials at The Pentagon were well aware that the United States was under attack on September 11, 2001.  <u>See</u> Declaration of Linda Ellen Panik; <u>See</u> <u>also</u> *The 9/11 Commission Report*, *passim*.

177.   Civilians trapped in the North Tower experienced horrific pain and suffering that is almost beyond human comprehension.  <u>See</u> Declarations of Plaintiffs, *passim*; <u>See</u> <u>also</u> *The 9/11 Commission Report*, *passim*; Report of Alberto Diaz, M.D, generally.

178.   Civilians trapped in the South Tower experienced horrific pain and suffering that is almost beyond human comprehension.  <u>See</u> Declarations of Plaintiffs, *passim*; <u>See</u> <u>also</u> *The 9/11 Commission Report*, *passim*;  Report of Alberto Diaz, M.D, generally.

179.   Civilians and military personnel trapped in The Pentagon experienced horrific pain and suffering that is almost beyond human comprehension.  <u>See</u> Declarations of Plaintiffs, *passim*; <u>See</u> <u>also</u> *The 9/11 Commission Report*, *passim*; Report of Alberto Diaz, M.D, generally.

180.   Emergency personnel responding to the terrorist attacks perpetrated by, or enabled by, all Defendants experienced horrific pain and suffering that is almost beyond human comprehension.  <u>See</u> Declaration of Patricia Perry; <u>See</u> <u>also</u> *The 9/11 Commission Report*, *passim*; Report of Alberto Diaz, M.D, generally.

181.   All Decedents who died as a result of the terrorist attacks as perpetrated by, or enabled by, all Defendants experienced horrific pain and suffering that is almost beyond human comprehension.  <u>See</u> Declarations of Plaintiffs, *passim*; <u>See</u> <u>also</u> *The 9/11 Commission*

*Report*, *passim*; Report of Alberto Diaz, M.D, generally.

182.   The pain and suffering experienced by Decedents was broadcast throughout the world in real-time and witnessed by all Plaintiffs either as the events of September 11, 2001, unfolded, or during the countless replays of the attacks that have continuously been aired by various media outlets from the date of the attacks to the present day.  See Declarations of Plaintiffs, *passim*; See also *The 9/11 Commission Report*, *passim*; Report of Alberto Diaz, M.D, generally.

### Expert Attestation in Support of Non-Economic Damages

183.   Rear Admiral Alberto Diaz, Jr., M.D. (Ret.) has submitted an expert report with regard to the pain and suffering experienced by the Decedents and their families as a result of the terrorist attacks perpetrated, or enabled by, all Defendants against the United States on September 11, 2001.

184.   Dr. Diaz is a member of the American Medical Association, Association of Military Surgeons of the United States, and Association of Naval Services Officers.  See Curriculum Vitae of Alberto Diaz, Jr., RADM MC USN (Ret.).

185.   Dr. Diaz received a Certification by the Board of Psychiatry and Neurology in 1985.  See Curriculum Vitae of Alberto Diaz, Jr., RADM MC USN (Ret.).

186.   From 1995-97, Dr. Diaz served as Commander-in-Chief, Pacific Fleet Surgeon.  See Curriculum Vitae of Alberto Diaz, Jr., RADM MC USN (Ret.).

187.   Dr. Diaz was the Senior Navy Medical Department Representative in the investigation conducted by the U.S. Navy after the USS *Vincennes* shot down an Iranian Airbus on July 3, 1988.   See Report of Alberto Diaz, M.D. § Prior Expert Testimony.

188.   Dr. Diaz has served as Executive Officer, Medical Director, or Commander of various

United States Navy Medical Centers throughout the world.   See Curriculum Vitae of Alberto Diaz, Jr., RADM MC USN (Ret.).

189.   Dr. Diaz completed the Combat Casualty Care Course on November 3, 1984.  See Curriculum Vitae of Alberto Diaz, Jr., RADM MC USN (Ret.).

190.   Dr. Diaz has provided expert deposition testimony in a number of cases for The Wolk Law Firm in Philadelphia, PA, which practices aviation law exclusively.  See Report of Alberto Diaz, M.D. § Prior Expert Testimony.

191.   Dr. Diaz is qualified to submit an Expert Report to this Court.

192.   With regard to the terrorist attacks of September 11, 2001, Dr. Diaz opines that "[t]he express purpose of this 'operation' was to achieve the highest possible human toll in terms of lives lost, injuries sustained and lasting psychological trauma.  It also sought to maximize human suffering through the incredibly cruel and horrific means of death and the prolongation of that suffering."  See Report of Alberto Diaz, M.D. § Case History.

193.   The suffering of those trapped in the four hijacked aircraft, North Tower, South Tower, and the Pentagon was compounded by the neurophysiology of the human brain.  See Report of Alberto Diaz, M.D. § Background.

194.   The "fear circuit" in the brain has its origins in the central part of the brain called the amygdala.  The specific neural pathways which mediate the feelings of *intense* dread, anxiety, fear and panic emanate downward from the central amygdala.  See Report of Alberto Diaz, M.D. § Background. (emphasis in original).

