```
                                              USDC SDNY
                                              DOCUMENT
                                              ELECTRONICALLY FILED
UNITED STATES DISTRICT COURT                  DOC #:_____
SOUTHERN DISTRICT OF NEW YORK                 DATE FILED: July 30, 2012
```

------------------------------------------------------------x

In Re: : **REPORT AND**
 **RECOMMENDATION**
    TERRORIST ATTACKS ON **TO THE HONORABLE**
    SEPTEMBER 11, 2001 : **GEORGE B. DANIELS**

------------------------------------------------------------x    03 MDL 1570 (GBD) (FM)

This Document Relates to
<u>Havlish v. bin Laden</u>,
03 Civ. 9848 (GBD) (FM)

**FRANK MAAS**, United States Magistrate Judge.

       The former World Trade Center site is only a few blocks from this Courthouse.  At that location, the 9/11 Memorial opened last year, and a new One World Trade Center, known as the "Freedom Tower," is rapidly nearing completion.  Sadly, despite these and other reaffirmations of the human spirit, there remains one group of Americans affected by the September 11th tragedy for whom it will always be difficult to achieve closure – those whose immediate relatives lost their lives as a result of the terrorists' acts.  The plaintiffs in this multidistrict litigation include many such persons who are seeking to recover monetary compensation from the individuals and entities that carried out, or aided and abetted, the September 11th attacks.

       On December 22, 2011, Your Honor entered a default judgment on behalf of the plaintiffs in the <u>Havlish</u> action ("Plaintiffs"), one of the cases comprising this MDL proceeding, against two groups of defendants:  (a) certain sovereign defendants, including the Islamic Republic of Iran, Ayatollah Ali Hoseini Khamenei, Hezbollah, and other Iranian individuals and entities ("Sovereign Defendants"); and (b) certain non-sovereign

defendants, including Osama bin Laden, the Taliban, and al Qaeda ("Non-Sovereign Defendants") (collectively, the "Defendants"). (ECF No. 2516). The case subsequently was referred to me to report and recommend with respect to the Plaintiffs' damages. For the reasons set forth below, I find that the Plaintiffs collectively should be awarded damages in the amount of $6,048,513,805, plus prejudgment interest on their non-economic damages.

I.      Standard of Review

In light of the Defendants' default, the Plaintiffs' well-pleaded allegations concerning issues other than damages must be accepted as true. See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although plaintiffs seeking to recover damages against defaulting defendants must prove their claims through the submission of admissible evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages, see Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Here, because both requirements have been met, a hearing is unnecessary.

II.  Factual and Procedural Background

The Havlish action concerns fifty-nine victims of the September 11, 2001 terrorist attacks. Seventeen of the victims were killed in the South Tower of the World Trade Center, thirty-two in the North Tower of the World Trade Center, and three in the Pentagon in Washington, D.C. (See ECF No. 2553 (Pls.' Proposed Findings of Fact and Conclusions of Law ("Proposed Findings")) ¶¶ 159-66). Three further victims were inside the airplane that crashed into the South Tower, including the plane's captain, who was murdered by the hijackers; another victim was a passenger on United Airlines Flight 93, which crashed near Shanksville, Pennsylvania; and three victims were killed in the immediate vicinity of the World Trade Center. (Id. ¶¶ 165, 167-70). Forty-seven of the plaintiffs ("Estate Plaintiffs") sue in their capacity as the legal representatives of their decedents. Claims also are brought individually on behalf of 111 family members of the fifty-nine victims of the attacks ("Individual Plaintiffs").

On December 22, 2011, in addition to entering a default judgment, Your Honor issued Findings of Facts and Conclusions of Law regarding the liability of the Sovereign Defendants.[1] (ECF No. 2515). In that document, Your Honor concluded that the "Plaintiffs ha[d] established by evidence satisfactory to the Court that the [Sovereign

---

[1] To obtain a default judgment in an action under the Foreign Sovereign Immunity Act ("FSIA"), a plaintiff must demonstrate a right to relief "by evidence satisfactory to the court," 28 U.S.C. § 1608(e), a standard that may be met "through uncontroverted factual allegations, which are supported by . . . documentary and affidavit evidence." Valore v. Islamic Republic of Iran, 700 F. Supp. 2d 52, 59 (D.D.C. 2010) (internal quotation marks omitted).

