UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOHN DOES 1 THROUGH 7,       :
                              :
Plaintiffs,                   :
                              :
- against -                   : No. 20 Misc. 740 (GBD)
                              :
THE TALIBAN *et al.*,         :
                              :
Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :
IN RE: TERRORIST ATTACKS ON   : No. 03 MD 1570 (GBD) (SN)
SEPTEMBER 11, 2001            :
                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
FIONA HAVLISH *et al.*,       :
                              :
Plaintiffs,                   :
                              :
- against -                   : No. 03 Civ. 9848 (GBD) (SN)
                              :
SHEIKH USAMAH BIN-MUHAMMED    :
BIN-LADEN, a.k.a. OSAMA BIN-LADEN *et al.*, :
                              :
Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**INTERVENORS' REPLY TO THE HAVLISH JUDGMENT CREDITORS' RESPONSE TO INTERVENORS' OBJECTIONS TO THE MAGISTRATE JUDGE'S <u>DENIAL OF THEIR MOTION TO INTERVENE</u>**

The 157 U.S. Government employees killed or injured in the August 7, 1998, Al Qaeda bombings of the U.S. Embassies in Nairobi, Kenya and Dar-es-Salaam, Tanzania, their family members, and the personal representatives of their estates, (the "Intervenors"), hereby reply to the *Havlish* Creditors' March 21, 2022 Response ("Response") to Intervenors' Objections to the Magistrate Judge's Opinion and Order of February 22, 2022 ("Feb. 22 Order").

The *Havlish* Creditors are unable to rebut Intervenors' central point, which is that Plaintiffs have no entitlement to the funds of the foreign state of Afghanistan and the Central Bank of

1

Afghanistan (Da Afghanistan Bank, "DAB") currently held in a consolidated account held at the Federal Reserve Bank of New York ("Afghan funds"), thus Intervenors have an equal interest in the funds to that of Plaintiffs.  The *Havlish* Creditors case rests on a central point: "The Da Afghanistan Bank assets are thus the blocked assets of an agency or instrumentality of the Taliban", thereby satisfying the requirements of TRIA.  Response at 11.  However, the Da Afghanistan Bank ("DAB") is the central bank of the sovereign country of Afghanistan, and as such cannot simultaneously serve as an agency or instrumentality of a non-sovereign actor such as the Taliban.  U.S. and international law circumscribes the ability of claimants to seize the assets of a foreign central bank and the Plaintiffs cannot surmount those obstacles by arguing the Taliban controls the DAB because Taliban officials have been appointed to the DAB.

Plaintiffs do not have a judgment against the sovereign government of Afghanistan, which creates a myriad of dispositive legal obstacles, such as lack of proper service on the government of Afghanistan.  As evidenced by the U.S. Statement of Interest, which makes all the necessary observations regarding the invalidity of Plaintiffs' execution rights, but nonetheless suggests the Court allow Plaintiffs a clear shot at the Afghan funds; there is no other party to these proceedings able or willing to make this argument.  While the other Plaintiffs aside from *Havlish* and *John Doe* will oppose their efforts at a speedy distribution of the Afghan funds, they will not press the central point—there is no party to these proceedings with a legal right to the Afghan funds.

As the *Havlish* Creditors admit, "[b]riefing in connection with an objection to the denial of a motion to intervene is not the proper vehicle to adjudicate the merits questions in these post-judgment proceedings",  Response at 1 n.1, but the questions raised by Intervenors will neither be raised by other parties to the litigation or pursued to any depth, and that is the reason to grant the motion to intervene.

