1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711                JENNER&BLOCK LLP

August 18, 2022

VIA ECF

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *In re Terrorist Attacks on September 11, 2001*, No. 03-md-1570 (GBD) (SN)
      *Havlish, et al. v. Bin Laden, et al.*, No. 03-cv-9848 (GBD) (SN)
      *John Does 1 through 7 v. the Taliban, et al.*, No. 20-mc-740 (GBD) (SN)
      *Federal Insurance Co., et al. v. al Qaida, et al.*, No. 03-cv-6978 (GBD) (SN)
      *Smith v. the Islamic Republic of Iraq*, No. 01-cv-10132 (GBD) (SN)
      **Response to Ashton Plaintiffs' Notice of Supplemental Authority (Dkt. 8339)**

Dear Judges Daniels and Netburn:

        On behalf of Judgment Creditors Fiona Havlish, *et al.* (the "Havlish Creditors"), Judgment
Creditors John Does 1 through 7 (the "Doe Creditors"), Judgment Creditors Federal Insurance Co.,
*et al.* (the "Federal Insurance Creditors"), and Judgment Creditors Estate of Smith, *et al.* (the
"Smith Creditors"), we submit this response to the Ashton Plaintiffs' belated attempt to raise a
new argument against turnover that (if it were ever available to them) they waived nearly four
months ago. *See* Dkt. 8339 ("Letter"). Once again, the Ashton Plaintiffs aim to obstruct the
agreement that the rest of the 9/11 Community, representing approximately 10,000 terrorism
victims, has reached regarding the distribution of any DAB assets that may become available to
satisfy judgments against the Taliban. The arguments they now make should be disregarded for
several independent reasons.

        **First**, while claiming to "advise the Court of supplemental authority relevant to" the
motions, Letter at 1, the Ashton Plaintiffs are in fact attempting to raise an entirely new argument
long after briefing on the turnover motions concluded. When providing post-briefing notice of
supplemental authority to the Court, "a party is strictly forbidden from making additional
arguments" not already raised in their briefs. *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d
Cir. 1987); *see also United States v. Brown*, 797 F. App'x 52, 56 n.1 (2d Cir. 2019) (same); *Xie v.
Holder*, 389 F. App'x 26, 28 n.2 (2d Cir. 2010) (same); *United States v. Chu*, 183 F. App'x 94, 97
n.1 (2d Cir. 2006) (same); *Fossil Grp. Inc. v. Angel Seller, LLC*, 2021 WL 4520030, at *2
(E.D.N.Y. Oct. 4, 2021) (same); *Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Tr. Co.*,
410 F. Supp. 3d 662, 687 n.14 (S.D.N.Y. 2019) (same).

Page 2

The Ashton Plaintiffs did not raise their new arguments against turnover in their April 20, 2022 brief opposing the Havlish and Doe Creditors' turnover motions. *See* Dkt. 7894 ("Opp."). That was more than eight months after the United States stayed the enforcement proceedings, a period which afforded the Ashton Plaintiffs ample time to identify and raise their now-waived argument. On March 14, 2022, the Court had ordered the Ashton Plaintiffs to "file a single brief" by April 20 "addressing any issues that they believe are relevant to the Court's consideration of the Havlish and Doe Plaintiffs' turnover motions." Dkt. 7750 at 1. That Order explicitly stated that the Ashton Plaintiffs' brief "should address *all issues* [they] believe the Court should consider in addressing these turnover motions." *Id* (emphasis added).

While the Ashton Plaintiffs' April 20 Brief in fact raised an (inaccurate) insinuation concerning a purported defect in the underlying Havlish writ of execution, *see* Opp. 11 n.39 *and* Dkt. 7928 (Havlish/Doe "Reply") at 13, it failed entirely to raise the issues addressed in *Levinson* concerning the sequencing of steps to enforce a judgment where there is a dispute as to an asset owner's status as an agency or instrumentality. *See Levinson v. Kuwait Fin. House (Malaysia) Berhad*, No. 21-2043, 2022 WL 3269083 (2d Cir. July 21, 2022). On the contrary, the Ashton Plaintiffs conceded that the "normal rules of priority" entitle the Havlish and Doe Creditors to priority. Opp. 11; Reply 5. Given both this concession and this Court's express and unambiguous direction to "address all issues," the Ashton Plaintiffs should not be permitted to raise a new issue now, four months after their turnover brief was filed, that is flatly inconsistent with a position they have previously conceded.

