**SHER TREMONTE LLP**

August 22, 2022

**BY ECF**

The Honorable George B. Daniels
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Re:   *In re Terrorist Attacks on September 11, 2001*, Case No. 03-md-1570 (GBD)(SN)

Dear Judge Daniels and Judge Netburn:

We write on behalf of our clients, the *Ashton* Plaintiffs, concerning (i) the *Havlish*, *Doe*, *Federal Insurance*, and *Smith* Creditors' (together, the "Creditors") August 18, 2022 letter concerning *Levinson v. Kuwait Finance House (Malaysia)*, 21-2043, 2022 WL 3269083 (2d Cir. July 21, 2022) (the "August 18 Letter"), ECF No. 8399, and (ii) the Creditors' August 21, 2022 letter concerning the *Ashton* Plaintiffs' Motion for *Ex Parte* Order of Attachment, ECF 8419, (together, the "August Letters").

For the reasons set forth below, the *Ashton* Plaintiffs respectfully request the Court (i) take the Circuit's decision in *Levinson* under consideration and deny the Creditors' turnover motions; (ii) set a briefing schedule for the *Ashton* Plaintiffs' attachment motion; and (iii) because the Creditors continue to interject the Framework Agreement as relevant to the Court's consideration of *Levinson* and the turnover motions, require the Creditors to <u>finally</u> publicly disclose its terms.

*The Framework Agreement*

As a preliminary matter, the *Ashton* Plaintiffs must address, yet again, the Creditors' persistent mischaracterizations of the *Ashton* Plaintiffs as mere gadflies. Among other things, the Creditors accuse the *Ashton* Plaintiffs of seeking advantage, claiming that "the Ashton Plaintiffs simply do not want [the DAB] assets to go to everyone else in the 9/11 Community who has joined the Framework Agreement." Aug. 18 Ltr. at 5. This is false. The *Ashton* Plaintiffs, representing more than 800 9/11 victims and their families, are advocating for <u>an equitable distribution for all 9/11 families</u>, while the Creditors are arguing that the Court has no choice but (i) to give them the entirety of DAB Assets and

(ii) to trust them to distribute some small portion of it to other terrorism victims pursuant to a secret agreement.[1]

Casting aspersions at the *Ashton* Plaintiffs in both August Letters, the Creditors continue to tout the Framework Agreement, but remarkably refuse again, in both Letters, to disclose the Agreement's actual terms. This is intentional. The Creditors—particularly the *Havlish* and *Doe* Creditors—know precisely how outrageous their position is, but seek to hide behind some suggestion of fairness. The Court, the public, and 9/11 families should know the truth—the Framework Agreement will result in a gross miscarriage of justice, and the only reason hundreds of 9/11 families reluctantly agreed to its terms is that they were faced with the threat of a zero recovery.[2]

The 9/11 families deserve better. That is why, whether through their support of the Wodensheks' Rule 23(b)(1)(B) class action or the opposition to the *Havlish* and *Doe* Creditors' turnover motions, the *Ashton* Plaintiffs have consistently sought equitable treatment of all similarly situated victims of Taliban-sponsored terrorism. And it is why, in their motion for attachment filed August 19, 2022, the *Ashton* Plaintiffs specifically requested that, should others likewise move for attachment, the Court seize the opportunity to grant all motions simultaneously and put to rest the unseemly race to exclude that has roiled this MDL the last five months. ECF No. 8413, at 1-2. Notwithstanding the Creditors' vitriol, the *Ashton* Plaintiffs will continue to pursue a truly just outcome on behalf of all.[3]

***Under Levinson, the Creditors' Writs Are Invalid***

The Framework Agreement aside, the August 18 Letter confirms that the Creditors intend to pursue their inequitable turnover, even if it means disregarding the law altogether. Although the Creditors seek to distinguish *Levinson*, none of their arguments has any merit—*Levinson* is binding precedent and requires this Court to disregard the invalid writs

---

[1] ECF No. 7928, at 2 ("[A]s a matter of governing law, the *Havlish* Creditors are entitled to satisfy their compensatory damages before other creditors . . . ."); *id.* (Apr. 29, 2022), ECF No. 7937, at 24–25 (requesting the Court turn over to the *Federal Insurance* Plaintiffs "any DAB Assets not deemed subject to turnover" to the *Havlish* and *Doe* Plaintiffs).

