**STROOCK**

May 31, 2023

James L. Bernard
Direct Dial: 212.806.5684
Fax: 212.806.6006
jbernard@stroock.com

Honorable George B. Daniels
DANIEL PATRICK MOYNIHAN
UNITED STATES COURTHOUSE
Courtroom 11A
500 Pearl Street
New York, New York 10007-1312

Re:   *In Re Terrorist Attacks on September 11, 2001*, 1:03-md-01570 (GBD)(SN)
      *Havlish, et al. v. bin Laden, et al.*, 1:03-cv-09848 (GBD)(SN)

    We represent counsel for the *Havlish* Plaintiffs in connection with matters relating to establishment of a common benefit fund.  We write to apprise the Court, *inter alia*, of the passage of the Fairness for 9/11 Families Act, H.R. 8987, 117th Congress (2021-2022) ("the Fairness Act") on January 3, 2023, which will affect the pending common benefit fund which is the subject of the Opinions & Orders entered at MDL Nos. 5180 and 6481.  Rule 72 Objections filed by the *Ashton*, *Burnett*, and *O'Neill* Plaintiffs ("Responding Plaintiffs") and by the *Federal Insurance* Plaintiffs are pending at MDL Nos. 6522 and 6520, respectively.  For the reasons set forth below, resolution of the pending Rule 72 Objections by Responding Plaintiffs is critical given the timing of certain upcoming payments to be made, and we therefore respectfully remind Your Honor that this matter presently remains pending a ruling by the Court.

    Summary

    The Fairness Act provides lump sum catch-up payments through the U.S. Victims of State Sponsored Terrorism Fund ("USVSSTF" or "Fund") to 5,364 victims of 9/11 who hold judgments against the Islamic Republic of Iran in reliance upon the evidence – including extensive confidential evidence which remains sealed, Findings of Fact and Conclusions of Law, and a damages paradigm submitted and entered by the Court in *Havlish, et al., v. bin Laden, et al.*, 1:03-cv-09848(GBD)(SN).  These payments are called lump sum "catch-up" payments because they are one-time payments being issued to a substantial subgroup of 9/11 plaintiffs – chiefly the 9/11 decedent's estates, the surviving spouses, and then-minor dependent children – who were unfairly excluded from receiving payments from the Fund in Rounds One and Two because of their receipt of an award from the Victims Compensation Fund in 2003-04.  The Fund began issuing lump sum payments, in amounts determined by the U.S. Government Accountability Office, to these 5,364 victims on April 20, 2023, in order to rectify the exclusion of these victims from the first two USVSSTF payments.

STROOCK & STROOCK & LAVAN LLP   New York  ·  Los Angeles  ·  Miami  ·  Washington, DC
180 Maiden Lane, New York, NY 10038-4982  ·  T. 212.806.5400  ·  F. 212.806.6006  ·  www.stroock.com

NY 79561906v1

Hon. George B. Daniels
May 31, 2023

We calculate, as more fully detailed below, that the benefit to the Responding Plaintiffs from the Fairness Act is approximately **$2,568,228,667**. The total benefit from USVSSTF payments to the Responding Plaintiffs in this MDL is estimated to be **$4,079,655,989**; this includes both the lump sum catch-up payments and the distributions pursuant to statute by the USVSSTF in Rounds One through Four between 2017 and 2023.[1]

These enormous sums were recovered by Responding Plaintiffs based solely upon, and in conformity with, the Orders entered by this Court in *Havlish v. bin Laden* after consideration of the extensive liability evidence, including sealed evidence, and the damages paradigm presented in the *Havlish* case.

Procedural History

On September 30, 2019, Magistrate Judge Netburn entered an Opinion & Order at MDL No. 5180 granting the motion of *Havlish* counsel to establish a common benefit fund from recoveries by Responding Plaintiffs from the USVSSTF based on the *Havlish* evidence – including sealed evidence, Findings of Fact and Conclusions of Law, damages paradigm, and final judgment. In response to Magistrate Judge Netburn's Order, Responding Plaintiffs and the *Federal Insurance* Plaintiffs moved for reconsideration, which was subsequently denied on September 30, 2020. MDL No. 6481. Responding Plaintiffs then filed Objections on November 4, 2020. MDL No. 6520 (*Federal Insurance* Plaintiffs) and MDL Doc. No. 6522 (Responding Plaintiffs). *Havlish* counsel timely filed Responses. MDL Doc. Nos. 6543 and 6544.

