# Mitchell Allyn, Ltd.

1000 North Green Valley Parkway, Suite 440-575
Henderson, Nevada 89074-6170

Tel: +1 702 350 1208
Email: dmitchell@mitchellallyn.com

February 4, 2026

The Honorable George B. Daniels
United States District Court
for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse.
500 Pearl Street
New York, NY 10007

The Honorable Sarah Netburn
United States Magistrate Judge
United States District Court
for the Southern District of New York
Thurgood Marshall United States Courthouse,
400 Foley Square
New York, NY 10007

   Re: ***In re Terrorist Attacks on September 11, 2001***, **03 MDL 1570 (GBD)(SN)**

     – ***Havlish*** **Plaintiffs' Motions to Permit Attachment and Execution (MDL ECF No. 11458)**
     – ***Hoglan*** **Plaintiffs' Motion to Permit Attachment and Execution (MDL ECF No. 11461)**
     – ***Ray*** **Plaintiffs' Motion to Permit Attachment and Execution (MDL ECF No. 11465)**
     – ***Maher*** **Plaintiffs' Motion to Permit Attachment and Execution (To Be Filed)**

Dear Judge Daniels and Judge Netburn:

  On behalf of the Havlish Plaintiffs, the Hoglan Plaintiffs, the Ray Plaintiffs, and the Maher Plaintiffs (collectively, the "Havlish Plaintiffs"), we write in response to a series of recent filings concerning the Havlish Plaintiffs' request for orders required by 28 U.S.C. § 1610(c). The Havlish Plaintiffs have requested the § 1610(c) orders so they can, in compliance with

Judge George B. Daniels
Magistrate Judge Sarah Netburn
February 4, 2026
Page 2

Second Circuit law, participate in enforcement proceedings against approximately $11 billion in Bitcoin ("Bitcoin Assets") that are already subject to separate forfeiture and turnover proceedings in the Eastern District of New York.  Though the recent filings raise many issues, this letter will address only certain points.

First, the letters evince confusion over what the Havlish Plaintiffs' § 1610(c) motions seek.  Section 1610(c) orders do not, in and of themselves, constitute writs of execution or writs of attachment.  Neither do they serve to "block," or to establish "priority" over, assets that may potentially be available to satisfy their judgments.  *See Weinstein v. Islamic Republic of Iran*, 609 F.3d 43 (2d Cir. 2010).  Instead, an order entered pursuant to § 1610(c) is a "condition precedent" that must be satisfied *before* a judgment holder can undertake appropriate attachment or execution efforts.  *Levin v. Bank of New York*, 2011 WL 812032 (S.D.N.Y. 2011).  In this Circuit, terrorism judgment holders are required to obtain a court order pursuant to § 1610(c) for each group of assets they seek to attach.  *Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 291 (2d Cir. 2011) (§ 1610(c) "requires a prior judicial determination that the execution is warranted under one of the § 1610(a) or (b) exceptions and with respect to specifically identified property.").  Courts in this circuit do not recognize blanket § 1610(c) orders. *Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*, 134 F. Supp. 2d 528, 536 (S.D.N.Y. 2001) (holding that "since the plaintiff in the instant case has not identified any specific assets in its motion, the Court cannot adequately review the propriety of attaching the assets of the judgment-debtor" for purposes of satisfying § 1610(c)).

Second, this Court is the proper venue for seeking § 1610(c) orders authorizing the Havlish Plaintiffs to commence enforcement proceedings against the Bitcoin assets.  The judgments of each group comprising the Havlish Plaintiffs were entered by this Court.  This Court supervised service of those judgments pursuant to § 1608(e).  Therefore, this Court is the proper Court to confirm that "a reasonable period of time has elapsed following" (i) the entry of judgment and (ii) "the giving of any notice required under section 1608(e)." 28 U.S.C. § 1610(c).  For the Havlish Plaintiffs and Hoglan Plaintiffs, the 1610(c) motions seek confirmation that they have satisfied their § 1610(c) conditions precedent with respect to the Bitcoin Assets.  For the Ray Plaintiffs and Maher Plaintiffs, the § 1610(c) motions seek to obtain, for the first time, the required findings so they, too, can initiate enforcement proceedings against the Bitcoin Assets.

