**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------- x
                                      :
                                      :                    MEMORANDUM DECISION AND
                                      :                              ORDER
In re Terrorist Attacks on September 11, 2001    :
                                      :                        03 MDL 1570 (GBD) (SN)
                                      :
                                      :
------------------------------------- x

This document relates to:

*All actions.*

GEORGE B. DANIELS, District Judge:

   The Parties in this motion are Plaintiffs' Executive Committees ("PECs" or "Plaintiffs"),

and Defendants Dubai Islamic Bank ("DIB"), World Assembly of Muslim Youth and World

Assembly of Muslim Youth International (together, "WAMY"), International Islamic Relief

Organization ("IIRO"), Muslim World League ("MWL"), Abdullah Omar Naseef ("Naseef"),

Abdullah bin Saleh al Obaid ("Obaid"), Abdullah Abdelmohsen al Turki ("Turki"), Adnan Basha

("Basha"), and Yassin Kadi ("Kadi") (collectively, "Defendants").

   Before this Court are objections, pursuant to Rule 72 of the Federal Rules of Civil

Procedure, from Plaintiffs and Defendants (the "Parties") to Magistrate Judge Netburn's April 27,

2023 Opinion and Order, (Opinion & Order ("2023 Order"), ECF No. 9060), and Magistrate Judge

Netburn's August 18, 2025 Opinion and Order.  (Opinion & Order ("2025 Order"), ECF No.

11157.)[1]  The Parties' respective objections to the 2023 and 2025 Orders, along with related

questions concerning the admissibility and scope of expert testimony, are OVERRULED.

---

[1] Unless otherwise indicated, all docket numbers refer to the main docket sheet for this multidistrict
litigation. *See In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570.

## I.    PROCEDURAL BACKGROUND[2]

### A.  The 2023 Order

The Parties retained experts to opine on Defendants' alleged material support for Al Qaeda and the 9/11 attacks.  Magistrate Judge Netburn ordered the Parties to file bellwether *Daubert* reports to the opposing parties' proffered experts.  (ECF No. 7160.)  On November 15, 2021, Defendants moved to exclude the testimony of two Plaintiff experts: Jonathan Winer and Brian Michael Jenkins, (ECF No. 7342), and Plaintiffs moved to exclude the testimony of four Defense experts: Jonathan Benthall, Charles W. Freeman, Jonathan Marks, and John Sidel.  (ECF No. 7345.)

On April 27, 2023, Magistrate Judge Netburn filed an Opinion and Order of the Court granting in part and denying in part the motions by the Parties.  (2023 Order at 1.)  Plaintiffs filed timely Rule 72 objections to the 2023 Order on May 31, 2023.  (Plaintiffs' Objections to the 2023 Order ("Pls.' 2023 Obj."), ECF No. 9110.)  Defendants opposed Plaintiffs' objections on June 30, 2023, (Defendants' Opposition to Pls. 2023 Obj. ("Defs.' 2023 Opp'n"), ECF No. 9179), and Plaintiffs replied on July 21, 2023.  (Plaintiffs' Reply ("Pls.' 2023 Reply"), ECF No. 9228.)

WAMY filed timely Rule 72 objections to the 2023 Order on May 31, 2023.  (Defendants' Objection to 2023 Order ("Defs.' 2023 Obj."), ECF No. 9113.)  Plaintiffs opposed on June 30, 2023, (Plaintiffs' Opposition to Defs.' 2023 Obj. ("Pls.' 2023 Opp'n"), ECF No. 9177), and WAMY replied on July 21, 2023.  (Defendants' Reply ("Defs.' 2023 Reply"), ECF No. 9226.)

---

[2] This Court assumes familiarity with the general background of this case and will only restate relevant background as necessary to address the pending motion.  Moreover, because the factual and procedural background of the pending motion has been discussed at length in Magistrate Judge Netburn's 2023 and 2025 Orders, this Court summarizes and appropriately incorporates such background by reference.

