**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

In re:

    **TERRORIST ATTACKS ON**
    **SEPTEMBER 11, 2001**

-----------------------------------------------------------------X

**03-MD-01570 (GBD)(SN)**

**ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

This document relates to:

> Ashton v. al Qaeda Islamic Army, No. 02-cv-06977
> Burlingame v. Bin-Laden, No. 02-cv-07230
> Bauer v. Al Qaeda Islamic Army, No. 02-cv-07236
> Havlish v. Bin-Laden, No. 03-cv-09848
> Hoglan v. Islamic Republic of Iran, No. 11-cv-07550
> Ashton v. Kingdom of Saudi Arabia, No. 17-cv-02003
> Parker v. Islamic Republic of Iran, No. 18-cv-11416
> Ray v. Islamic Republic of Iran, No. 19-cv-00012
> Maher v. Islamic Republic of Iran, No. 20-cv-00266

On April 24, 2026, the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") sanctioned and blocked[1] two digital wallets containing approximately $344 million of Tether cryptocurrency tokens (the "Tether Assets") purportedly owned by the Central Bank of Iran. See ECF No. 12105 at 1.[2] Because of the apparent link between the Tether Assets and the Islamic Republic of Iran ("Iran"), certain plaintiffs in the above-captioned cases (the "Plaintiffs") aim to satisfy their judgments from the Tether Assets. See, e.g., ECF No. 12105 at

---

[1] Specifically, the OFAC updated its Specially Designated Nationals and Blocked Persons List to add to the Central Bank of Iran's entry two addresses for cryptocurrency wallets on the Tron blockchain holding the Tether Assets. See ECF No. 12106 at 2–3; U.S. Dep't of Treasury, Office of Foreign Assets Control, Iran-related Designations; Counter Terrorism and Iran-related Designation Update; Issuance of Iran-related General License (Apr. 24, 2026), https://ofac.treasury.gov/recent-actions/20260424.

[2] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

3. These Plaintiffs hold default judgments against Iran and, in some cases, political subdivisions, individual officials, agencies, and instrumentalities of Iran (together, the "Iranian Defendants"). The Plaintiffs have thus filed three motions[3] to permit attachment of, or execution on, the Tether Assets pursuant to 28 U.S.C. § 1610(c). See ECF Nos. 12105, 12108, 12111. The Court requests clarification on a key issue before it can decide these pending motions.

## DISCUSSION

Section 1610(c) of the Foreign Sovereign Immunities Act ("FSIA") provides that:

> No attachment or execution . . . shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C. § 1610(c). This mandatory procedural hurdle requires the Court to find, for each default judgment against a foreign state, that (1) any notice required under § 1608(e) has been given, and (2) a reasonable period of time has elapsed since the foreign state received notice. See ECF No. 11973 (the "Bitcoin O&O") at 7–8, 16. Under § 1608(e), default judgment holders must serve notice of their judgments on the foreign state, its political subdivisions, or its agencies and instrumentalities pursuant to the methods prescribed in FSIA § 1608(a) and (b). See id. at 6–7. The Court recently granted many MDL plaintiffs permission to attach or execute on purportedly Iranian Bitcoin held in the U.S. District Court for the Eastern District of New York (E.D.N.Y.) because these plaintiffs met § 1610(c)'s two requirements for all of their default judgments. See id. at 20.

---

[3] These motions correspond to the three groups of Plaintiffs: (1) the "Havlish Plaintiffs" from the Havlish, Hoglan, Ray, Maher, Bauer and Parker member cases, see ECF No. 12105 at 1; (2) the "Breitweiser Plaintiffs," all members of the same family and parties to multiple member cases, see ECF No. 12108 at 1; and (3) the "Ryan Plaintiffs," similarly all plaintiffs from the same family. See ECF No. 12111 at 1.

Many of the plaintiffs that sought § 1610(c) certifications for the Bitcoin now seek the same certifications for the Tether Assets. The Court cannot verify, however, that the Bitcoin O&O addressed *all* of the Plaintiffs and judgments included in the pending motions related to the Tether Assets. The Breitweiser and Ryan Plaintiffs specify which judgments against Iran they seek to satisfy from the Tether Assets, and they provide copies of the diplomatic notes confirming service of these judgments pursuant to § 1608(a). See ECF No. 12108 at 1–2, Ex. D; ECF No. 12111 at 1–2, Ex. D. The Court previously relied on this evidence to find that the Breitweiser and Ryan Plaintiffs satisfied both § 1610(c) requirements, and it thus granted them § 1610(c) certifications related to the E.D.N.Y. Bitcoin. See Bitcoin O&O at 10–11, 16–18; id., Appendix at 2 (entries #37, 38, 41, 42).

By contrast, the Havlish Plaintiffs omit key information. They attempt to rely on the Court's prior holding that they "properly served Iran in accordance with § 1608." ECF No. 12106 at 5 (citing Bitcoin O&O at 11–12, 15–16, 20). And they assert that a "reasonable period of time has elapsed" since the entry of their judgments and the proper service of these judgments on Iran (and in certain cases the Iranian Defendants). Id. (citing Bitcoin O&O at 20). They explain that these prior rulings apply to "all Havlish Judgment Creditors," id., but they neither define this group beyond references to the six member cases, id. at 1, nor specify which "valid, unsatisfied judgments" they wish to satisfy with the Tether Assets. ECF No. 12105 at 2. Moreover, the Havlish Plaintiffs do not provide any evidence confirming service of their judgments on Iran and, as applicable, the Iranian Defendants. Cf. Bitcoin O&O at 10–12; id., Appendix at 1–2, 3 (entries #1–8, 18–36, 43–46) (providing underlying judgments, service documents, and service dates for many of the Havlish Plaintiffs' default judgments). The pool of Plaintiffs and judgments for which the Havlish Plaintiffs now seek § 1610(c) certifications could,

3

in theory, differ from those addressed in the Bitcoin O&O. In that case, the Court's prior findings would not dispose of the pending motion. In short, without confirmation that the Court's prior notice and timing analysis in the Bitcoin O&O fully applies to their Tether Assets-related motion, the Court cannot grant the Havlish Plaintiffs' motion.

Accordingly, by Wednesday, June 24, 2026, the Havlish Plaintiffs must file a supplemental letter that addresses the following issue: Whether in its Bitcoin O&O, the Court reviewed the notice and timing requirements of § 1610(c) for *all* judgments and Plaintiffs referenced in the Havlish Plaintiffs' pending motion related to the Tether Assets. See ECF Nos. 12105, 12106. If the Havlish Plaintiffs seek § 1610(c) certifications for judgments or Plaintiffs *not* previously addressed in the Bitcoin O&O, however, the Havlish Plaintiffs must (1) list which Plaintiffs were not parties to the Bitcoin O&O, (2) specify which default judgments form the basis for their motion, and (3) file evidence that these default judgments were properly served on Iran (and the Iranian Defendants, as applicable) pursuant to § 1608 of the FSIA.

### CONCLUSION

The Court requests supplemental briefing on the Havlish Plaintiffs' pending motion for attachment and execution pursuant to 28 U.S.C. § 1610(c). See ECF No. 12105. The Havlish Plaintiffs must file a letter addressing the above issue by Wednesday, June 24, 2026.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      June 18, 2026
            New York, New York

4