195.   These systems and responses are "not speculative or fanciful" and are "experimentally reproducible."  See Report of Alberto Diaz, M.D. § Background; See also Panksepp, Jack: *Affective Neuroscience (The Foundations of Human and Animal Emotions)*, Oxford

University Press, New York, 1998.

196.   The physiological response to fear, in particular extreme fear, includes: an increased heart

rate; elevated blood pressure; drying of the mouth; trembling; sweating; blanching;

feelings of faintness; nausea and vomiting; and a general homeostatic disregulation.  As

the threat continues, there are hormonal changes.  Cortisol and adrenalin begin to surge

through the system, causing tunnel vision and making the victim feel increasingly

confused.  This disorganizes though processes further and impairs fine motor control and

hearing faculties.   See Report of Alberto Diaz, M.D. § Background.

197.   If there is no relief from the threat, then loss of control of the sphincters ensues, with

urinary incontinence and involuntary defecation.  See Report of Alberto Diaz, M.D. §

Background.

198.   *The 9/11 Commission Report* contains corroboration of the effects of intense fear as

described by Dr. Diaz.  A passenger of doomed United Airlines Flight 175, Peter Hanson,

called his father, Lee Hanson, from the hijacked aircraft at approximately 9:00 a.m. on

September 11, 2001.  Mr. Hanson was interviewed by the Federal Bureau of Investigation

on September 11, 2001, and relayed the contents of the phone call with his deceased son,

which included the statements: "It's getting very bad on the plane - Passengers are

throwing up and getting sick - The plane is making jerky movements – I don't think the

pilot is flying the plane – I think we are going down – I think they intend to go to

Chicago or someplace and fly into a building- Don't worry, Dad – If it happens it will be

very fast – My God, my God."  See Report of Alberto Diaz, M.D. § United Airlines

Flight 175 and American Airlines Flight 11; *The 9/11 Commission Report*, p. 7-8.

199.   It is clear that both American Airlines Flight 11 and United Airlines Flight 175 descended

extremely rapidly, intentionally picking up speed to maximize destructive energy. They were flying very erratically, particularly AA 11 as it flew among the skyscrapers of New York City. Videos of AA 11 capture the sound of the engines as they roar to full throttle just before impact. UA 175 is seen initiating a hard roll and turn to the left as the pilot tries to ensure that the plane would strike the intended target. It is difficult to estimate the induced "G" forces, but they added significantly to the victims' dread and terror in those last few moments.  See Report of Alberto Diaz, M.D. § United Airlines Flight 175 and American Airlines Flight 11.

200.   When the passengers of United Airlines Flight 93 revolted, the "pilot" began to roll the aircraft violently right and left to throw them off balance. In addition, he began a series of desperate up and down pitching movements. Recordings from the cockpit documents shouts and screams, crashing sounds from the adjacent galley, and evidence of a tumultuous, desperate, frenzied struggle right up to the moment of impact. In the final seconds the pilot pulled the control yoke all the way to the right, rolling the aircraft onto its back and putting it into a terminal dive, impacting the ground near Shanksville, PA at 580 mph.  See Report of Alberto Diaz, M.D. § United Airlines Flight 93.

201.   Dr. Diaz equates the last moments aboard United Airlines Flight 93 as to that of a horror movie.  The desperation and fear of impending doom was made worse by the realization that the passengers' their efforts would come to naught. The violent maneuvering of the aircraft certainly caused injuries beyond those that may have been inflicted by the terrorists. Alternating cycles of weightlessness and crushing "Gs," being smashed from wall to wall and from floor to ceiling, loss of orientation, and the final roll and dive to the ground must have generated extreme physiological responses. By this point, most of the

passengers would have been beyond rational thought. Some in the back would have been paralyzed by overwhelming and unrelenting fear and stress, while most of those involved in the assault would have added components of unfathomable rage and anger to their terror; a truly horrible way to die. See Report of Alberto Diaz, M.D. § United Airlines Flight 93.

202. The unrelenting, extreme anxiety experienced by those in the four hijacked aircraft, the North Tower, the South Tower, and The Pentagon is the most intense and dreadful feeling a human being can experience and leads to a cognitive "meltdown." Once "flight or fight" becomes clearly impossible the mind becomes, for all intents and purposes, immobilized. This "quiescence" had evolutionary value in order to freeze the individual during an unexpected encounter with a dangerous predator. In the modern world, it compounds the dangers and threats surrounding the individual. Quiescence does not imply merciful "numbness," only a physical impossibility to react to the threat. Some authors often refer to the "parallel mind of fear." See Report of Alberto Diaz, M.D. § Background.

203. The horrific experience of those trapped in the four hijacked aircraft, the North Tower, the South Tower and the Pentagon was compounded by tachypsia, which is a consequence of overwhelming stress. Nature compounds the pain by subjectively slowing time down. What may transpire over the course of a few seconds may be experienced as happening in very slow motion, thus prolonging the agony. See Report of Alberto Diaz, M.D. § Background.

204. The signals from the amygada represent inaccessible learned memories (and possibly inherited instinctual associations). The body and brain's response is immediate and

impossible to resist. It is said that the signals from the amygdala trump all other higher

cognitive functions. <u>See</u> Report of Alberto Diaz, M.D. § Background.