3

Defendants] provided material support and resources to" the perpetrators of the September 11th terrorist attacks, by, "inter alia, planning funding, [and] facilitat[ing] . . . the hijackers' travel and training," and providing the hijackers with "services, money, lodging, training, expert advice or assistance, safehouses, false documentation or identification, and/or transportation." (Id. at 50-53). By virtue of their defaults, the Non-Sovereign Defendants also have admitted their role in the September 11th terrorist attacks.

Accordingly, because all questions concerning the Havlish defendants' liability have been fully resolved, the only remaining task is the determination of the Plaintiffs' damages.

III.  Damages

    A.  Sovereign Defendants

Among the claims that the Plaintiffs assert against the Sovereign Defendants in their third amended complaint (ECF No. 2259 ("Complaint" or "Compl.")) are survival, wrongful death, and solatium claims under section 1605A of the FSIA, 28 U.S.C. § 1605A ("Section 1605A"). Section 1605A creates an exception to sovereign immunity pursuant to which a United States citizen can sue "[a] foreign state that is or was a state sponsor of terrorism . . . , and any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency," for damages arising out of an act of terrorism sponsored by that state. See Section 1605A(c). Although Congress enacted Section 1605A in 2008, it applies retroactively to suits then

4

pending against foreign states that had been designated as state sponsors of terrorism by the time the suits originally were filed. See Section 1605A(2)(A)(i)(II); Nat'l Defense Auth. Act for Fiscal Year 2008, Pub. L. No. 110-181, 122 Stat. 3.

Section 1605A effected a "sea change" in suits against state sponsors of terrorism. Read v. Islamic Republic of Iran, ___ F. Supp. 2d ___, ___, 2012 WL 639139, at *8 (D.D.C. Feb. 28, 2012). Previously, to recover damages against such defendants, plaintiffs had to demonstrate their entitlement under state or foreign law. Id. Now, such claims are subject to a "uniform federal standard." Id. (citing In re Terrorism Litig., 659 F. Supp. 2d 31, 85 (D.D.C. 2009)). Courts therefore usually determine damages under Section 1605A by applying the legal principles found in the Restatement of Torts and other leading treatises. Harrison v. Republic of Sudan, ___ F. Supp. 2d ___, ___, 2012 WL 1066683, at *3 (D.D.C. Mar. 30, 2012).

In an action under Section 1605A, "damages may include economic damages, solatium, pain and suffering, and punitive damages." Section 1605A(c)(4). Additionally, "[i]n any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents." Id. Consequently, the "estates of those who [died] can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages." Valore, 700 F. Supp. 2d at 83.

1.  Economic Damages

The Estate Plaintiffs seek economic damages for (a) the past and future lost wages and benefits of each decedent; (b) the estate's loss of household services; (c) its loss of advice, counsel, guidance, instruction, and training services; (d) its loss of accompaniment services; and (e) prejudgment interest. (See ECF No. 2554 (Pls.' Am. Damages Inquest Mem. ("Pls.' Mem.")) Ex. H). To support their claims for these damages, the Estate Plaintiffs have submitted extensive analyses by Dr. Stan V. Smith, a forensic economist. (See Pls.' Mem. Ex. F (Dr. Smith's curriculum vitae)). Dr. Smith calculated each decedent's lost wages and benefits by assuming that the decedent would have worked until the age of sixty-seven and adjusting his calculations through the use of growth and discount rates. Dr. Smith also calculated each decedent's estate's non-wage-related losses by determining the replacement cost of those services. Finally, Dr. Smith calculated the prejudgment interest on these damages using the annual average of monthly interest rates for thirty-day Treasury Bills. (See id. Ex. H).

Dr. Smith has provided detailed reports for two decedents and calculated the economic damages for the other forty-five decedents in the same manner. Having reviewed Dr. Smith's reports, I find that his calculations are reasonable, and yield proposed economic damages awards comparable to those in other cases. See, e.g., Dammarell v. Islamic Republic of Iran, 404 F. Supp. 2d 261, 310-24 (D.D.C. 2005); Alejandre v. Republic of Cuba, 996 F. Supp. 1239, 1249 (S.D. Fla. 1997); Ferrarelli v. United States, CV 90-4478 (JMA), 1992 WL 893461, at *19 (E.D.N.Y. Sept. 24, 1992). I

therefore adopt his findings regarding lost wages, benefits, and services, and prejudgment interest thereon, which leads to a finding that the Estate Plaintiffs' economic damages total $394,277,884.  The separate award to each individual Estate Plaintiff is set forth in Appendix 1 to this Report and Recommendation.