## ARGUMENT

I. **THE DAB BANK IS NOT AN AGENCY OR INSTRUMENTALITY OF THE TALIBAN**

The *Havlish* Creditors opposition to Intervenors' Objections rests on a central point: "The Da Afghanistan Bank assets are thus the blocked assets of an agency or instrumentality of the Taliban", thereby satisfying the requirements of TRIA. Response at 11. However, TRIA does not answer every question regarding the attachability of an asset:

> To lessen these enforcement difficulties, Congress enacted the Terrorism Risk Insurance Act of 2002 (TRIA), which authorizes execution of judgments obtained under the FSIA's terrorism exception against "the blocked assets of [a] terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party)." §201(a), 116 Stat. 2337, note following 28 U.S.C. §1610. . . . The availability of these assets for execution, however, was contested. . . .To place beyond dispute the availability of some of the Executive Order No. 13599-blocked assets for satisfaction of judgments rendered in terrorism cases, Congress passed the statute at issue here: §502 of the Iran Threat Reduction and Syria Human Rights Act of 2012, 126 Stat. 1258, 22 U.S.C. §8772.

*Bank Markazi v. Peterson*, 578 U.S. 212, 217-18 (2016). For example, if New York state law does not allow for attachment and execution upon the form of the asset, TRIA does not overrule the state law result. *See e.g.*, *Hausler v. JP Morgan Chase Bank, N.A.*, 770 F.3d 207, 212 (2d Cir. 2014) ("Because no terrorist party or agency or instrumentality thereof has a property interest in the EFTs, they are not attachable under TRIA § 201."). The "threshold issue" under TRIA is whether the asset at issue belongs to the judgment debtor. *Id.* at 211.

There is no question that the funds in question belong to DAB, a foreign central bank. *See* Statement of Interest of the United States, D.E. 7661 at 1, 03-MD-1570 (GBD)(SN) (filed February 11, 2022) ("USG Brief"). The *Havlish* Creditors principally rely on *Kirschenbaum v. 650 Fifth Ave. & Related Props.*, to establish that TRIA allows execution upon the DAB funds to satisfy a judgment against the Taliban. Response at 11 (citing 830 F.3d 107, 135 (2d Cir. 2016), *abrogated on other grounds by Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018) (entity that is "owned,

3

controlled, or directed" by a terrorist party is that party's agency or instrumentality under TRIA)). But *Kirschenbaum* did not address the question before this Court, whether a foreign central bank qualifies as an agency or instrumentality of a non-sovereign entity, like the Taliban. *See e.g.*, USG Brief at 22 ("*Kirschenbaum* arose in a different posture than is presented here.").

Under the Foreign Sovereign Immunities Act ("FSIA"), which governs the ability of claimants in the United States to obtain judgments against foreign sovereign entities, as well as enforce them, *Letelier v. Republic of Chile*, 748 F.2d 790, 793 (2d Cir. 1984), foreign central banks garner additional protections over and above that of normal foreign agencies and instrumentalities: "to provide an incentive for foreign central banks to maintain their reserves in the United States . . . ." *EM Ltd. v. Republic of Arg.*, 473 F.3d 463, 473 (2d Cir. 2007).

Based upon the status of DAB as a foreign central bank, the Statement of Interest of the United States points out a handful of compelling reasons to deny Plaintiffs' arguments that the DAB can both be the central bank of Afghanistan, and the agency or instrumentality of the Taliban. "To the extent the assets of a foreign central bank represent the foreign state's reserves, such assets belong necessarily to the foreign state and thus would not be the assets of a private party." USG Brief at 25. This principle is buttressed by "distinction between a foreign government and a foreign state, and '[a] state can . . . recognize or treat an entity as a state while denying that a particular regime is its government.'" *Id.* (citing RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 203 cmt. a). As DAB itself has recently stated: "[t]he real owners of these reserves are people of Afghanistan. These reserves were not and is not the property of governments, parties and groups and is never used as per their demand and decisions."[1]

There are many foreign relations created when private claimants sue foreign sovereigns and

---

[1] https://www.dab.gov.af/press-release-da-afghanistan-bank-decision-united-states-america-regarding-foreign-exchange (last visited March 24, 2022).