For this threshold reason, the Court should disregard the Ashton Plaintiffs' latest attempt to obstruct the orderly turnover process, which as shown below, fully protects any legitimate interest that they have in the DAB assets.[1] Rather than work with the rest of the MDL plaintiffs' groups to effectuate a widespread distribution of assets in the event the Court grants turnover, the Ashton Plaintiffs persist in self-interested efforts to frustrate that process. *See* April 26 Tr. at 14 (JUDGE DANIELS: "What you will do is not put yourself at the front of the line; you will end up putting yourself at the back of the line by taking those kind of actions."). Indeed, this is a reminder of the import—as the Court recognized on April 26—of the expeditious resolution of this process. *See* April 26 Tr. at 35 (JUDGE NETBURN: "The Court really wants to move on this, as I imagine everyone else does.").

**Second**, even if the Court were to consider the Ashton Plaintiffs' waived argument, it would provide no basis to deny the turnover motions. While levying a writ of execution is one way to secure a judgment creditor's priority, it is not a precondition under New York law for a turnover proceeding and order. *See Garland D. Cox & Assocs., Inc. v. Koffman*, 48 N.Y.2d 878, 879-80 (N.Y. 1979) (a levy of execution is not necessary for the court to issue a turnover order pursuant

---

[1] Despite having been warned repeatedly that the Court would not entertain their "inappropriate" attempt to force unwilling plaintiffs into a Rule 23(b)(1)(B) class action, April 26 Tr. at 4, 5, 6, 12, 13 & 20, the Ashton Plaintiffs raise it to the Court *yet again*. Letter at 3 n.3. Their purported class action remains fatally flawed. *See* Reply 9–12. Because the Ashton/Wodenshek Plaintiffs have appealed its dismissal, the Havlish and Federal Insurance Creditors have intervened in the Second Circuit to defend this Court's dismissal order and its denial of a preliminary injunction. *See* No. 22-965 (2d Cir.), Dkts. 68, 76.

Page 3

to C.P.L.R. §§ 5225(b) or 5227); *Kitson & Kitson v. City of Yonkers*, 10 A.D.3d 21, 27 (2d Dep't 2004) ("There is no requirement that the judgment creditor obtain priority by way of execution before commencing a turnover proceeding."). Indeed, the issuance of a turnover order itself provides priority to a judgment creditor. *See CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 472 (2d Cir. 2018) ("Under C.P.L.R. § 5234, 'the order of priority among judgments is to be determined strictly in accordance with the chronological service of execution levies ***and the filing of orders for turnover***.'" (quoting *City of New York v. Panzirer*, 259 N.Y.S.2d 284, 286 (App. Div. 1965)) (emphasis added). Notably, in *CSX Transportation* itself, the judgment creditor initiated turnover proceedings before serving a writ of execution. *CSX Transp., Inc. v. Emjay Env't Recycling, Ltd.*, 2016 WL 6495530, at *2 (E.D.N.Y. Nov. 2, 2016).

In other words, *Levinson*, even if applicable, does not meaningfully change anything in this turnover process. All of the parties with final, enforceable judgments against the Taliban (and thus, the only parties eligible to seek recovery of the Taliban's assets under TRIA, *see Smith v. Federal Rsrv. Bank of N.Y.,* 346 F.3d 264, 271 (2d Cir. 2003)), have filed for turnover orders. Briefing on those motions is now complete. And those parties have reached agreement among themselves as to an order of priority and a distribution plan, regardless of which judgments produce actual recoveries from DAB's assets at the Federal Reserve Bank of New York. Implementing that Framework Agreement will ensure wide distribution of the assets to the 9/11 Community, *see* Dkt. 7790, while also recognizing the Doe Creditors' right to recover on their judgment.

**Third**, *Levinson* is clearly distinguishable and inapplicable here. Although the *Levinson* docket remains sealed, making it difficult to understand the precise procedural posture of the case, the opinion says nothing about priority among creditors, and holds only that certain findings are required where the asset owner or holder contests whether assets are subject to execution under TRIA.[2] In *Levinson*, the key issue was whether the appellant (KFH Malaysia) was entitled to a hearing and determination of whether it was in fact an agency or instrumentality of the judgment debtor (Iran) before KFH's assets held by Citibank were subjected to "seiz[ure]." *Levinson*, 2022 WL 3269083, at *4. Critically, KFH argued that it was *not* an agency or instrumentality of the judgment debtor, and thus that its assets were *not* subject to execution; the Court of Appeals held that KFH was entitled to a hearing on these issues before a court could grant a motion authorizing execution.