[2] In a May 5, 2022 letter, the *Ashton* Plaintiffs articulated their understanding of these terms, which include the forty-seven *Havlish* families and the seven *Doe* individuals receiving close to the full value of their judgments (*i.e.*, around $36 million per family), consuming a total of nearly $1.8 billion of the $3.5 billion of DAB Assets. The commercial insurers constituting the Federal Insurance Creditors will receive nearly $600 million (or nearly twenty percent of the full value of their compensatory damages judgments). Meanwhile, the families of 2,390 other 9/11 victims stand to receive only one percent of what each of the forty-seven *Havlish* families stand to receive. *See* ECF No. 7962, at 2-3.

[3] The *Ashton* Plaintiffs' efforts here should in no way disadvantage those 9/11 families that have acquiesced to the Framework Agreement. Should the Creditors prevail, those families will receive whatever small portion of the DAB Assets the Framework Agreement dictates. Should the *Ashton* Plaintiffs prevail, those families stand to receive a truly equitable share.

of execution. Further, in arguing to the Court that consideration of supplemental authority is impermissible here, the Creditors' advocacy teeters on an outright misstatement of law.

*First*, the Creditors argue that *Levinson* is irrelevant because "no party before the Court has disputed that DAB is an instrumentality of the Taliban and that these assets are subject to execution." Aug. 18 Ltr. at 3. This is incorrect. Multiple *amici*, including Dr. Naseer A. Faiq, Charge D'Affaires of the Permanent Mission of the Islamic Republic of Afghanistan, have challenged DAB's status as an "agency or instrumentality" of the Taliban. *See* ECF No. 7932-1, at 17-20 (arguing (i) DAB is not an "agency or instrumentality" of the Taliban under TRIA because it was not so between November 2001 and August 2021, and (ii) the Taliban does not own the DAB Assets).[4]

Moreover, events subsequent to the writs' issuances, including DAB's failure to appear, have no bearing on (i) the process by which the writs were issued and (ii) their consequent validity. The Creditors' focus on DAB's absence from these proceedings is thus a smokescreen because *Levinson* clearly requires a <u>judicial</u> finding that TRIA is satisfied before writs can be granted, and such a determination was not made here. The writs were instead granted prior to DAB receiving any notice that its assets were being seized, and prior to any judicial determination that DAB is an agency or instrumentality of the Taliban. Under *Levinson*, that is impermissible. *Levinson*, 2022 WL 3269083 at *4 ("[B]efore ordering assets to be seized under TRIA, a district court <u>must</u> make findings as to whether TRIA indeed permits those assets to be seized.") (emphasis added). The entire due process question in *Levinson* is what procedural protections are required before granting a writ? And a fundamental due process defect cannot be cured with a post-hoc determination of "no harm, no foul."

*Second*, the Creditors argue that "[w]hile levying a writ of execution is one way to secure a judgment creditor's priority, it is not a precondition under New York law for a turnover proceeding and order[,]" and "the issuance of a turnover order itself provides priority to a judgment creditor." *Id.* Presently, under *Levinson*, the Creditors possess neither. Their writs were their sole bases for their claims to priority. *See, e.g.*, ECF No. 7764, at 25 (Section F "The Havlish Creditors' Writ Has Priority": "The Havlish Creditors were the first to deliver their writ . . . . These facts are undisputed and establish the absolute priority of the *Havlish* Writ."). Without the writs, the Creditors have no claim that they are first in line for the DAB Assets.

Taking the Creditors' argument at face value, the Court could theoretically restore the Creditors' claims to priority by granting the turnover motions based on the fact that the Creditors obtained damages judgments before others in the 9/11 community. Aug. 18 Ltr. at 2-3. But in doing so, the Court would be <u>creating</u> priority, not simply enforcing it. Absent the writs, all of the Taliban's claimants in this MDL are on equal footing as it relates to New York's ordinary creditor priority rules, and there is no basis for the Creditors'

---

[4] *See also* ECF Nos. 7896-1 (Brief of Amici Curiae Afghan Civil Society Organizations Opposing Plaintiff-Creditors' Turnover Motions); 7925 (accepting *amici* briefing from Dr. Faiq and Afghan Civil Society Organizations).

argument that the Court should restore their claims to priority, particularly given the Creditors' claims that the Court has no discretion but to enforce such priority.