The Rule 72 Objections filed by the Responding Plaintiffs and *Federal Insurance* Plaintiffs remain pending. Briefing on the Objections closed on December 16, 2020, with the filing of a Reply at MDL No. 6557 by Responding Plaintiffs.

The *Havlish* Judgment

After the *Havlish* evidentiary hearing on December 15, 2011, this Court determined that the *Havlish* submission provided evidence satisfactory to this Court, including extensive sealed evidence, as required by the Foreign Sovereign Immunities Act at 28 U.S.C. §1608(e), to establish for the first time that Iran provided direct and material aid and support to al Qaeda in carrying out the September 11, 2001, terrorist attacks. The *Havlish* case then established the damages paradigm for the 9/11 MDL, supported by expert testimony and legal argument. See Order of Judgment entered December 22, 2011, at MDL Doc. 2516; see also Findings of Fact and Conclusions of Law entered on December 22, 2011, at MDL No. 2515; Plaintiffs' Damages Inquest Memorandum filed on February 14, 2012, at MDL No. 2552; Memorandum Decision and Order entered October 3, 2012, at MDL Doc. No. 2623; Order and Judgment entered October 16, 2012, MDL Doc. No. 2624.

---

[1] Excluded from that amount are the sums held in escrow for *Havlish* conditional USVSSTF claims, *see* n. 3, *infra*, and $103,855,307 received by *Hoglan*, *Ray*, and *Maher* judgment holders; those cases are excluded from the common benefit motion because they are represented by *Havlish* counsel.

**STROOCK & STROOCK & LAVAN LLP**  New York  •  Los Angeles  •  Miami  •  Washington, DC
180 Maiden Lane, New York, NY 10038-4982  •  T. 212.806.5400  •  F. 212.806.6006  •  www.stroock.com                     2

NY 79561906v1

Hon. George B. Daniels
May 31, 2023

The *Havlish* Judgment, provided, and continues to provide, the legal basis for every judgment against the Islamic Republic of Iran in this MDL. More than $82 billion in judgments against Iran entered in this MDL now rest upon the *Havlish* judgment. See Exhibit A at MDL Doc. No. 6448-1 filed September 14, 2020 (list of cases and judgments entered against Iran in this MDL as of that time.). Additional cases have received similar judgments since.

<u>The United States Victims of State Sponsored Terrorism Fund</u>

In late 2015, Congress established the USVSSTF with an initial deposit of $1,025,000,000. See Jennifer K. Elsea, Cong. Research Serv., IF10341, *Justice for United States Victims of State Sponsored Terrorism Act: Eligibility and Funding* 2 (2019). A valid final judgment entered by a United States district court against a foreign state, such as Iran, that was designated a state sponsor of terrorism at the time of a terrorist act, or was designated as a result of such act, is a necessary predicate for the Fund to approve a submitted application for compensation. 34 U.S.C. §20144(C)(2)(A)(i)-(ii); see also USVSSTF FAQ 2.1 at usvsst.com/faq.php. A judgment against a non-state actor such as al Qaeda does not suffice. See *id*. FAQ 2.10.

Because the *Havlish* case established Iran's liability for having provided direct and material aid and support to al Qaeda in carrying out the attacks of September 11, 2001, and all the FSIA judgments against Iran in this MDL are based thereon, there are currently **12,117** victims of the 9/11 attacks who have been found eligible to participate in the USVSSTF and receive compensation on their judgment. See usvsst.com.

Originally, the USVSSTF statute contained a clause stating that anyone who received any award from the 9/11 Victims Compensation Fund in 2003-04 ("VCF1") would have that sum *constructively substituted for their FSIA judgment*, and the Special Master decided *that same sum would be deducted from their constructive judgment amount as a set-off*, despite the fact that the statute *contained no set-off provision whatsoever*.[2]

Despite the zero-out of 5,364 victims (see infra fn.3), the Fund made two rounds of payments, in 2017 and 2019, to other eligible 9/11 victims (mostly siblings and parents of 9/11 decedents) who held judgments against Iran. Those payments in Rounds One and Two, every

---

[2] This "zero-out" interpretation meant that any victim of the 9/11 attacks with a FSIA judgment who received even $1 from VCF1 would have an "eligible" claim to the Fund yet their payment from the VCF1 would be constructively substituted for the amount of their judgment issued by this Court and, further, that judgment would be deemed satisfied. Thus, all of the *Havlish* 9/11 decedents' estates, surviving spouses, and minor children had "eligible" claims but were, nevertheless, paid zero dollars from the Fund. The same would later become true for the USVSSTF Round Two claims of more than 5,000 other estates, surviving spouses, and minor children who received Iran judgments, and thus became "eligible" for the Fund, but received zero dollars in Round Two.