Third, while this Court is the appropriate forum to obtain § 1610(c) orders, the Eastern District is the appropriate forum to litigate the Havlish Plaintiffs' right to turnover of the Bitcoin Assets in satisfaction of their judgments.  For that reason, the Havlish Plaintiffs' § 1610(c) motions do not ask the Court to issue writs of attachment or writs of execution.  Instead, upon entry of the § 1610(c) orders, the Havlish Plaintiffs will be filing a complaint for turnover in the Eastern District of New York.  That turnover complaint will seek to enforce the Havlish Plaintiffs' judgments against the Bitcoin Assets pursuant to TRIA, NYCPLR 5225, and

Judge George B. Daniels
Magistrate Judge Sarah Netburn
February 4, 2026
Page 3

NYCPLR 5227. At the same time, the Havlish Plaintiffs will seek, as appropriate, writs of attachment or execution. Like their turnover complaint, those motions for attachment or execution will be filed in the Eastern District, which has assumed jurisdiction over the Bitcoin Assets. Accordingly, the Eastern District will be the court that applies TRIA, NYCPLR 5225, and NYCPLR 5227. The Eastern District will also be the court that interprets and applies federal forfeiture law. The Havlish Plaintiffs anticipate their enforcement proceeding will be consolidated with the Fritz Plaintiffs' pending proceeding in the Eastern District and assigned to Judge Kovner in conformity with Chief Judge Brodie's text only Order Reassigning Case entered on January 27, 2026. *See* Fritz, 1:25-cv-07093 on January 27, 2026. This Court is simply being asked to find that the conditions precedent to those enforcement actions in the Eastern District have been satisfied.

Fourth, from the outset – even before filing their claim in the forfeiture proceeding – the Havlish Plaintiffs told the government they intend to file a TRIA turnover complaint in the Eastern District. On January 18, 2026, before the Havlish Plaintiffs appeared in the forfeiture proceeding, counsel for the Havlish Plaintiffs informed the Assistant United States Attorneys handling the Bitcoin Asset litigation they would be both (1) filing claims in the forfeiture proceedings and (2) filing a separate action for turnover of the Bitcoin assets pursuant to TRIA. Letter from Douglass A. Mitchell to Alexander Mindlin, dated January 18, 2026, attached as Exhibit 1. In response, the U.S. Attorneys asked the Havlish Plaintiffs to (1) email them with the docket number for their turnover case, (2) file a letter on the Eastern District docket in the forfeiture case informing the judge of the Havlish Plaintiffs' turnover case, and (3) notify the judge to whom the Havlish Plaintiff's turnover case is assigned that the government requests an opportunity to be heard. Email Chain between Douglass A. Mitchell and Alexander Mindlin, dated January 18-19, 2026, attached as Exhibit 2. The Havlish Plaintiffs agreed to each of their requests. Id. Counsel for the Havish Plaintiffs confirmed their intention to file a TRIA turnover complaint in the Eastern District on January 27, 2026, when they notified counsel for the government that they would also be representing the Bauer Plaintiffs and Parker Plaintiffs. Letter from Douglass A. Mitchell to Alexander Mindlin, dated January 28, 2026, attached as Exhibit 3.

Fifth, the recent letters suggest that recoveries from private enforcement of terrorism judgments should all be distributed through the United States Victims of State Sponsored Terrorism Fund or, alternatively, that no one group of judgment creditors should be allowed to enforce their judgments unless all other groups are likewise ready to enforce theirs. However, that is not how judgment enforcement works, even in MDL litigation. As the Havlish Plaintiffs previously noted, the VSST Fund is a supplement to, not a replacement for, private judgment enforcement efforts. *See* 34 U.S.C. § 20144(d)(5)(B). Consistent with that Congressional policy, the United States Supreme Court, in *Fuld v. Palestine Liberation Organization*, 145 S.Ct. 2090 (2025) recently recognized that Congress had intentionally and carefully created a statutory framework that incentivizes terrorism judgment holders to pursue private enforcement actions by

Judge George B. Daniels
Magistrate Judge Sarah Netburn
February 4, 2026
Page 4

"throw[ing] open the courthouse door." *Fuld* at 2105. Congress did not limit a terror victim's ability to enforce his or her judgment to group decision making.

      Sixth, the recent letters overlook something very significant. They suggest all recoveries from 9/11 judgments should be distributed through the VSST Fund so that all 9/11 plaintiffs can participate. However, they make that suggestion knowing full well that many Havlish Plaintiffs are currently precluded from participating in the VSST Fund. So, while their suggestion would enable them to participate in distributions from private recoveries made by other groups, it would exclude many Havlish Plaintiffs whose only recourse right now is private enforcement.

      Seventh, the recent letters effectively asked the Court to delay issuing the Havlish Plaintiffs' § 1610(c) orders so other 9/11 plaintiff groups would have time to prepare to join the Bitcoin litigation. However, the only thing their requested delay will accomplish is making it far more difficult for any 9/11 judgment holders to participate meaningfully in any recovery that might be obtained from those assets by allowing non-9/11 judgment creditors to gain priority.

      Sincerely,

      Douglass A. Mitchell