2

## B. The 2025 Order

On July 31, 2023, Defendants moved to exclude the testimony of three Plaintiff witnesses: Evan Kohlmann, Matthew Levitt, and Victor Comras. (ECF Nos. 9246, 9248.) Magistrate Judge Netburn filed an Opinion and Order of the Court granting in part and denying in part Defendants' motions. (2025 Order at 59–60.) Plaintiffs filed timely Rule 72 objections to the 2025 Order on October 3, 2025, (Plaintiffs' Objections to 2025 Order ("Pls.' 2025 Obj."), ECF No. 11350), and Defendants filed their response on October 31, 2025. (Defendants' Opposition ("Defs.' 2025 Opp'n"), ECF Nos. 11377.) Plaintiffs filed their reply on November 21, 2025. (Plaintiffs' Reply ("Pls.' 2025 Reply") ECF No. 11406.) Defendants did not object to the 2025 Order.

## II.    STANDARD OF REVIEW

"The decision to admit or exclude expert testimony is considered non-dispositive of an action." *BS BIG V, LLC v. Philadelphia Indem. Ins. Co.*, No. 19 Civ. 4273 (GBD) (SLC), 2022 WL 4181823, at *2 (S.D.N.Y. Sept. 13, 2022) (quoting *Pac. Life Ins. Co. v. Bank of New York Mellon*, 571 F. Supp. 3d 106, 111 (S.D.N.Y. Nov. 15, 2021)). When a party objects to a non-dispositive order of a magistrate judge, the district court may only set the order aside if it "is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). "An order is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *M.B. v. New York City Dep't of Educ.*, No. 22 Civ. 6405 (JPC) (SN), 2023 WL 5695487, at *1 (S.D.N.Y. Apr. 20, 2023). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *S.E.C. v. Thrasher*, No. 92 Civ. 6987 (JFK), 1995 WL 456402, at *12 (S.D.N.Y. Aug. 2, 1995).

"Under this highly deferential standard of review, [magistrate judges] are afforded broad discretion in resolving [non-dispositive] disputes and reversal is appropriate only if their discretion

3

is abused." *AMBAC Fin. Servs., LLC v. Bay Area Toll Auth.*, No. 09 Civ. 7062 RJH, 2010 WL 4892678, at *2 (S.D.N.Y. Nov. 30, 2010); *see also Grand River Enters. Six Nations, Ltd. v. King*, No. 02 CIV 5068 (JFK), 2009 WL 222160, at *2 (S.D.N.Y. Jan. 30, 2009) (noting that particular deference is due where magistrate judges have "been deeply involved in discovery matters in the case for years.").

## III.    LEGAL STANDARDS

"Rule 702 requires that expert testimony come from someone who is 'qualified as an expert by knowledge, skill, experience, training or education,' whose testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 359–60 (2d Cir. 2004); *see also Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005) (stating that Rule 702 of the Federal Rules of Evidence authorizes courts to admit expert testimony that is (1) "based upon sufficient facts or data," (2) "is the product of reliable principles and methods, and (3) the [expert] witness has applied the principles and methods reliable to the facts of the case.").

"[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 n.10 (1993)).

## IV.    THE 2023 ORDER IS ADOPTED IN ITS ENTIRETY

Plaintiffs object to Magistrate Judge Netburn's conclusions in the 2023 Order (1) excluding Plaintiffs' expert Jonathan Winer from testifying as to his opinions on two subset religions of Islam:

4

Salafism and Wahhabism; and (2) permitting Defendants' expert witness Jonathan Benthall to testify about Defendants' legitimate humanitarian work. (Pls.' 2023 Obj. at 1.)

Defendants' object to Magistrate Judge Netburn's conclusions in the 2023 Order (1) excluding the opinions of Defendants' witness and former US Ambassador to Saudi Arabia Charles Freeman; and (2) permitting Plaintiffs' expert Jonathan Winer to testify that WAMY was "intertwined" with another charity, the Benevolence International Foundation ("BIF"). (Defs.' 2023 Obj. at 1.) This Court addresses each objection in turn.