205.    The only way that <u>serious</u> alarm signals from the "fear network" can be held in some

abeyance is through intense and repetitive training, such as the military, law enforcement,

and rescue personnel undergo. (For ordinary minor "threats" the frontal lobes "reassure"

the amygdala that all is under control and the fear response abates.)  This explains why

rescue personnel of all types were able to perform heroically despite experiencing

(physically and subjectively) exactly the same horrible threats to their life and sanity on

September 11, 2001.  <u>See</u> Report of Alberto Diaz, M.D. § Background.  (emphasis in

original). (parenthetical in original).

206.    Death by immolation ranks as one of the greatest fears among humans and animals alike.

<u>See</u> Report of Alberto Diaz, M.D. § World Trade Center (WTC) and the Pentagon

Building.

207.    Death by fire itself involves initial symptoms of heatstroke, followed by thermal

decomposition of organs, sloughing of the skin, bursting of the eyeballs, and finally

massive loss of blood and body fluids. Such a death is neither rapid nor merciful.  <u>See</u>

Report of Alberto Diaz, M.D. § World Trade Center (WTC) and the Pentagon Building.

208.    The need to escape the holocaust must have generated a visceral panic response amongst

all concerned. For some, tragically, severe traumatic injuries prevented their immediate

escape from the flames and they suffered the intense heat and unbearable agony that

accompanies such a fate. The lack of oxygen, which was used up quickly by the flames

from the jet fuel explosions, added a measure of additional suffering as burning was

accompanied by asphyxiation. Searing hot, noxious chemicals were inhaled by victims

near the fires, producing severe and extremely painful irritation of the lining of the lungs. See Report of Alberto Diaz, M.D. § World Trade Center (WTC) and the Pentagon Building.

209.    Those trapped in elevators surrounded by fire, particularly the ones located in shafts through which the jet fuel fireball from American Airlines Flight 11 descended in the North Tower, were even less fortunate. They literally sat in red hot ovens and slowly cooked and asphyxiated to death.  See Report of Alberto Diaz, M.D. § World Trade Center (WTC) and the Pentagon Building.

210.    The above explains why so many victims facing death by fire chose to leap from the buildings to certain death. Approximately 200 persons are known to have chosen to end their lives in this manner rather than face the extreme torture of death by flames.  See Report of Alberto Diaz, M.D. § World Trade Center (WTC) and the Pentagon Building.

211.    Those who leapt from the buildings were subjected to another form of torture and agony. The terminal velocity of a 170 lb human being is about 120 mph. This translates into approximately 176 ft per second. Falling over 1000 ft will require between 5 and 6 seconds, an eternity when you are facing certain death. Subjectively, tachypsia will prolong the fall and permits the victim to be fully conscious of the absolute certainty of his or her death, to experience the rushing of air, the sudden feeling of weightlessness followed by rapid acceleration downwards, and perhaps tumbling end over end as they rush towards the ground. Were they to open their eyes they could anticipate the exact moment of the cessation of the self. And yet, cruelly, there is enough time to think of those you left behind, to feel regret and to feel sorrow.  See Report of Alberto Diaz, M.D. § World Trade Center (WTC) and the Pentagon Building.

212.    After the initial impact, explosion, and fireball, survivors were faced with bleak prospects

indeed. In general, those in the floors above were trapped with no place to go. Debris and

nonexistent, or non apparent, means of egress meant that their fates were sealed.

Instinctually, many headed upwards towards the roof, some thinking that perhaps a

helicopter rescue was still possible. In the event, high winds from the blazing inferno

below made that operation an aeronautical impossibility. When they reached the top, they

found that the doors were, in fact, locked. The situation was desperate; neither flight nor

fight was possible. The flames continued to surge from below, consuming some and

forcing others into a desperate death leap. Death *was* certain. Only the method was yet to

be determined. At this point all hope was lost and the psychological and neurophysiologic

"storm" was inevitable for many, if not most. Background sounds and snatches of

conversations gleaned from brief cell phone conversations paint a picture of confusion,

irrational comments ("call 911 and tell them we are under the desks"), and terror.  See

Report of Alberto Diaz, M.D. § World Trade Center (WTC) and the Pentagon Building.

213.    For the occupants of the South Tower, their torture lasted 56 minutes before the last,

dramatic act; the collapse of the building dragging all remaining survivors down to a fiery

and crushing death. The North Tower collapsed after 75 minutes, merely prolonging the

inevitable. The victims inside the Pentagon were spared the agony of being trapped

beyond the reach of rescue services, but in every other way, the manner and extent of

their suffering was similar in every way.  See Report of Alberto Diaz, M.D. § World

Trade Center (WTC) and the Pentagon Building.