        2.        Pain and Suffering

The Estate Plaintiffs also seek damages for their decedents' pain and suffering.  "When determining the appropriate damages for pain and suffering, [the Court] is bound by a standard of reasonableness."  Mastrantuono v. United States, 163 F. Supp. 2d 244, 258 (S.D.N.Y. 2001) (citing Battista v. United States, 889 F. Supp. 716, 727 (S.D.N.Y. 1995)).

Relying on Pugh v. Socialist People's Libyan Arab Jamahiriya, 530 F. Supp. 2d 216 (D.D.C. 2008), the Estate Plaintiffs seek $18 million for each decedent's pain and suffering.  (Pls.' Mem. at 10).  In Pugh, a suitcase bomb on an airplane detonated mid-flight, killing everyone on board.  The court awarded the estate of each passenger $18 million for the passenger's pain and suffering, but did not explain how it arrived at that number, nor did it cite any cases in which there had been similar awards.  See 530 F. Supp. 2d at 266-73.  In other FSIA cases, courts have made considerably lower pain and suffering awards to the estates of victims of state-sponsored terrorism.  For example, in Stethem v. Islamic Republic of Iran, 201 F. Supp. 2d 78, 89 (D.D.C. 2002), the court awarded $1.5 million to an estate for the pain and suffering of a decedent who was tortured for fifteen hours before being shot to death.  Similarly, in Eisenfeld v.

Islamic Republic of Iran, 172 F. Supp. 2d 1, 8 (D.D.C. 2000), the court awarded $1 million in damages for pain and suffering to the estate of a victim of a bus bombing who had survived for several minutes before ultimately dying. See also Weinstein v. Islamic Republic of Iran, 184 F. Supp. 2d 13, 22-23 (D.D.C. 2002) ($10 million award to estate of victim who survived for forty-nine days with limited pain medication after suffering extensive burn and blast injuries during a terrorist bombing of a bus).

Although the specifics of each decedent's demise remain largely unknown, the Plaintiffs have submitted the expert report of Dr. Alberto Diaz, Jr., M.D., a retired Navy Rear Admiral, which provides a chilling account of the horrific conditions that each of the Estate Plaintiffs' decedents likely encountered immediately before his or her death. (See Pls.' Mem. Exs. D, E). As Dr. Diaz's report confirms, there is little doubt that many, if not all, of the decedents in this case experienced unimaginable pain and suffering on September 11, 2001. As Judge Baer noted in a previous case brought by two of the Estate Plaintiffs:

> The effort after a tragedy of this nature to calculate pain and suffering is difficult at best. Unfortunately, there is no way to bring back [the decedents] and no way to even come close to understanding what [they] experienced during their last moments. Under our legal system, compensation can only be through the award of a sum of money. While always difficult and never exact, the devastation and horror accompanying this tragedy makes a realistic appraisal almost impossible.

Smith ex rel. Smith v. Islamic Emirate of Afghanistan, 262 F. Supp. 2d 217, 233 (S.D.N.Y. 2003), amended, 2003 WL 23324214 (S.D.N.Y. May 19, 2003).

Judge Baer awarded the two Smith plaintiffs $1 million and $2.5 million, respectively, for their decedents' pain and suffering. Id. at 234, 239. Judge Baer reasoned that a $1 million award was reasonable for the first victim, who died in the South Tower, because there was no evidence that he survived the plane's impact, and that a $2.5 million award was appropriate for the second victim, because there was evidence that he had survived the initial impact and subsequently was trapped in the North Tower for some time before his death. Id.