seek to attach their assets. In recognition of this, Congress created the FSIA an extensive legislative scheme to provide proper notice to the correct authorities both of a lawsuit and of a judgment, even if in default. *See* 28 U.S.C. § 1608(a). State-owned central banks are included in the FSIA definition of "agency or instrumentality." *See e.g.*, *S & S Mach. Co. v. Masinexportimport*, 706 F.2d 411, 414 (2d Cir. 1983). The FSIA also regulates the enforcement of any judgments against a foreign sovereign, *see* 28 U.S.C. § 1610, which logically includes a specialized statute to protect the function of a state central bank. *See* 28 U.S.C. § 1611. For all of the foregoing reasons, Plaintiffs were required to obtain a judgment against the foreign sovereign government of Afghanistan, which would then allow them to pursue the DAB assets.

Plaintiffs do not have a judgment against either the DAB funds or the government of Afghanistan. Plaintiffs have neither served the complaint nor any judgment on the government of Afghanistan, which must be conducted pursuant to the FSIA, *see* 28 U.S.C. § 1608(a). "Once served, a foreign state or political subdivision has 60 days to file a responsive pleading. §1608(d)." *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1054 (2019) (vacating three turnover orders by the Southern District of New York against property of Sudanese Government where plaintiffs served their complaint and default judgment upon the Sudanese Embassy in Washington, D.C. rather than according to the specific requirements of the FSIA). Plaintiffs here have not served any paperwork on the government of Afghanistan, which is responsible for the Afghan funds, under the FSIA.

The *Havlish* judgment creditors cite *Caballero v. FARC*, No. 20-MC-0040, 2021 WL 307558 (W.D.N.Y. Jan. 29, 2021) as a case which finds that a sovereign agency can qualify as an agency of a "terrorist party" under TRIA, but the facts and circumstances of *Caballero* distinguish it from this case. *See* Response at 12 n.4. The decision cited by the *Havlish* judgment creditors does not explain that court's reasoning which supports the finding, and cites to an earlier decision. *See Caballero v. FARC*, No. 20-MC-0040, 2021 WL 307558 at *1 (W.D.N.Y. Jan. 29, 2021)

5

(citing docket entry 15 to explain how the court "FARC is a terrorist party and that PVDSA is an agency or instrumentality of FARC . . . ."). Docket entry 15 is an unreported December 18, 2020 decision by the *Caballero* court which finds that: "Caballero has sufficiently demonstrated that PDVSA, through money laundering and weapons support, has "provided material services to, on behalf of, or in support of [FARC]." See Kirschenbaum, 830 F.3d at 135. PDVSA is thus an agency or instrumentality of FARC." *Caballero v. FARC*, No. 20-MC-0040 (LJV) D.E. #15, Decision and Order at *7 (W.D.N.Y. Dec. 18, 2020). However, all descriptions of the PDVSA make clear that I is not a foreign central bank. *Id.* Furthermore, *Caballero* makes clear that DAB must have an both notice of the proceedings and an opportunity to be heard:

> Because "an agency or instrumentality determination carries drastic results—the attachment and execution of property—it undeniably implicates due process concerns." *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 726 (11th Cir. 2014). *PDVSA therefore is entitled to notice and an opportunity to be heard to rebut the allegations that it is an agency or instrumentality of FARC.*

*Caballero*, 2021 WL 307558 at *2 n.2 (emphasis added). It is not clear that DAB has been properly served at this time. *See HAvlish v. Taliban*, 03 Civ. 9848 (GBD) (SN), D.E. #606 (S.D.N.Y. March 21, 2022).