No such concern exists in this case, and indeed, no party before the Court has disputed that DAB is an instrumentality of the Taliban and that these assets are subject to execution. Moreover, *before* the Havlish, Doe, Federal Insurance, and Smith Creditors obtained writs of execution, the United States had already fully restrained DAB's assets at the Federal Reserve Bank of New York,

---

[2] Given the sealed docket in *Levinson,* certain matters remain unclear. Moreover, it is impossible to know if rehearing has been sought in light of the decision's possible inconsistency with settled principles of judgment enforcement under New York law. Accordingly, the Judgment Creditors here explain why *Levinson* is in any event inapplicable in these proceedings, while reserving all rights to make additional arguments based on a full record.

Page 4

completely depriving both the Taliban and DAB of any ability to access or use those assets.[3] At the time the United States initially froze the DAB Assets in August 2021, the Taliban was a Specially Designated Global Terrorist that had just regained total control of Afghanistan and of DAB along with it. *See* Dkt. 7766 (Expert Declaration of Alex B. Zerden), ¶¶ 17, 39. News reports indicated that the United States, in taking control of the DAB Assets, acted for the purpose of preventing the Taliban from using its control over DAB to access the funds for malign purposes[4]— a determination that has proven prescient in the year since the Taliban regained control of Afghanistan.[5] The writs of execution then followed, after the United States had already frozen the same funds. The United States thereafter formally confirmed the status of DAB's assets as blocked assets with Executive Order 14,064 on February 11, 2022, clarifying that they were subject to execution under TRIA.

Thus, unlike in *Levinson*, where there was no Executive Branch action which deprived the funds' owner of access to its funds, the United States here acted twice to restrain DAB's assets in order to prevent the Taliban from accessing them. Indeed, in promulgating Executive Order 14,064, the President recognized the Havlish and Doe Creditors' writs of execution and expressly stated that "more than $3.5 billion in DAB's assets would remain in the United States and [be] subject to ongoing litigation by U.S. victims of terrorism."[6] The United States' actions, and the reasons underlying them, remove any due process concerns animating the *Levinson* court—that a civil litigant could, *ex parte*, temporarily deprive a potentially innocent party of access to its property without any sort of prior threshold determination. Significantly, the United States' actions

---

[3] *See* Dkt. 7764 at 3, n.6 ("the United States cut off the Taliban's ability to withdraw DAB funds on account at the FRBNY [in August 2021]"); Saleha Mohsin, *U.S. Freezes Nearly $9.5 Billion Afghanistan Central Bank Assets*, Bloomberg (August 17, 2021), https://www.bloomberg.com/news/articles/2021-08-17/u-s-freezes-nearly-9-5-billion-afghanistan-central-bank-assets.

[4] *See* Mohsin, *supra* n.3 ("The U.S. has frozen nearly $9.5 billion in assets belonging to the Afghan central bank . . . as it tries to keep a Taliban-led government from accessing the money, an administration official confirmed Tuesday.").

[5] *See* Press Statement on the Death of Ayman al-Zawahiri, Secretary of State Antony J. Blinken (Aug. 1, 2022), https://www.state.gov/the-death-of-ayman-al-zawahiri/ ("By hosting and sheltering the leader of al Qa'ida in Kabul, the Taliban grossly violated the Doha Agreement and repeated assurances to the world that they would not allfow Afghan territory to be used by terrorists to threaten the security of other countries."); Peter Baker, *U.S. Will Not Release $3.5 Billion in Frozen Afghan Funds for Now, Citing Terror Fears*, N.Y. Times (Aug. 15, 2022), https://www.nytimes.com/2022/08/15/us/politics/us-afghanistan-funds-taliban.html (noting the Biden administration's decision in the wake of the Zawahiri strike to suspend its plans to release to Afghanistan half of the $7 billion in DAB assets at FRBNY, because it had "not secured persuasive guarantees that the money would not fall into terrorist hands").

[6] *See* White House Fact Sheet (Feb. 11, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/02/11/fact-sheet-executive-order-to-preserve-certain-afghanistan-central-bank-assets-for-the-people-of-afghanistan/.