*Lastly*, the Creditors contend that the close of briefing on the turnover motions means that the Court should disregard *Levinson*. Aug. 18 Ltr. at 3. The argument that "post-briefing notice of supplemental authority . . . is strictly forbidden," is simply not the law. Aug. 18 Ltr. at 1 (internal quotation marks omitted).[5] Courts of this Circuit regularly accept notices of supplemental authority after the close of briefing. "While it would be ideal for parties to discover and submit all relevant case law before a motion is fully briefed, [i]t is fairly standard practice for parties to occasionally send letters or to otherwise file supplemental authority after briefing is complete." *Delgado v. Ocwen Loan Servicing, LLC*, 13-cv-4617159, 2016 WL 4617159, at *7 (E.D.N.Y. Sept. 2, 2016) (internal quotation marks omitted) (emphasis added) (alteration in original) (denying motion to strike post-briefing supplemental authority from another circuit). That is precisely what the *Ashton* Plaintiffs have done here—not due to any lack of diligence, but because *Levinson* directly bears on the turnover motions, and the decision was issued subsequent to the close of briefing. *See Fullwood v. Wolfgang's Steakhouse, Inc.*, 17-cv-7174, 2017 WL 377931, at *2 & n.3 (S.D.N.Y. Jan. 26, 2017) (considering Second Circuit decision issued subsequent to close of briefing and raised by parties in short supplemental authority notices); *In re GE/CBPS Data Breach Litig.*, 20-cv-2903, 2021 WL 3406374, at *4 (S.D.N.Y. Aug. 4, 2021) (same). Moreover, insofar as a court might decline to accept supplemental authority filed after close of briefing, it is because that might deprive the other side of an opportunity to respond. *See United States v. Strock*, 15-cv-887, 2018 WL 647471, at *5 (W.D.N.Y. Jan. 31, 2018) ("[T]he Court may consider new arguments as long as the opposing party has a fair opportunity to respond."). That is obviously not the case here, as the August 18 Letter fully addresses *Levinson*.

### *The Court Should Set a Briefing Schedule Regarding the Ashton Plaintiffs' Attachment Motion*

With respect to the *Ashton* Plaintiffs' attachment motion, for the reasons articulated in their briefing, and consistent with Judge Caproni's Order Granting *Ex Parte* Emergency Motion for Order of Attachment in *Owens v. Taliban*, 22-cv-1949 (S.D.N.Y. Mar. 21, 2022), ECF No. 33, issued under factually and legally similar circumstances, the *Ashton* Plaintiffs believe they are entitled to attachment. The Creditors evidently disagree. To forestall further rounds of letter writing and in the interest of economy, the *Ashton* Plaintiffs respectfully request the Court set a schedule for briefing on these issues.

---

[5] *United States v. Bortnovksy*, like all the Second Circuit cases the Creditors cite, is specific to Fed. R. App. P. 28(j) and irrelevant here. *See* Aug. 18 Ltr. at 1. And of the two district court cases they offer, in only one did a district court decline to consider post-briefing supplemental authority. But in that case, it rejected the supplemental authority at least in part because that authority was "a nonbinding Ohio intermediate appellate decision." *Nat'l Credit Union Admin. Bd. v. Deutsche Bank Nat'l Trust Co.*, 410 F. Supp. 3d 662, 687 n.14 (S.D.N.Y. 2019).

\*   \*   \*

For the foregoing reasons, the *Ashton* Plaintiffs respectfully request the Court (i) take under consideration the Circuit's decision in *Levinson* and deny the Creditors' turnover motions; (ii) set a briefing schedule for the *Ashton* Plaintiffs' attachment motion; and (iii) to the extent the Creditors continue to represent that the Framework Agreement protects the interests of the "9/11 Community" and should in any way inform the Court's consideration of *Levinson* and the turnover motions, the Creditors be required to <u>finally</u> publicly disclose its terms.

Respectfully submitted,

| KREINDLER LLP | SHER TREMONTE LLP |
|---|---|
| */s/ Megan Benett* | */s/ Theresa Trzaskoma* |
| Megan Benett | Theresa Trzaskoma |

5