**STROOCK & STROOCK & LAVAN LLP**  New York  ·  Los Angeles  ·  Miami  ·  Washington, DC
180 Maiden Lane, New York, NY 10038-4982  ·  T. 212.806.5400  ·  F. 212.806.6006  ·  www.stroock.com         3

NY 79561906v1

Hon. George B. Daniels
May 31, 2023

one of them based on the final judgment entered in the *Havlish* case, totaled **$1,115,264,392**. Only 8 *Havlish* Plaintiffs, each of them siblings and parents, elected to receive compensation from the Fund.[3]

### The Clarification Act

The USVSST Fund Clarification Act ("Clarification Act") was passed in 2019 to eliminate the zero-out provision,[4] enabling 10,590 eligible claimants holding FSIA judgments against Iran from this MDL to participate in Round Three of the Fund. Round Three distributed **$537.5 million** to 9/11 Iran judgment holders in 2021.

The USVSSTF distributed an additional **$50 million** to such 9/11 Iran judgment holders in Round Four so far in 2023.

The total amount distributed by the Fund in Rounds One through Four to 9/11 Iran judgment holders from this MDL exceeds $1.7 billion (specifically, **$1,702,764,392**).

### The Fairness for 9/11 Families Act

The Clarification Act provided no compensation for the unfair zero-out exclusion in

---

[3] *Havlish* judgment holders were statutorily barred from receiving payments from the Fund in Rounds One through Four because they were, and are, litigating, alongside the U.S. Department of Justice, a collection action that began in November 2008 against assets of Iran. The Act establishing the USVSSTF expressly required the plaintiffs in *In re: 650 Fifth Avenue and Related Properties*, 1:08-cv-10934 (SDNY)(LAP), to make a one-time irrevocable choice (an "election") no later than September 2016 to remain in the *650 Fifth Avenue* case or receive compensation from the Fund. No MDL plaintiffs other than *Havlish* were parties in *650 Fifth Avenue*. For most of the *Havlish* judgment holders, specifically, every *Havlish* estate, every spouse, and every then-minor child of a 9/11 decedent, the zero-out interpretation made the only logical choice to remain in *650 Fifth Avenue*. Only eight (8) *Havlish* judgment holders, each of them siblings or parents, elected to take from the USVSSTF. All other *Havlish* judgment holders submitted statutory "conditional claims" which, as of now, are held in escrow by the Fund and will only be paid to the *Havlish* Plaintiffs in the event of an adverse final judgment entered in *650 Fifth Avenue*. Any catch-up payments for which the *Havlish* Plaintiffs would otherwise be eligible will similarly be held in escrow as well. However, under the existing USVSSTF statute, these escrowed payments will never be released because the *650 Fifth Avenue* plaintiffs, of which *Havlish* comprise a minority, have already won an unliquidated minority share in the property. In other words, the <u>*Havlish* judgment holders who established Iran's liability in the MDL, except for the eight "electors," are the only MDL judgment holders who have not received any compensation from the USVSST Fund due to their own private judgment collection efforts against Iran which, to date, have also yielded zero dollars.</u>

[4] Justice for United States Victims of State Sponsored Terrorism Act, 42 U.S.C. §10609(d)(3)(A)(ii)(III), *amended by* United States Victims of State Sponsored Terrorism Fund Clarification Act, P.L 116-69, Title VII, §1701(c) (Jan. 2, 2019). The Justice for United States Victims of State Sponsored Terrorism Act was subsequently recodified at 34 U.S.C. §20144, *et seq*.

**STROOCK & STROOCK & LAVAN LLP** New York · Los Angeles · Miami · Washington, DC
180 Maiden Lane, New York, NY 10038-4982 · T. 212.806.5400 · F. 212.806.6006 · www.stroock.com

4

NY 79561906v1

Hon. George B. Daniels
May 31, 2023

Rounds One and Two.  The Fairness for 9/11 Families Act ("Fairness Act"), passed by Congress on January 3, 2023, as Division MM to the Consolidated Appropriations Act, 2023, was enacted in order to do so: it provides "catch-up payments" to eligible 9/11 claimants, including even those who were deterred by the "zero-out" interpretation from applying to the Fund in Rounds One and Two.

The Fairness Act provides the 5,364 previously "eligible" but zeroed-out victims of 9/11 with lump sum payments in the total amount of $2,652,653,742.  This $2.65 billion sum, being paid out presently, represents the catch-up payments to those victims, primarily estates, surviving spouses, and then-minor children, who were unfairly excluded from Rounds One and Two of the USVSSTF.  Responding Plaintiffs will receive approximately **$2,568,228,667** of the $2.65 billion, or about 97% of the catch-up payments.