## A. Plaintiffs' Objections to the 2023 Order are OVERRULED.

Magistrate Judge Netburn properly held that Plaintiffs' expert Jonathan Winer, as a lawyer and scholar at the Middle East Institute, is qualified to testify as an expert about al Qaeda, Saudi Arabia, charitable financial controls, and OFAC sanctions, but is unqualified to opine on religion, including his opinions on "Salafism" and "Wahhabism."

Plaintiffs argue that because Jonathan Winer is an expert on "terrorist financing," he should be able to "testify to the (well documented) fact that al Qaeda relied on Wahhabi and Salafi ideology to justify its actions, recruit members, and raise funds." (Pls.' 2023 Obj. at 1.) But Plaintiffs concede that Mr. Winer's knowledge of religion is limited to a "foundational understanding," which is a far cry from the requirements of an expert. (*Id.* at 3.) *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (holding that the objective of the "gatekeeping" requirement of *Daubert* and Rule 702 is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."); *see also Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997) (noting that "[i]n some circumstances . . . a

district court may properly conclude that witnesses are insufficiently qualified despite the relevance of their testimony because their expertise is too general or too deficient.")

Moreover, "because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields." *Nimely*, 414 F.3d at 399 n.13. Even if "[Mr.] Winer does not purport to offer opinions on the theological differences between distinct schools of Islam," but merely attempts to "lay the groundwork regarding the roots of extremism and in a context as it relates to terrorism" as Plaintiffs contend (Pls.' 2023 Obj. at 4), this falls plainly outside the scope of his expertise regarding "terrorist financing, the role of charities, and sanctions." (2023 Order at 2 (citing Expert Report of Jonathan M. Winer, Ex. A, ECF No. 7344-1, and Rebuttal Report of Jonathan M. Winer, Ex. B, ECF No. 7344-2).)

Magistrate Judge Netburn also properly allowed Defendants' witness Jonathan Benthall, an anthropologist who studied "Islamic organized charity," to testify about Defendants' legitimate humanitarian work. (2023 Order at 25.) As Defendants have noted, Plaintiffs' experts questioned the legitimacy and intent behind Defendants' charity work. (Defs.' 2023 Opp'n at 16.) Mr. Benthall's testimony directly rebutted these assertions. In the 2023 Order, Magistrate Judge Netburn concluded that Mr. Benthall's testimony is admissible because "[a]n organization engaged in legitimate charity work may be less likely to support terrorism and other illegitimate endeavors . . . ." (2023 Order at 28.)

Plaintiffs object to Magistrate Judge Netburn's conclusion, arguing for the first time that Mr. Benthall's testimony would constitute improper character evidence that runs afoul Federal Rule of Evidence 404(a). (Pls.' 2023 Obj. at 3.) Even assuming that this issue was properly brought before Magistrate Judge Netburn, Plaintiffs' objection lacks merit. Rule 404(a) states that

6

"[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FED R. OF EVID. 404(a). But Mr. Benthall's testimony is not being used to prove that Defendants "acted in conformity therewith." *Id.* Instead, the testimony is sufficiently probative of some of the type of work that WAMY engaged in. Magistrate Judge Netburn's decision to admit this probative evidence was neither "clearly erroneous" or "contrary to law."

## B. Defendant WAMY's Objections to the 2023 Order are OVERRULLED.

Magistrate Judge Netburn properly excluded Mr. Freeman's testimony because it lacks the necessary support required of expert witnesses. (2023 Order at 31.) In determining whether an expert is qualified to testify as to a particular topic at trial, district courts must ensure that his or her "testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 580.