214.    It appears as if every conceivable horrific and gruesome way to die was present on

September 11, 2001. However, the dead will suffer no more. For the survivors and family

members, however, this day was not the end of an incredibly tragic chapter in their lives.
Rather, it was the beginning of long lasting, intense feelings of grief, guilt and regret. For
extremely large numbers, this is translated into significant and disabling
psychopathology. The scientific literature reveals that 67% of victims exposed to mass
violence become severely (psychologically) impaired, as opposed to only 39% of those
exposed to a technologically based disaster, or 37% of those exposed to a natural disaster.
See Report of Alberto Diaz, M.D. § Survivors and Surviving Family Members.  See also
Holloway, H.C. and Fullerton, C.S., (1994) *The Psychology of Terror and its Aftermath*,
(in "Individual and Community Responses to Trauma and Disaster, eds. R.J Ursano, B.G.
McCaughey & C.S.Fullerton, pp. 31-45, Cambridge: Cambridge University Press; North,
C.S., Tivis, L., McMillen, J.C. et al., (2002). *Psychiatric Disorders in Rescue Workers
After the Oklahoma City Bombing,* American Journal of Psychiatry, pp. 159, 857-859.

215.    Psychopathology runs the gamut from Major Depression, General Anxiety Disorder,
Sleep Disorders, Substance Abuse, and Adjustment Disorder, to Post Traumatic Stress
Disorder. There is also some evidence that among children (whether primary victims or
experiencing traumatic separation and dislocation as a result of the disaster) it may
contribute to various forms of ASD (Autism Spectrum Disorder).  See Report of Alberto
Diaz, M.D. § Survivors and Surviving Family Members.  See also Norris, F.H.,
Friedman, M.J., Watson, P.T. et al. (2002) *60,000 Disaster Victims Speak, Part 1, An
Empirical Review of the Empirical Literature;* 1981-2001. *Psychiatry*, pp. 65, 207-239.

216.    Dr. Diaz attests to a reasonable degree of medical certainty that the suffering of all the
victims on September 11, 2001, was gruesome and painful in the extreme, and that the
majority of survivors and surviving family members will continue to relive the events of

that fateful day for a significant portion of their natural lives. See Report of Alberto Diaz, M.D. § Conclusion.

217.   For many loved ones, modern communications (cell phones) enabled them to share the experience from a distance; experiencing the horror, but not the physical suffering. Thus, grief becomes compounded by guilt, and enduring – and very real and vivid – memories of the tragedy. Unfortunately they are condemned to keep reliving the experience through the unabated media coverage that continues to this day. *Many, if not most will require ongoing psychological/psychiatric intervention.*  See Report of Alberto Diaz, M.D. § Conclusion. (emphasis in original).

218.   The effects on children who lost parents on that day are immeasurable. The effects of 9/11 will thus continue across generations and for decades to come.  See Report of Alberto Diaz, M.D. § Conclusion.

219.   The tragedy has become imprinted on our national psyche, and our lives have all been negatively affected in one way or another. It contributed directly to our involvement in two wars and the consequent additional death and suffering. Long lines at the security checkpoints in airports, ubiquitous government surveillance, and suspiciousness of our own Islamic countrymen are all ways in which we as a nation may have lost our innocence.  See Report of Alberto Diaz, M.D. § Conclusion.

220.   The Declarations submitted by the Claimants in this matter fully support the opinions of Dr. Diaz.  Dozens upon dozens of Declarations submitted in connection with this case document that Decedents were trapped in the World Trade Center alive and conscious and that the surviving Claimants received multiple levels of psychological and psychiatric intervention as a result of losing loved ones on September 11, 2001, ranging

from participation in support groups to inpatient psychiatric care.  See Declarations, submitted via CD, *passim*.

221.   The opinion of Dr. Diaz is firmly supported by the graphic, real-life attestations composed by the Claimants in the instant suit, which speak to both the horror of the Decedents' deaths and the lasting psychological impact that these deaths have wrought on the Decedents' families.  This psychological impact still continues a decade after the terrorist attacks perpetrated by Defendants.  <u>See</u> Declarations of Claimants, *passim*.

### Expert Attestation in Support of Economic Damages

222.   Stan V. Smith, Ph.D. is the president of Smith Economics Group, Ltd.  Dr. Smith's specific area of expertise is forensic economics.  *See Curriculum Vitae of Stan Smith, Ph.D., attached to the Inquest Memorandum as Exhibit F.*

223.   Dr. Smith has provided expert deposition testimony thousands of times and has been deemed qualified to testify approximately 500 times by state trial courts and U.S. District Courts in virtually every State in the Union.  *See Correspondence by Stan Smith, President, Smith Economics Group, Ltd. dated February 14, 2012.*

224.   Dr. Smith taught the first undergraduate course in the nation on forensic economics.  *See Curriculum Vitae of Stan Smith, Ph.D., attached to the Inquest Memorandum as Exhibit F.*

225.   Dr. Smith is qualified to provide an expert opinion to this Court concerning the forensic economics arising out of the claims made on behalf of the Decedents and Plaintiffs in this case.