As Judge Baer's analysis in Smith suggests, the decedents in this case arguably may have experienced different levels of pain and suffering dependant upon whether they were in the North Tower (the first to be hit but the second to collapse), the South Tower (where they may have had knowledge of the first attack but less notice that a structural collapse was likely), the Pentagon, one of the airplanes, or on the ground. The decedents' precise locations when the attack occured also may have affected their levels of conscious pain and suffering. In these circumstances, calculating a precise award for each decedent's individual pain and suffering obviously would be impossible. Nonetheless, the Estate Plaintiffs are entitled to fair compensation for their injuries; the awards in other FSIA cases – particularly those made by Judge Baer in Smith – suggest that $2 million per decedent is a reasonable figure. Accordingly, I recommend that each of the Estate Plaintiffs be awarded that amount for their decedents' pain and suffering. The total recommended pain and suffering award is therefore $94,000,000.

3. <u>Solatium</u>

Under Section 1605A, family members of the decedents also are entitled to damages for solatium. "A claim for solatium refers to the mental anguish, bereavement, and grief that those with a close relationship to the decedent experience as a result of the decedent's death, as well as the harm caused by the loss of decedent's society and comfort." <u>Dammarell v. Islamic Republic of Iran</u>, 281 F. Supp. 2d 105, 196 (D.D.C. 2003), <u>vacated on other grounds</u>, 404 F. Supp. 2d 261 (D.D.C. 2005). "Acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress." <u>Belkin v. Islamic Republic of Iran</u>, 667 F. Supp. 2d 8, 22 (D.D.C. 2009). For that reason, in FSIA cases, courts have recognized that a solatium claim is "'indistinguishable' from the claim of intentional infliction of emotional distress." <u>See, e.g.</u>, <u>Surette v. Islamic Republic of Iran</u>, 231 F. Supp. 2d 260, 267 n.5 (D.D.C. 2002) (quoting <u>Wagner v. Islamic Republic of Iran</u>, 172 F. Supp. 2d 128, 135 n.11 (D.D.C. 2001)).

In <u>Estate of Heiser v. Islamic Republic of Iran</u>, 466 F. Supp. 2d 229 (D.D.C. 2006), District Judge Royce Lamberth articulated a framework for determining solatium damages pursuant to which spouses of deceased victims each received approximately $8 million, parents each received $5 million, and siblings each received $2.5 million. Several courts subsequently have followed the <u>Heiser</u> framework while acknowledging that upward or downward departures are sometimes appropriate. <u>See, e.g.</u>, <u>Estate of</u>

Bland v. Islamic Republic of Iran, 831 F. Supp. 2d 150, 156 (D.D.C. 2011); Valore, 700 F. Supp. 2d at 85.

Here, each of the Individual Plaintiffs has submitted a declaration attesting to the traumatic effects of the loss of his or her loved one. (See Pls.' Mem. Ex. B). A review of those submissions makes clear that all of the Individual Plaintiffs have suffered profound agony and grief as a result of the tragic events of September 11th. Worse yet, the Individual Plaintiffs clearly are faced with frequent reminders of the events of that day. (Id.). Considering the extraordinarily tragic circumstances surrounding the September 11th attacks, and their indelible impact on the lives of the victims' families, I find that it is appropriate to grant the upward departures from the Heiser framework that the Individual Plaintiffs collectively have requested. Accordingly, I recommend that with one exception[2] the Individual Plaintiffs be awarded solatium damages as follows:

| Relationship to Decedent | Solatium Award |
|---|---|
| Spouse | $12,500,000 |
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

---

[2] The exception relates to Chrislan Fuller Manuel ("Manuel"), the niece of one of the decedents. Typically, solatium damages are available only to the spouses, children, parents, and siblings of decedents. See Smith, 262 F. Supp. 2d at 234. Although courts occasionally have awarded solatium damages to more distant relatives who served functionally as immediate family members, see, e.g., id. at 236 (grandmother who raised decedent from an early age); Surette, 231 F. Supp. 2d at 270 (decedent's unmarried partner of over twenty years), Manuel did not have that sort of relationship with her aunt. (See Pls.' Mem. Ex. B).

If this recommendation is adopted, the 110 Individual Plaintiffs entitled to recover damages for solatium will receive a total of $874,000,000. The separate solatium award for each Individual Plaintiff is set forth in Appendix 2 to this Report and Recommendation.