The *Havlish* judgment creditors do not respond to Intervenors argument that they do not hold judgment against the assets, the Afghanistan Central Bank, or the foreign state of Afghanistan. Nor can Plaintiffs deny that they did not proceed under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* and satisfy the requirements of the FSIA, (i) in obtaining jurisdiction against the foreign state of Afghanistan, *see* 28 U.S.C. §§ 1605, 1605A, 1605B; (ii) in completing service of their complaint, *see* 28 U.S.C. § 1608(a); (iii) in completing service of their judgment, *see* 28 U.S.C. § 1608(e); and (iv) in satisfying the burden of proof necessary to obtain the judgment, *see* 28 U.S.C. § 1608(e). Instead, the Plaintiffs sought and

obtained a judgment against the Taliban as "a non-sovereign party"[2] even though the Taliban controlled and directed the government of Afghanistan in the years leading to, and at the time of, the September 2001 attacks.[3]

The Plaintiffs sought and the Court directed that judgment be entered against "certain non-sovereign defendants, including Osama bin [L]aden, the Taliban, and al Qaeda."[4] Yet, the Plaintiffs now rely on that October 2012 judgment against the non-sovereign Taliban to attach the funds of the foreign state of Afghanistan and its central bank currently held by the Federal Reserve System.[5] Even if the Plaintiffs had followed the FSIA in obtaining their judgment against the non-sovereign Taliban, the FSIA prohibits all judgment creditors from attachment and execution upon the property or funds of a foreign state where the subject "property is that of a foreign central bank or monetary authority held for its own account." 28 U.S.C. § 1611(b)(1).

## **CONCLUSION**

For the reasons set forth above and as stated in Intervenors Objections and Motion, the Intervenors respectfully request this Court grant their Motion to Intervene and declare that neither Intervenors nor Plaintiffs have an explicit right to the Afghan funds, thereby leaving any equitable distribution of the Afghan funds to victims of state-sponsored terrorism holding

---

[2] Memorandum Decision and Order, No. 03-cv-09848 (GBD), Dkt. #316, at 1 (Oct. 3, 2012); Order and Judgment, No. 03-cv-09848 (GBD), Dkt. #317 (filed Oct. 16, 2012).

[3] *See also* Order of Judgment, No. 03-cv-09848 (GBD), Dkt. #295 at 3 (Dec. 22, 2011) (entering default judgment on liability against "Non-Sovereign Defendants," including "The Taliban, a/k/a The Islamic Emirate of Afghanistan").

[4] Memorandum Decision and Order, Dkt. #316 at 1. The Plaintiffs at the same time sought and the Court directed that judgment be entered against "certain sovereign defendants, including the Islamic Republic of Iran" and other Iranian agents, agencies and instrumentalities. *Id.* Neither the foreign state of Afghanistan nor any agency or instrumentality of Afghanistan was among those "certain sovereign defendants."

[5] *See* Feb. 14, 2022 Declaration by Plaintiffs' Counsel in Support of Motion to Lift Stay of Judicial Enforcement of Writ of Execution and Exhibit 1, No. 03-cv-09848, Dkt. #556, #556-1 (attaching Writ of Execution in reliance on the October 16, 2012 Judgment).

valid final judgments to the USVSST Fund.

                Respectfully submitted,

Dated: March 28, 2022

/s/ John Arthur Eaves, Jr. *pro hac vice*
John Arthur Eaves, Jr. (MS Bar #8843)
Eaves Law Firm, LLC
101 North State Street
Jackson, MS 39201
(601) 355-7961
johnjr@eaveslawmail.com

Harry Rothenberg (HR 6795)
Adam Drexler      (AMD 7743)
The Rothenberg Law Firm LLP
450 7th Avenue, 44th Floor
New York, New York 10123
(212) 563-0100
harry@injurylawyer.com,
adrexler@injurylawyer.com

Nancy Guy Armstrong Miller
David Dickens
The Miller Firm, LLC
108 Railroad Avenue
Orange, VA 22960
(540) 672-4224

Steven R. Perles
Perles Law Firm, P.C.
816 Connecticut Avenue, N.W., 12th Floor
Washington, DC 20006
(202) 955-9055

Gavriel Mairone
MM-Law LLC
980 North Michigan Avenue, Suite 1400
Chicago, IL 60611
(312) 253-7444

William Wheeler
Wheeler & Franks Law Firm, P.C.
114 S. Broadway
Tupelo, MS 38804
(662) 636-6055