Page 5

also clearly demonstrate the Taliban had control over DAB, evidence that DAB was, by virtue of that control, an agency and instrumentality of the Taliban, and provided ample nexus to support each writ of execution.[7]

Moreover, in contrast to *Levinson*, the party raising the objection here (the Ashton Plaintiffs) is not the party subject to the writ of execution (DAB). Indeed, the Ashton Plaintiffs—like the Havlish, Doe, Federal Insurance, and Smith Creditors—are themselves affirmatively seeking to seize the DAB Assets and, to do so, they must, like every other MDL party, prove that DAB is an agency or instrumentality of the Taliban. The Ashton Plaintiffs simply do not want those assets to go to everyone else in the 9/11 Community who has joined the Framework Agreement. In fact, no party has appeared and contested DAB's status as an agency or instrumentality of the Taliban. All agree that it is. Given that the DAB Assets were already restrained before the first writ of execution issued, whether the judicial determination required by TRIA is made before or after issuance of the writs of execution is, under the circumstances of this case, legally immaterial.

In further stark contrast to *Levinson*, the party whose assets were seized here is not vigorously challenging that action, but has completely ignored this proceeding. DAB has had ample opportunity to raise the argument in *Levinson* or any other basis to dispute its status as a Taliban agency or instrumentality, but it has not done so, perhaps because of the overwhelming evidence that it is under Taliban control. *See* Dkt. 7764 at 17-24; Zerden Decl. ¶¶ 49-143. *Levinson* does not afford any basis for the Ashton Plaintiffs to attempt to assert rights that DAB itself has not invoked, particularly when the Ashton Plaintiffs are equally adverse to DAB as the other Plaintiffs in seeking to seize the very same assets on the very same basis: that DAB's assets are the assets of an agency or instrumentality of the Taliban. To the extent that the Ashton Plaintiffs have a right to be heard on their claims against the DAB Assets, the turnover proceedings provide them ample opportunity to do so; whether that hearing occurred before writs of execution were issued, or after their issuance (as is occurring here), has no legal significance as far as the Ashton Plaintiffs and the DAB Assets are concerned.

For all of these reasons, the Court should disregard the Ashton Plaintiffs' Letter, or in the alternative, reject their attempt to invoke *Levinson* to dispute the validity of the executions issued by this Court to the Havlish, Doe, Smith, and Federal Insurance Creditors.

---

[7] Indeed, the Federal Insurance and Smith Creditors' writs of execution were issued after the February 11, 2022 Executive Order provided that DAB assets would remain blocked. They also were issued after evidence was submitted to this Court in the MDL further establishing DAB's status as an agency and instrumentality of the Taliban. This Court had both the Executive Order and that evidence before it when the Federal Insurance Creditors and Framework Agreement Plaintiffs requested that a writ be issued in favor of the Federal Insurance Creditors, and when the Court granted that application. The Executive Order and evidentiary record preceding the Federal Insurance and Smith writs provides a more than sufficient nexus for issuing writs of execution under TRIA. Likewise, the Doe Creditors' initial writ application (*Doe* Dkt. 15) provided evidentiary support, as *Levinson* would require if it applied.

Page 6

Respectfully submitted,

/s/ Lee Wolosky
Lee Wolosky
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1628
lwolosky@jenner.com

Douglass A. Mitchell *(pro hac vice)*
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001
(202) 639-6090
dmitchell@jenner.com

*Counsel for Judgment Creditors Fiona Havlish, et al.*

/s/ Orlando do Campo
Orlando do Campo
John Thornton (*pro hac vice)*
Daniela Jaramillo (*pro hac vice)*
DO CAMPO & THORNTON, P.A.
150 S.E. 2nd Avenue, Ste. 602
Miami, FL 33131
(305) 358-6600
od@dandtlaw.com

*Counsel for Judgment Creditors John Does 1-7*

/s/ Sean P. Carter
Sean P. Carter, Esq.
Stephen A. Cozen, Esq.
J. Scott Tarbutton, Esq.
COZEN O'CONNOR
1650 Market Street
Philadelphia, PA 19103
Tel: (215) 665-2105
scarter1@cozen.com

*Counsel for Judgment Creditors Federal Insurance Co., et al.*

Page 7


<u>/s/ James Edwin Beasley</u>
James Edwin Beasley
The Beasley Firm, LLC
1125 Walnut Street
Philadelphia, PA 19107
(215)-592-1000
jbj@beasleyfirm.com

*Counsel for Judgment Creditors Estate of Smith, et al.*

cc: All counsel of record (by ECF)