<u>Total USVSST Fund Compensation to Date</u>

Thus, the total amount of compensation distributed by the USVSSTF for 9/11 victims holding judgments against Iran based on the *Havlish* evidence, argumentation, and judgment, including the catch-up payments to be distributed in 2023, and excluding the amounts paid into escrow for *Havlish* and amounts paid to *Hoglan*, *Ray*, and *Ryan* judgment holders (who were excluded from the common benefit motion) exceeds **$4 billion**:

| | |
|---|---|
| USVSSTF Rounds One and Two (2017 & 2019): | $   947,869,079 |
| USVSSTF Round Three (2021): | $   515,277,499 |
| USVSSTF Round Four (2023): | $     48,280,744 |
| <u>USVSSTF Lump Sum Catch-Up Payments (2023):</u> | <u>$ 2,568,228,667</u> |
| **TOTAL:** | **$ 4,079,655,989** |

Sources: U.S. Gov't Accountability Off., GAO-21-105306, *U.S. Victims of State Sponsored Terrorism Fund* 8, Figure 5 (2021); United States Victims of State Sponsored Terrorism Fund, *Special Master's Report Regarding the Third Distribution* (June 2020); United States Victims of State Sponsored Terrorism Fund, *Special Master's Report Regarding the Fourth Distribution* (Jan. 2023); usvsst.com.

<u>Future Reserve Fund Distribution by the USVSST Fund</u>

The Fairness Act also established a "reserve fund" with an additional $3 billion for the purpose of compensating victims of the 1983 bombing of the U.S. Marines barracks in Beirut ("*Peterson* judgment holders") and the 1996 bombing of the Khobar Towers complex in Saudi Arabia which housed members of the USAF ("*Heiser* judgment holders").  Like the *Havlish* Plaintiffs in *In re 650 Fifth Avenue*, the *Peterson* and *Heiser* judgment holders were statutorily barred from participating in the Fund because of their prosecution of a private collection against the Central Bank of Iran in *Peterson, et al. v. Islamic Republic of Iran, et al.*, 1:10-cv-04518 (KBF).  The reserve fund will provide make-whole "catch-up" payments to the 1,800 *Peterson*

STROOCK & STROOCK & LAVAN LLP  New York  •  Los Angeles  •  Miami  •  Washington, DC
180 Maiden Lane, New York, NY 10038-4982 • T. 212.806.5400 • F. 212.806.6006 • www.stroock.com

5

NY 79561906v1

Hon. George B. Daniels
May 31, 2023

and *Heiser* judgment holders, in amounts to be determined by the U.S. Government Accountability Office (projected at approximately $1 billion), to compensate for their previous statutory bar to participation in the Fund.  The amount remaining in the reserve fund, which is expected to be approximately $2 billion, will be placed into the USVSST Fund.  The Clarification Act provided for a division of all deposits into the Fund equally between two classes of victim groups: 9/11 victims and victims of state-sponsored terrorist attacks against U.S. nationals other than 9/11.  Each is expected to receive approximately $1 billion for distribution for Round Five or Round Six, depending on the timing of the GAO calculation for the *Peterson* and *Heiser* catch-up payments.

### Conclusion

Following the passage of the Fairness Act, the benefits received by Iran judgment holders not represented by *Havlish* counsel in this MDL, based entirely upon the *Havlish* evidence, now totals **$4,079,655,989**.  When half of the remainder of the reserve fund created by the Fairness Act is added, that number will likely exceed **$5 billion**.  The *Havlish* judgment holders, except for the eight electors, will have received none of it.

Given the significant amounts at issue, and the fact that the Fund began distribution of the billions of dollars in payments compelled by the Fairness Act on April 20, 2023, we respectfully remind the Court of the pendency of the Rule 72 Objections by Responding Plaintiffs, in hopes to avoid a situation where any sums to be paid into a common benefit fund would have to be secured by some form of clawback based on this Court's ruling.

Respectfully submitted,

/s/ James L. Bernard

James L. Bernard


cc:  All Responding Plaintiffs' Counsel of Record via MDL ECF

STROOCK & STROOCK & LAVAN LLP  New York  •  Los Angeles  •  Miami  •  Washington, DC
180 Maiden Lane, New York, NY 10038-4982  •  T. 212.806.5400  •  F. 212.806.6006  •  www.stroock.com                    6

NY 79561906v1