As Magistrate Judge Netburn notes, Mr. Freeman's report was sparsely supported by any citations, and three of the few citations come from Wikipedia. (2023 Order at 31.) Mr. Freeman's reading list was also comprised of four total sources, none of which were his own publications. (*Id.*) These lightly supported assertions lack any sort of foundational support beyond Mr. Freeman's own confidence, rendering them inadmissible expert testimony. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 137 (1997) ("Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *see also Zaremba*, 360 F.3d at 358 (holding that the objective of the "gatekeeping" requirement of *Daubert* and Rule 702 is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

7

Magistrate Judge Netburn also properly called into question the reliability of Mr. Freeman's sources. For example, as to one of Mr. Freeman's sources, Mr. Freeman cited a proposition made by "a former U.S. intelligence officer who wishes to remain anonymous." (Expert Rep. of Charles W. Freeman, Jr., Ex. 3 ("Freeman Report"), ECF No. 7351-3, at 4 n.7.) Mr. Freeman originally "attest[ed] to [the source's] accuracy," but later admitted in his deposition the citation was written by an anonymous internet blogger and conspiracy theorist. (Charles W. Freeman, Jr. Deposition, Ex. 8 ("Freeman Dep."), ECF no. 7351-8, at 32–34.). This kind of dishonesty from Mr. Freeman is sufficient to render his testimony unreliable and therefore inadmissible. *See Bazile v. City of New York*, 215 F. Supp. 2d 354, 381 (S.D.N.Y. Aug. 2, 2002) (holding that "expert testimony is admissible only if the witness is qualified and if his testimony is both relevant and reliable.").

Magistrate Judge Netburn also properly admitted Mr. Winer's testimony about the relationship between WAMY and BIF. (2023 Order at 18–19.) WAMY argues that Mr. Winer's testimony lacked a reliable factual basis because it resulted from an unreliable application of Mr. Winer's "all source" methodology. (*Id.*) But Mr. Winer based his testimony on various reliable sources, including audit materials from the Canada Revenue Agency, the 1987 indictment of BIF, and a press release from the U.S. Department of Treasury website.[3] (Pls.' 2023 Opp'n at 6–7.) Mr. Winer, as an expert, is allowed to base his conclusions on such sources. (2023 Order at 19; *See U.S. v. Paracha*, No. 03 Cr. 01197 (SHS), 2006 WL 12768, at \*20 (S.D.N.Y. Jan. 3, 2006) , *aff'd* 313 F. App'x 347 (2d Cir. 2008) (admitting testimony based off of "gathering multiple sources of information, . . . cross-checking and juxtaposing new information against existing

---

[3] *See Treasury Designates Benevolence International Foundation and Related Entities as Financiers of Terrorism*, U.S. DEP'T OF TREASURY (Nov. 19, 2002), https://home.treasury.gov/news/press-releases/po3632.

information[,] and evaluating new information to determine whether his conclusions remain consonant with the most reliable sources").

Finally, Defendants argue that Mr. Winer "failed to consider *any* reliable evidence produced in discovery and other primary sources in reaching this opinion." (Defs.' 2023 Obj. at 14.) As Magistrate Judge Netburn noted, however, "if there are additional relevant documents that contradict Mr. Winer's opinions, Defendants can effectively test his conclusions via cross-examination. (*See* 2023 Order at 19 (citing *Daubert*, 509 U.S. at 596).)

Because neither party has demonstrated that Magistrate Judge Netburn's 2023 Order was "clearly erroneous" or "contrary to law," the Parties' objections are OVERRULED.

## V.    THE 2025 ORDER IS ADOPTED IN ITS ENTIRETY

Plaintiffs object to Magistrate Judge Netburn's conclusions in the 2025 Order granting Defendants' motion to limit the expert testimony of Plaintiffs' expert Evan Kohlmann as to "Islam" and "financial accounting," arguing that these terms "intersect with, and are inseparable from, the core subject matters about which Mr. Kohlmann is qualified to testify." (Pls.' 2025 Obj. at 2.)