226.   The amount of compensatory non-economic damages in this matter, as calculated by Dr. Smith, is $1,728,500,000 exclusive of prejudgment interest.  *See Correspondence by Stan*

*Smith, President, Smith Economics Group, Ltd. dated February 14, 2012, attached to*

*Plaintiffs' Inquest Memorandum as Exhibit K.*

227.   The amount of compensatory economic damages in this matter, as calculated by Dr. Smith, is $344,277,160.  This amount includes prejudgment interest from September 11, 2001, to January 1, 2013, using the annual average monthly interest rates for 30 day U.S. Treasury Bills.  *Id.*

228.   The total amount of compensatory damages in this matter, which consists of both an economic loss and non-economic loss component, is $2,122,777,160.  This is exclusive of prejudgment interest on compensatory non-economic damages.  *Id.*

229.   The prejudgment interest calculated on the compensatory non-economic damages of $1,728,500,000 as stated in ¶ 225 was calculated using the monthly average Prime Rate of Interest, published by the Federal Reserve System, of 4.96%.  From September 11, 2001, to January 1, 2013, the amount of prejudgment interest on the compensatory non-economic damages is $1,262,999,268.  *Id.*

230.   The method Dr. Smith used to arrive at this prejudgment interest amount is exactly the same methodology as employed by Judge John M. Facciola in *Baker v. Syria, 775 F.Supp.2d 48 (D.D.C. March 30, 2011).  Id.*

231.   The total of all economic and non-economic damages in this matter, including the prejudgment interest on both economic and non-economic damages, is $3,385,776,428. *Id.*

## B.   PROPOSED CONCLUSIONS OF LAW

232.   Incorporated herein by reference are Plaintiffs' 276 Findings of Fact and 35 Conclusions of Law entered by The Honorable George B. Daniels, United States District Judge for the

Southern District of New York, on December 22, 2011.

233.    The 9/11 terrorist attacks are contrary to the guarantees "recognized as indispensable by civilized peoples."  28 U.S.C. § 1350 note. Accordingly, the 9/11 attacks and the resulting deaths constitute "extrajudicial killings" that give rise to private right of action under 28 U.S.C. § 1605A(c).

### Damages under the Foreign Sovereign Immunities Act Generally

234.    Thus, this Court finds, based on the Findings of Fact at ¶¶ 1-233 above, that Plaintiffs are entitled to damages, both economic and non-economic, as a result of the extrajudicial killings perpetrated by, or enabled by, Defendants on September 11, 2001.

235.    Damages available under the cause of action created under the Foreign Sovereign Immunities Act include economic damages, solatium, pain and suffering, and punitive damages. §1605A(c).  *See, e.g., Baker, supra,* 775 F.Supp.2d at 78-86*; Murphy v. Islamic Republic of Iran*, 740 F.Supp.2d 51 (D.D.C. 2010); *Acree v. Republic of Iraq*, 271 F.Supp.2d 179, 219-220 (D.D.C. 2003) (Roberts, J.), *vacated on other grounds*, 370 F.3d 41 (D.C.Cir. 2004); *Cronin v. Islamic Republic of Iran*, 238 F.Supp.2d 222, 235 (D.D.C. 2002)(Lamberth, J.), *abrogated on other grounds by Cicippio-Puleo v. Islamic Republic of Iran*, 353 F.3d 1024 (D.C.Cir. 2004); *Mousa v. Islamic Republic of Iran*, 238 F.Supp.2d 1 (D.D.C. 2001)(Bryant, J.).

236.    In evaluating the Plaintiffs' proof of economic damages, the Court may "accept as true the plaintiffs' uncontroverted evidence."  *Elahi v. Islamic Republic of Iran,* 124 F.Supp.2d 97, 100 (D.D.C. 2000); *Campuzano v. Islamic Republic of Iran*, 281 F.Supp.2d 258, 268 (D.D.C. 2003).

237.    Plaintiffs may establish proof of damages by affidavit.  *Weinstein v. Islamic Republic of*

*Iran,* 184 F.Supp.2d 13, 19 (D.D.C. 2002); *Polhill v. Islamic Republic of Iran*, 2001 WL 34157508

238.   This Court exercises its discretion to award to award Plaintiffs prejudgment interest from the date of the terrorist attacks of September 11, 2001, until the date of final judgment. *Baker, supra.*

239.   Prejudgment interest will be awarded both to compensate the Decedents' Estates and surviving Claimants for delays due to litigation and to prevent the Islamic Republic of Iran and all other Defendants from profiting from their long history of terrorist attacks directed toward the United States proper and the interests, persons and property of the United States abroad. *Pugh, supra,* 530 F.Supp.2d at 263.

### Damages Awards to the Forty-Seven (47) Decedents' Estates

240.   The Estates of the 47 Decedents that are parties to the instant action shall recover economic losses as a result of the wrongful death of each Decedent on September 11, 2001.  See citations at ¶ 233, *supra*.

241.   The Estates of the 47 Decedents shall also recover non-economic damages via a survival action due to the intense pain and suffering endured by Decedents during their entrapment in the hijacked commercial jetliners designated as American Airlines Flight 11, United Airlines Flight 175, or United Airlines Flight 93; their entrapment in the North Tower or South Tower of the World Trade Center, both of which were laden with thousands of gallons of burning jet fuel and debilitating smoke before their collapse and total destruction; or, their entrapment in The Pentagon after the crash of American Airlines Flight 77 into the building and the resultant conflagration.  *Id.*

242.   The Estates of the 47 Decedents shall also recover for the pain and suffering specifically

associated with each of the Decedents' horrific deaths individually. *Id*.