4.  Punitive Damages

Pursuant to the FSIA, the Plaintiffs also are entitled to punitive damages. See Section 1605A(c)(4). The Plaintiffs propose two different ways to calculate their punitive damages. First, the Plaintiffs propose that the Court follow the reasoning articulated in Estate of Bland, 831 F. Supp. 2d at 158. Under that rubric, the Court would calculate punitive damages by multiplying the Plaintiffs' compensatory damages by 3.44. (See Pls.' Mem. at 20). Alternatively, the Plaintiffs propose applying a 5.35 ratio as the court did in Flax v. DaimlerChrysler Corp., 272 S.W.3d 521 (Tenn. 2008). (See Pls.' Mem at 21).

In Estate of Bland, an FSIA case arising out of the bombing of the United States Marine barracks in Beirut, the court, "relying on the Supreme Court's opinion in Philip Morris USA v. Williams, 549 U.S. 346 (2007)," applied a 3.44 ratio, noting that several courts previously had applied that ratio in FSIA cases. Estate of Brand, 831 F. Supp. 2d at 158 (citing Murphy v. Islamic Republic of Iran, 740 F. Supp. 2d 51, 75 (D.D.C. 2010), and Valore, 700 F. Supp. 2d at 52). In Flax, a products liability case arising out of a car accident, the Tennessee Supreme Court upheld a punitive damages award that was 5.35 times the victim's compensatory damages. 272 S.W.3d at 540, cert.

denied, 129 S. Ct. 2433.  In the course of approving that higher multiplier, however, the court expressly noted that the victim's compensatory damages were not so substantial as to render such a high ratio unconstitutional.  Id. at 539.

As the court explained in Estate of Bland, the 3.44 ratio "has been established as the standard ratio applicable to cases arising out of" terrorist attacks.  831 F. Supp. 2d at 158.  Moreover, the Plaintiffs in this case are entitled to substantial compensatory damages.  Accordingly, Flax, which was decided several years before Bland and involves dissimilar facts, does not suggest that this Court should deviate from the established standard in FSIA cases.  The Plaintiffs' compensatory damages amount to $1,362,277,884.  I therefore recommend that they be awarded punitive damages based on a 3.44 multiplier, yielding a punitive damages total of $4,686,235,921.

       5.       Prejudgment Interest

Recognizing that an award of prejudgment interest is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism, Magistrate Judge Facciola recently awarded such plaintiffs prejudgment interest at the prime rate.  See Baker v. Socialist People's Libyan Arab Jamahirya, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  Dr. Smith similarly has used the average prime rate published by the Federal Reserve Bank for the period from September 11, 2001, through the date of his report and assumed that prejudgment interest would be awarded through January 1, 2013.  (See Pls.' Mem. Ex. J).  There is, however, no reason to believe that this Report and Recommendation will be reviewed by a particular date.  Accordingly, if this

Report and Recommendation is adopted, the Clerk of the Court should simply be directed to award prejudgment interest on the Plaintiffs' damages for solatium and pain and suffering, which total $968,000,000, at the rate of 4.96 percent per annum for the period from September 11, 2001, through the date that judgment is entered.

    B.    <u>Non-Sovereign Defendants</u>

Although the Plaintiffs' submissions do not discuss their claims against the Non-Sovereign Defendants in great detail, those Defendants are liable for the same damages as the Sovereign Defendants under traditional tort principles.[3]  See <u>Valore</u>, 700 F. Supp. 2d at 76-80.  The Non-Sovereign Defendants consequently should be held jointly and severally liable for the damages set forth above and in the appendices to this Report and Recommendation.[4]

    C.    <u>Costs</u>

The Plaintiffs also seek approximately $2 million in costs.  (<u>See</u> Pls.' Mem. Ex. M).  Pursuant to 28 U.S.C. § 1920 and Local Civil Rule 54.1(c), only certain expenditures may be taxed as costs.  The Plaintiffs have requested an award of costs

---

[3] The Plaintiffs, however, cannot recover treble damages against the Non-Sovereign Defendants pursuant to the Antiterrorism Act, 18 U.S.C. § 2333, <u>see</u> <u>Smith</u>, 262 F. Supp. 2d at 220-22, because they did not assert such a claim in their Complaint.  (<u>See</u> Compl. ¶¶ 401-21).