Magistrate Judge Netburn properly prohibited Mr. Kohlmann from speaking as an expert on Islam and financial accounting, as Mr. Kohlmann himself has admitted his lack of expertise in these areas. Regarding Islam, Mr. Kohlmann testified in his deposition that: "Generally speaking, I'm not proffered as an expert on Islam, that's true." (Evan Kohlmann Deposition, Ex. 5 ("Kohlmann Dep."), ECF No. 9250-43 at 213:23–25.) Regarding financial accounting, Mr. Kohlmann also admitted the following:

> I don't have any formal training in accounting, but if you are asking[,] have I looked at accounting documents that have been recovered in investigations like this and, you know, helped examine them or even just studied them on the side? The answer is yes. If you are asking if I have formal training in accounting, the answer is no.

9

(Kohlmann Dep. at 715:16–22.)

As Magistrate Judge Netburn properly concluded, "Islam" and "financial accounting" are "complex and nuanced subjects that require more than self-directed or introductory study." (2025 Order at 23.) And the case law is clear that "each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." FED. R. EVID. 702; *see also National Coal. on Black Civic Participation v. Wohl*, 661 F.Supp.3d 78, 97 (S.D.N.Y. Mar. 8, 2023) (stating that "[w]hen determining an expert's qualifications, 'courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony.'") (citing *U.S. v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)). Accordingly, Mr. Kohlmann is prohibited from opining as an expert on complex issues that are beyond the scope of his expertise. *See Nimely*, 414 F.3d at 399 n.13 ("because a witness qualifies as an expert with respect to certain matters or areas of knowledge, it by no means follows that he or she is qualified to express expert opinions as to other fields"); *see also U.S. v. Cruz*, 363 F.3d 187, 194 (2d Cir. 2004) (stating that District Courts must use their role as gatekeepers to determine when an expert witness has strayed too far from their scope of expertise).

Furthermore, Magistrate Judge Netburn properly concluded that there were serious concerns about Mr. Kohlmann's testimony, especially based on his questionable "'experience' and 'training'; the limited pressure testing of his conclusions by real-world exposure or academic review; and his tendency to misstate facts, rely on speculation, and jump from 'accepted premise[s] to . . . unfounded conclusion[s],'" (2025 Order at 32, citing *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d 420, 464 (E.D.N.Y. 2011).) And Plaintiffs do not object to Magistrate Judge Netburn's conclusions that Mr. Kohlmann's testimony is both unhelpful and unreliable. On these grounds alone, Magistrate Judge Netburn properly excluded Mr. Kohlmann's testimony. *See*

10

*Pacific Life Insurance Co.*, 571 F. Supp. 3d at 115 (finding that unreliability was a "sufficient basis on which to exclude [expert] testimony").

Finally, Plaintiffs' request for a *Daubert* hearing to determine the reliability of Mr. Kohlmann's testimony is DENIED. District Courts are not mandated to hold a *Daubert* hearing, *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 71 (S.D.N.Y. Dec. 19, 2001), and the record clearly establishes Mr. Kohlmann's lack of expertise in Islam and financial accounting. (2025 Order at 28; Kohlmann Dep. At 213:23–25, 715:16–22.) Magistrate Judge Netburn's thorough review of the Parties' expert testimonies and written submissions is sufficient evidence to reach a decision. *See U.S. v. Williams*, 506 F.3d 151, 161 (2d Cir. 2007) (holding that "[t]he formality of a separate [*Daubert*] hearing was not required" after analyzing similar evidence in other cases and the witness' foundation as an expert).

Because Plaintiffs have not demonstrated that Magistrate Judge Netburn's 2025 Order was "clearly erroneous" or "contrary to law," the Parties' objections are OVERRULED.

## VI.    CONCLUSION

Upon review of the 2023 Order, 2025 Order, and entire record, this Court is left without a "definite [or] firm conviction that a mistake has been committed." *See Schneider*, 551 F. Supp. 2d at 177. Accordingly, both Plaintiffs' and Defendants' objections are OVERRULED. Magistrate Judge Netburn's 2023 Order and 2025 Order are adopted in their entireties.

Dated: March 18, 2026
     New York, New York

SO ORDERED.

GEORGE B. DANIELS
UNITED STATES DISTRICT JUDGE

11