243.   Both the Decedents' pain and suffering, and the resulting recovery by each of the 47

Estates, is compounded by the Decedents' mental anguish resulting from the knowledge

their deaths were imminent. *Baker, supra,* 775 F.Supp.2d at 81-4.

244.   The **Estate of Donald J. Havlish, Jr.** is hereby awarded the amount of $37,864,316.[8]

245.   The **Estate of Michael A. Bane** is hereby awarded the amount of $37,113,102.

246.   The **Estate of Martin Boryczewski** is hereby awarded the amount of $48,515,853.

247.   The **Estate of Richard M. Caproni** is hereby awarded the amount of $34,703,448.

248.   The **Estate of Peter Chirchirillo** is hereby awarded the amount of $36,593,024.

249.   The **Estate of Jeffrey Coale** is hereby awarded the amount of $36,711,296.

250.   The **Estate of Daniel M. Coffey** is hereby awarded the amount of $36,211,514.

251.   The **Estate of Jason Coffey** is hereby awarded the amount of $35,158,923.

252.   The **Estate of Jeffrey Collman** is hereby awarded the amount of $35,470,609.

253.   The **Estate of Michael Diehl** is hereby awarded the amount of $36,736,540.

254.   The **Estate of Stephen Dorf** is hereby awarded the amount of $34,395,127.

255.   The **Estate of Judy Fernandez** is hereby awarded the amount of $34,004,981.

256.   The **Estate of William R. Godshalk** is hereby awarded the amount of $47,824,909.

257.    The **Estate of John Grazioso** is hereby awarded the amount of $38,529,190.

258.   The **Estate of James D. Halvorson** is hereby awarded the amount of $40,617,182.

259.   The **Estate of Liming Gu** is hereby awarded the amount of $43,035,609.

260.   The **Estate of Steven Cafiero** is hereby awarded the amount of $32,906,639.

---

[8]   See Summary of Certified Economic Losses of Each Plaintiff-Decedent prepared by Smith Economics Group Ltd attached to the Inquest Memorandum as Exhibit G and List of Plaintiffs' Proposed Compensatory Awards Per Claimant attached as Exhibit I and for specific calculations.

261.   The **Estate of Robert Levine** is hereby awarded the amount of $35,673,313.

262.   The **Estate of Joseph Lostrangio** is hereby awarded the amount of $36,930,063.

263.   The **Estate of Brian Nunez** is hereby awarded the amount of $33,652,359.

264.   The **Estate of Meta Waller** is hereby awarded the amount of $32,352,938.

265.   The **Estate of Ronald Gamboa** is hereby awarded the amount of $34,043,418.

266.   The **Estate of Dorothy Mauro** is hereby awarded the amount of $32,733,016.

267.   The **Estate of Mary Melendez** is hereby awarded the amount of $38,683,988.

268.   The **Estate of Peter T. Milano** is hereby awarded the amount of $53,305,752.

269.   The **Estate of Yvette Nichole Moreno** is hereby awarded the amount of $33,512,676.

270.   The **Estate of Philip Paul Ognibene** is hereby awarded the amount of $35,587,524.

271.   The **Estate of Denis Lavelle** is hereby awarded the amount of $35,192,429.

272.   The **Estate of John William Perry** is hereby awarded the amount of $36,076,677.

273.   The **Estate of Salvatore T. Papasso** is hereby awarded the amount of $37,442,117.

274.   The **Estate of Marsha Dianah Ratchford** is hereby awarded the amount of $37,386,414.

275.   The **Estate of John M. Rodak** is hereby awarded the amount of $55,593,184.

276.   The **Estate of Elvin Romero** is hereby awarded the amount of $45,936,408.

277.   The **Estate of Richard Rosenthal** is hereby awarded the amount of $38,426,641.

278.   The **Estate of Joshua Scott Reiss** is hereby awarded the amount of $38,879,175.

279.   The **Estate of Maria Theresa Santillan** is hereby awarded the amount of $34,407,439.

280.   The **Estate of Victor Saracini** is hereby awarded the amount of $40,745,899.

281.   The **Estate of Scott Schertzer** is hereby awarded the amount of $33,944,544.

282.   The **Estate of Paul K. Sloan** is hereby awarded the amount of $37,120,133.

283.   The **Estate of George Eric Smith** is hereby awarded the amount of $33,761,652.

284.   The **Estate of Timothy P. Soulas** is hereby awarded the amount of $117,948,781.

285.   The **Estate of William R. Steiner** is hereby awarded the amount of $37,596,100.

286.   The **Estate of Andrew Stergiopoulos** is hereby awarded the amount of $36,868,696.

287.   The **Estate of Edward W. Straub** is hereby awarded the amount of $47,705,140.

288.   The **Estate of Jennifer Tino** is hereby awarded the amount of $33,778,014.

289.   The **Estate of Jeanmarie Wallendorf** is hereby awarded the amount of $32,921,240.

290.   The **Estate of Timothy Raymond Ward** is hereby awarded the amount of $33,843,706.

### Damages Awards for Individual Claimants

291.   Those Plaintiffs who are family members of murder victims on September 11, 2001 are entitled to recover compensatory damages for solatium.  See, e.g., *Baker, supra*, 775 F.Supp.2d at 83.