[4] As discussed above, at least two of the Estate Plaintiffs already have been awarded damages against some of the Non-Sovereign Defendants.  <u>See</u> <u>Smith</u>, 262 F. Supp. 2d at 240-41.  To the extent that the damages awarded in this action may exceed those awarded in a previous action, the Non-Sovereign Defendants have waived any potential <u>res judicata</u> defense by failing to appear.

primarily for expenses that are not recoverable.  In addition, the proffered evidence is insufficient for the Court to calculate any taxable costs that could be allowed.  The Plaintiffs' application for costs consequently should be denied without prejudice to a renewed application.

IV.     Conclusion

For the reasons set forth above, the Plaintiffs should be awarded damages against the Sovereign and Non-Sovereign Defendants in the amount of $6,048,513,805. Additionally, the Plaintiffs are entitled to prejudgment interest on their non-economic compensatory damages at the rate of 4.96 percent per annum from September 11, 2001, through the date judgment is entered.

V.      Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a) and (d).  Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable George B. Daniels and to the Chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be directed to

Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:     New York, New York
           July 30, 2012

                                        /s/ Frank Maas
                                        FRANK MAAS
                                        United States Magistrate Judge

Copies to:

Hon. George B. Daniels
United States District Judge

All counsel via ECF

**Appendix 1**
**Economic Damage Awards**

| ESTATE | ECONOMIC DAMAGES |
|---|---:|
| Bane, Michael | $5,960,665 |
| Boryczewski, Martin | 17,363,416 |
| Cafiero, Steven | 1,754,202 |
| Caproni, Richard M. | 3,551,011 |
| Chirchirillo, Peter | 5,440,587 |
| Coale, Jeffrey | 5,558,859 |
| Coffey, Daniel M. | 5,059,077 |
| Coffey, Jason | 4,006,486 |
| Collman, Jeffrey | 4,318,172 |
| Diehl, Michael | 5,584,103 |
| Dorf, Stephen | 3,242,690 |
| Fernandez, Judy | 2,852,544 |
| Gamboa, Ronald | 2,890,981 |
| Godshalk, William | 16,672,472 |
| Grazioso, John | 7,376,753 |
| Gu, Liming | 11,883,059 |
| Halvorson, James | 9,464,745 |
| Havlish, Donald | 6,711,879 |
| Lavelle, Dennis | 4,039,992 |
| Levine, Robert | 4,520,876 |
| Lostrangio, Joseph | 5,777,844 |
| Mauro, Dorothy | 1,580,579 |
| Melendez, Mary | 7,531,551 |
| Milano, Peter T. | 22,153,588 |

| | |
|---|---:|
| Moreno, Yvette | 2,360,239 |
| Nunez, Brian | 2,499,922 |
| Ognibene, Philip | 4,435,087 |
| Papasso, Salvatore T. | 6,289,680 |
| Perry, John | 4,924,240 |
| Ratchford, Marsha | 6,233,977 |
| Reiss, Joshua | 7,726,738 |
| Rodak, John M. | 24,440,747 |
| Romero, Elvin | 14,783,971 |
| Rosenthal, Richard | 7,274,204 |
| Santillan, Maria Theresa | 3,255,002 |
| Saracini, Victor | 9,593,658 |
| Schertzer, Scott | 2,792,107 |
| Sloan, Paul K. | 5,967,696 |
| Smith, George | 2,609,215 |
| Soulas, Timothy | 86,796,344 |
| Steiner, William | 6,443,814 |
| Stergiopoulos, Andrew | 5,716,259 |
| Straub, Edward W. | 16,552,703 |
| Tino, Jennifer | 2,625,577 |
| Wallendorf, Jeanmarie | 1,768,803 |
| Waller, Meta | 1,200,501 |
| Ward, Timothy | 2,691,269 |
| **TOTAL** | **$394,277,884** |

(See Pls.' Mem. Ex. H).

2

**Appendix 2**
**Solatium Damages**

| RELATIONSHIP | NUMBER OF PLAINTIFFS | DAMAGES | TOTAL |
|---|---:|---:|---:|
| Spouse | 23 | $12,500,000 | $287,500,000 |
| Parent | 41 | 8,500,000 | 348,500,000 |
| Child | 10 | 8,500,000 | 85,000,000 |
| Sibling | 36 | 4,250,000 | 153,000,000 |
| **Total** | **110** | | **$874,000,000** |

(See Pls.' Mem. Ex. A)