292.   Solatium is awarded to compensate the "the mental anguish, bereavement[,] and grief that those with a close personal relationship to a decedent experience as the result of the decedent's death, as well as the harm caused by the loss of the decedent['s] society and comfort." *Belkin v. Islamic Republic of Iran, 667 F.Supp.2d 8, 22 (D.D.C. 2009)(citing Dammarell v. Islamic Republic of Iran, 281 F.Supp.2d 105, 196-7 (D.D.C. 2003); Elahi, supra, 124 F.Supp.2d at 110).*

293.   In evaluating the Plaintiffs' request for pain and suffering, solatium damages, and punitive damages, this Court must consider the particular circumstances of this horrific event, as well as similar and recent cases which awarded compensatory and punitive damages to victims of terrorist attacks.  *Baker*, *supra*, 775 F.Supp.2d at 83.

294.   The Court recognizes that it is entitled to take judicial notice of related proceedings and records in other cases brought under the FSIA, and does so.  *Haim v. Islamic Republic of*

*Iran*, 784 F.Supp.2d 1, 6, quoting *Valore II, supra*, 700 F.Supp.2d at 59.

295.    The accompanying Declarations by the surviving Claimants in this matter detail the
traumatic effects that the 9/11 attacks and their loss of loved ones continue to cause
Claimants today, especially in light of the constant and repetitive media attention
surrounding the attacks.  *See Exhibit B attached to Plaintiffs' Damage Inquest
Memorandum.*

296.    The award amounts proposed for individual Claimants are consistent with amounts
previously awarded in terrorist cases and consistent with the outrageousness of the 9/11
attacks.

297.    The Claimants in this case will receive awards that are higher than the awards in any
previously reported terrorism case based on the unprecedented nature, scope and
catastrophic physiological and psychological violence wrought by Defendants on the
Decedents, Claimants, and the United States as a whole on September 11, 2001.

298.    Each surviving Spouse that is a named Plaintiff in the instant action shall be awarded the
sum of $12,500,000 in non-economic losses plus prejudgment interest in the amount of
$9,133,637 for a total award of $21,633,637.

299.    Each surviving minor or adult Child that is a named Plaintiff in the instant action shall be
awarded the sum of $8,500,000 in non-economic losses plus prejudgment interest in the
amount of $6,210,873 for a total award of $14,710,783.

300.    Each surviving Parent that is a named Plaintiff in the instant action shall be awarded the
sum of $8,500,000 in non-economic losses plus prejudgment interest in the amount of
$6,210,873 for a total award of $14,710,783.

301.    Each surviving Sibling that is a named Plaintiff in the instant action shall be awarded the

sum of $4,250,000 in non-economic losses plus prejudgment interest in the amount of $3,105,436 for a total award of $7,355,436.

302.    Plaintiff **Chrislan Fuller Manuel**, the niece of Decedent **Meta Waller**, shall be treated as an adult Child and awarded the sum of $8,500,000 in non-economic losses plus prejudgment interest in the amount of $6,210,873 for a total award of $14,710,783 on the following basis: she is the Personal Representative of the **Estate of Meta Waller**; posted an appropriate bond in the Circuit Court of the City of Alexandria, Commonwealth of Virginia; dutifully performed her responsibilities of the Estate; and, on the basis of the statements in her Declaration.  See Folders 68 & 69, provided via CD.

303.    Nothing shall preclude Plaintiff **Frances M. Coffey**, as Executrix of both the Estate of her deceased husband, **Daniel M. Coffey**, and the Estate her deceased son, **Jason Coffey**, from recovering on behalf of both Estates.

304.    Nothing shall preclude **Frances M. Coffey**, individually, **Daniel D. Coffey, M.D.** and **Kevin M. Coffey** for recovering for the murder of both **Daniel M. Coffey** and **Jason Coffey** on September 11, 2001.

305.    Nothing shall preclude **Maureen Halvorson**, Executrix of the **Estate of James D. Halvorson**, from recovering on behalf of her deceased husband's Estate, and as the surviving Spouse of **James D. Halvorson**, and as a surviving Sibling of Decedent **William Wilson**.  Both **James D. Halvorson** and **William Wilson** were murdered on September 11, 2001.

306.    Plaintiffs are also entitled to reimbursement of the costs of bring this litigation.  See, e.g., *Murphy, supra,* 740 F.Supp.2d at 77 (D.D.C. 2010).  Plaintiffs' costs incurred for the prosecution of this action thus far total $1,977,846.49.  *See Affidavit Regarding Plaintiffs'*

*Costs of This Action, attached to the Inquest Memorandum as Exhibit M.*

## Punitive Damages

307.   In the instant case, the two hundred, seventy-six (276) Findings of Fact so ordered on December 22, 2011, by The Honorable George B. Daniels demonstrates by ***clear and convincing evidence*** that Iran/Hezbollah and their agents and instrumentalities supported, protected, harbored, aided, embedded, enabled, sponsored, trained, conspired with and facilitated the travel of al-Qaida for the purpose of murdering American citizens on September 11, 2001.

308.   The attacks that occurred on September 11, 2001 on the Plaintiffs individually, and our nation collectively, is like no other in American history.  The savagery and suffering caused on September 11, 2001 has no parallel in American jurisprudence.  This act of terrorism imposed an extrajudicial sentence of death via horrific physical and psychological injury on all Decedents and intense, repetitive psychological injury on all surviving Claimants.  Such injuries involve a lifetime of unimaginable grief and immeasurable sorrow.  *See Report of Rear Admiral Alberto Diaz, M.D. (U.S. Navy, Ret.). See also Declarations of Claimants, provided via CD.*

309.    Accordingly, the **character, nature and extent** of these acts merit punitive damages. *See, e.g., Cronin, supra,* 238 F.Supp.2d at 235.

310.   Iran continues to fund terrorist organizations including al-Qaida as noted by Dr. Patrick Clawson in his Affidavit, Exhibit 8, dated June 25, 2010 submitted May 19, 2011 to Judge Daniels.

311.   There a need for **deterrence** in this matter but there is evidence that Defendants possess substantial **wealth**.  The Iranian natural gas and oil reserves are the second and third

largest in the world, respectively.  The gross national product for the Islamic Republic of Iran alone is estimated to be $928.9 billion by the *CIA World Fact Book* (2011).  In short, the requirements for punitive damages contained in the RESTATEMENT (SECOND) OF TORTS § 908 (1) are fully complied with this case.  *See Supplemental Report of Stan Smith Regarding Punitive Damages, attached as Exhibit L to Plaintiffs' Inquest Memorandum.*

312.    A damages multiplier of 5.35, predicated on the United States Supreme Court's denial for a *writ of certiorari* to review a decision from the Supreme Court of Tennessee that upheld an award which amounted to a 5.35-to-1 ratio of punitive damages to actual damages, is warranted in this case.  *See DaimlerChrysler Corp. v. Flax,* 272 S.W.3d 521 (Tenn. 2008), *cert denied, May 26, 2009, 129 S.Ct. 2433, 174 L.Ed. 2d 277.*

313.    The use of a damages multiplier of 5.35 in this case brings the total amount of the damages award to **$18,113,903,890**.

314.    Such damages are warranted in light of Defendants' outrageous, malicious, premeditated attacks on United States soil.

> */s/ Thomas E. Mellon, Jr.*
>
> Thomas E. Mellon, Jr. (PA Bar No. 16767)
> John A. Corr (PA Bar No. 52820)
> Stephen A. Corr (PA Bar No. 65266)
> Thomas E. Mellon, III (PA Bar No. 81631)
> MELLON WEBSTER & SHELLY
> 87 North Broad Street
> Doylestown, PA  18901
> (215) 348-7700
>
> Walter S. Batty, Jr. (PA Bar No. 02530)
> c/o MELLON WEBSTER & SHELLY
> 87 North Broad Street

Doylestown, PA  18901
(215) 348-7700

Timothy B. Fleming (DC Bar No. 351114)
WIGGINS CHILDS QUINN
   & PANTAZIS, PLLC
1850 M Street, NW, Suite 720
Washington, DC  20009
(202) 467-4123

Dennis G. Pantazis (AL Bar No. ASB-2216-A59D)
Melina Goldfarb (AL Bar No. ASB-3739-R71M)
WIGGINS CHILDS QUINN
   & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, AL  35203
(205) 314-0500

Richard D. Hailey (IN Bar No. 7375-49)
Mary Beth Ramey (IN Bar No. 5876-49)
RAMEY & HAILEY
9333 North Meridian Street, Suite 105
Indianapolis, IN  46260
(317) 582-0000

J.D. Lee (TN Bar No. 2030)
David C. Lee (TN Bar No. 015217)
LAW OFFICE OF J.D. LEE
422 South Gay Street, 3rd Floor
Knoxville, TN  37902
(865) 544-0101

Evan J. Yegelwel (FL Bar No. 319554)
TERRELL HOGAN ELLIS YEGELWEL, P.A.
233 East Bay Street
Blackstone Building, 8th Floor
Jacksonville, FL  32202
(904) 632-2424

Edward H. Rubenstone (PA Bar No. 16542)
LAMM RUBENSTONE LLC
3600 Horizon Boulevard, Suite 200
Trevose, PA  19053
(215) 638-9330

Donald J. Winder (UT Bar No. 3519)
Jerald V. Hale (UT Bar No. 8466)
WINDER & COUNSEL, PC
175 West 200 South, Suite 4000
P.O. Box 2668
Salt Lake City, UT  84110-2668
(801) 322-2222

Robert M. Foote (IL Bar No. 03124325)
Craig S. Meilke (IL Bar No. 03127485)
FOOTE, MEYERS, MIELKE
  & FLOWERS, LLC
3 North Second Street, Suite 300
St. Charles, IL  60174
(630) 232-6333
(630) 845-8982

*Attorneys for the Havlish Plaintiffs*