**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

In re:

      **TERRORIST ATTACKS ON**
      **SEPTEMBER 11, 2001**


----------------------------------------------------------------X

          **03-MD-01570 (GBD)(SN)**

          <u>**OPINION & ORDER**</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/9/2026

**SARAH NETBURN, United States Magistrate Judge:**

This document relates to:

    <u>Ashton v. Al Qaeda Islamic Army</u>, No. 02-cv-06977
    <u>Burlingame v. Bin-Laden</u>, No. 02-cv-07230
    <u>Bauer v. Al Qaeda Islamic Army</u>, No. 02-cv-07236
    <u>Havlish v. Bin-Laden</u>, No. 03-cv-09848
    <u>Hoglan v. Islamic Republic of Iran</u>, No. 11-cv-07550
    <u>Ashton v. Kingdom of Saudi Arabia</u>, No. 17-cv-02003
    <u>Parker v. Islamic Republic of Iran</u>, No. 18-cv-11416
    <u>Ray v. Islamic Republic of Iran</u>, No. 19-cv-00012
    <u>Maher v. Islamic Republic of Iran</u>, No. 20-cv-00266

On April 24, 2026, the United States Department of Treasury, Office of Foreign Assets

Control ("OFAC") sanctioned and blocked two digital wallets containing approximately $344

million of Tether cryptocurrency tokens (the "Tether Assets") purportedly owned by the Central

Bank of Iran. <u>See</u> ECF No. 12105 at 1.[1] Because of the apparent link between the Tether Assets

and the Islamic Republic of Iran ("Iran"), certain plaintiffs in the above-captioned cases (the

"Plaintiffs") aim to satisfy their judgments from the Tether Assets. <u>See, e.g.</u>, <u>id.</u> at 3. These

Plaintiffs hold default judgments against Iran and, in some cases, political subdivisions,

individual officials, agencies, and instrumentalities of Iran. The Plaintiffs have thus filed three

---

[1] Unless otherwise noted, all ECF numbers refer to the main MDL docket, No. 03-md-01570.

motions[2] to permit attachment of, or execution on, the Tether Assets pursuant to 28 U.S.C. § 1610(c). See ECF Nos. 12105, 12108, 12111.

Section 1610(c) is a mandatory procedural hurdle for judgment holders wishing to pursue attachment and execution on the purported assets of their sovereign judgment debtors. In light of the Court's prior § 1610(c) decisions, and based on the Plaintiffs' proffered evidence, all of the Plaintiffs satisfy the notice and timing requirements of § 1610(c). The Court thus grants these Plaintiffs permission to pursue execution and attachment on the Tether Assets.

## BACKGROUND

The Court assumes familiarity with this multidistrict litigation and summarizes only the relevant procedural and factual background.

## I.    The Plaintiffs' Judgments and § 1610(c) Motions

The Plaintiffs sued Iran, as well as certain political subdivisions, individual officials, agencies, and instrumentalities of Iran (together, the "Iranian Defendants"),[3] for providing material support to Al Qaeda for the 9/11 Attacks. The Plaintiffs brought their claims under the Foreign Sovereign Immunities Act ("FSIA"). See 28 U.S.C. §§ 1605A(c), 1605B(b). Neither Iran nor the Iranian Defendants have ever appeared to defend themselves. The Court has thus

---

[2] These motions correspond to the three groups of Plaintiffs: (1) the "Havlish Plaintiffs" from the Havlish, Hoglan, Ray, Maher, Bauer, and Parker member cases, see ECF No. 12105 at 1; (2) the "Breitweiser Plaintiffs," all members of the same family and parties to multiple member cases, see ECF No. 12108 at 1; and (3) the "Ryan Plaintiffs," similarly all plaintiffs from the same family. See ECF No. 12111 at 1.

[3] The Iranian Defendants included (1) Ayatollah Ali Hoseini Khamenei, Supreme Leader of Iran; (2) Ali Akbar Hashemi Rafsanjani, Chairman, Expediency Discernment Counsel and former President of Iran; (3) Iran's Ministry of Information and Security; (4) the Islamic Revolutionary Guard Corps; (5) Iran's Ministry of Petroleum; (6) the National Iranian Tanker Corporation; (7) the National Iranian Oil Corporation; (8) the National Iranian Gas Company; (9) the National Iranian Petrochemical Company; (10) Iran Airlines; (11) Iran's Ministry of Economic Affairs and Finance; (12) Iran's Ministry of Commerce; (13) Iran's Ministry of Defense and Armed Forces Logistics; (14) the Central Bank of the Islamic Republic of Iran; and (15) Hezbollah. See ECF Nos. 2515 ¶¶ 36–65, 11459 at 4, 12154-1 (table citing ECF No. 11973 at 22–24, which lists underlying judgments and defendants).

repeatedly held that it has jurisdiction over all the defendants, and that the Plaintiffs have sufficiently established Iran's and the Iranian Defendants' liability for the entry of default judgments. See 28 U.S.C. § 1608(e). The attached Appendix lists the Plaintiffs' default judgments against Iran and the Iranian Defendants (the "Iran Judgments").[4] The Plaintiffs' filings provided the information for this Appendix. See ECF Nos. 12108 at 1–2 (Breitweiser), 12111 at 1–2 (Ryan), 12154-1 (Havlish).

The Plaintiffs' motions request that the Court (1) determine that "a reasonable period of time has elapsed" since entry of the Plaintiffs' Iran Judgments and service of notices of these judgments on the defendants, 28 U.S.C. § 1610(c); and (2) authorize the Plaintiffs to pursue attachment of, and execution on, the Tether Assets. The Court previously issued § 1610(c) orders for the Havlish and Hoglan Plaintiffs to pursue attachment and execution on other purportedly Iranian assets, including assets of the Central Bank of Iran (a.k.a. Bank Markazi) held by Clearstream Banking. See ECF Nos. 2778, 6134 (Havlish); ECF Nos. 6092, 6129 (Hoglan). More recently, the Court permitted many MDL plaintiffs to attach or execute on purportedly Iranian Bitcoin held in the U.S. District Court for the Eastern District of New York (E.D.N.Y.). See ECF No. 11973 (the "Bitcoin O&O") at 20. At the Court's request, the Havlish Plaintiffs confirmed that they seek orders related to the Tether Assets for "the same plaintiffs and judgments for which the Court previously issued Section 1610(c) orders concerning the Bitcoin."

---

[4] The Iran Judgments are, with one exception, all "final" for the purposes of judgment enforcement. See ECF Nos. 11878, 11879, 11940 (certifying Iran Judgments as final under Rule 54(b) and finding good cause for their registration in the E.D.N.Y.). One judgment for the Ray Plaintiffs partly resolves their claims against Iran. See ECF Nos. 10387 (order), 11129 (judgment). But the Ray Plaintiffs still gave proper notice to Iran of this judgment through diplomatic channels, as the Court discusses below. See Ray, No. 19-cv-00012, ECF No. 345; ECF No. 11465-4. And § 1610(c) does not require a final, non-appealable judgment—only "the passage of a reasonable time specifically tethered to the event of the entry of judgment." Owens v. Republic of Sudan, 141 F. Supp. 3d 1, 9 (D.D.C. 2015) (emphasis added) (finding requirements of § 1610(c) satisfied and authorizing plaintiffs' collection efforts). The Ray Plaintiffs may therefore proceed for both of their listed judgments.

ECF No. 12154 at 2; see ECF No. 12154-1 (listing judgments and relevant service information reviewed in the Bitcoin O&O). The Breitweiser and Ryan Plaintiffs likewise specified that they seek § 1610(c) orders for the judgments against Iran that the Court reviewed in the Bitcoin O&O. See ECF No. 12108 at 1–2, Ex. D (Breitweiser); ECF No. 12111 at 1–2, Ex. D (Ryan). As a result, the pending motions for the Tether Assets "do not include any other plaintiff or judgment" beyond those addressed in the Bitcoin O&O. ECF No. 12154 at 2.

## II.    The Tether Assets and Related Proceedings

The United States Government recently blocked the Tether Assets because of their connection to Iran. Specifically, the OFAC updated its "Specially Designated Nationals and Blocked Persons List" to add to the Central Bank of Iran's entry the addresses for two cryptocurrency wallets; these wallets exist on the Tron blockchain and hold the Tether Assets. See ECF No. 12106 at 2–3; U.S. Dep't of Treasury, Office of Foreign Assets Control, Iran-related Designations; Counter Terrorism and Iran-related Designation Update; Issuance of Iran-related General License (Apr. 24, 2026), https://ofac.treasury.gov/recent-actions/20260424. Tether is a company based in El Salvador that issued the cryptocurrency tokens comprising the Tether Assets. See ECF No. 12106 at 2. Tron is one of several blockchains on which transactions of Tether cryptocurrency are authorized to take place. See id. at 2–3. The Tether Assets are "stablecoin[s]," meaning that each token has a stated value of one U.S. dollar and is backed by U.S. dollar reserves. Id. at 3. As a result, some percentage of Tether's stated reserves (approximately $117 billion of U.S. Treasury Bills, according to the Plaintiffs) is held by custodian Cantor Fitzgerald LP in this judicial district. See id. The Plaintiffs therefore aver that the Tether Assets are "subject to the jurisdiction of U.S. courts." ECF No. 12109 at 4.

The Plaintiffs target the Tether Assets to potentially satisfy their Iran Judgments. They seek the Court's authorization under § 1610(c) to rely on their Iran Judgments in eventually

4

filing turnover actions or requests for writs of execution on the Tether Assets pursuant to the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-297, 116 Stat. 2322 (codified at 28 U.S.C. § 1610 note). See, e.g., ECF Nos. 12109 at 4, 12112 at 4 (noting that "TRIA § 201 provides the substantive authorization for execution notwithstanding any other provision of law"). Other judgment creditors of Iran have similar plans. Several pending proceedings in this judicial district relate to the Tether Assets and judgments obtained here or elsewhere. See, e.g., Benson v. Islamic Republic of Iran, No. 26-cv-02327 (MMG), ECF No. 61 at 4 (listing cases).

As an example, the Benson Plaintiffs are a group of victims of non-9/11 terrorist attacks, or their surviving family members, who filed an enforcement action here. They seek assets to satisfy their judgments against Iran obtained in the U.S. District Court for the District of Columbia. See id. at 1. As part of that effort, the Benson Plaintiffs obtained writs of attachment in this judicial district on the same Tether Assets that the MDL Plaintiffs identify. See ECF No. 12115 at 1; No. 26-cv-02327, ECF Nos. 22, 35 (writs). While the Benson Plaintiffs "take no position" on the Plaintiffs' pending § 1610(c) motions, they assert "priority over any claim that may ultimately be made" by the Plaintiffs. ECF No. 12115 at 2. As the Court explains below, the issue of priority to the Tether Assets is distinct from the Plaintiffs' compliance with § 1610(c). The Court thus makes no decision, and takes no position, on the priority issue.

## DISCUSSION

Property in the United States of foreign states is typically immune from attachment, arrest, and execution. 28 U.S.C. § 1609. This "execution immunity" extends to the property of foreign states' political subdivisions and agencies or instrumentalities. 28 U.S.C. § 1603(a); Walters v. Indus. & Com. Bank of China, Ltd., 651 F.3d 280, 287–88 (2d Cir. 2011). The property of Iran and the Iranian Defendants in the United States initially benefits from execution immunity. The FSIA, however, provides exceptions to this immunity under §§ 1610 and 1611.

28 U.S.C. §§ 1610, 1611; see Havlish v. Taliban, 152 F.4th 339, 352 (2d Cir. 2025) (reviewing the parts of the FSIA addressing execution immunity). The Plaintiffs contend that § 1610 authorizes their efforts to enforce the Iran Judgments.

**I.      Section 1610(c) Requires Only Procedural Determinations About Notice and Timing**

The Plaintiffs request orders pursuant to § 1610(c). This subsection concerns the procedures for parties relying on exceptions to execution immunity. It states:

> No attachment or execution . . . shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment and the giving of any notice required under section 1608(e) of this chapter.

28 U.S.C. § 1610(c). As the Court explained in the Bitcoin O&O, this section functions as a "mandatory" procedural checkpoint for judgment holders that intend to pursue attachment or execution on any foreign assets. Levin v. Bank of New York, No. 09-cv-5900 (RPP), 2011 WL 812032, at *7 (S.D.N.Y. Mar. 4, 2011); see Bitcoin O&O at 7. The analysis under § 1610(c) thus boils down to two requirements: (1) any notice required under § 1608(e) has been given, and (2) a reasonable period of time has elapsed since the foreign state received proper notice. See Bitcoin O&O at 7–8, 16; Warmbier v. Democratic People's Republic of Korea, No. 18-cv-977 (BAH), 2019 WL 11276677, at *1 (D.D.C. Apr. 9, 2019) (citing Baker v. Socialist People's Libyan Arab Jamahirya, 810 F. Supp. 2d 90, 101–02 (D.D.C. 2011)). Under § 1608(e), default judgment holders must serve their judgments on the foreign state, its political subdivisions, or its agencies and instrumentalities "in the manner prescribed for service in this section." 28 U.S.C. § 1608(e); see Bitcoin O&O at 6–7; Murphy v. Islamic Republic of Iran, 778 F. Supp. 2d 70, 71 (D.D.C. 2011). The Plaintiffs thus must have served their Iran Judgments pursuant to the hierarchies of service methods prescribed in FSIA § 1608(a) and (b). Then the Court must evaluate whether service was proper and sufficient time has passed since service was completed.

Additionally, while it may not be required at this stage, the Plaintiffs identify the Tether Assets as "the property on which [they] seek[] to execute." Walters, 651 F.3d at 291; see Bitcoin O&O at 8–9 (collecting cases and noting that "the caselaw is unclear on whether asset identification is required" for a § 1610(c) order prior to turnover). If and when the Plaintiffs file turnover motions to execute on the Tether Assets, these motions will involve deciding "whether the [Tether Assets] fall within specific exceptions to execution immunity enumerated in the FSIA or TRIA." Bitcoin O&O at 9 (citing Baker, 810 F. Supp. 2d at 102). By contrast, at this point in the judgment-enforcement process, the Court need not make any decisions about asset ownership, agency or instrumentality status, TRIA's requirements, or priority to the assets—all of which are reserved for later proceedings. See Bitcoin O&O at 18–19 (citing Agudas Chasidei Chabad of U.S. v. Russian Federation, 798 F. Supp. 2d 260, 271 (D.D.C. 2011)) (leaving to the E.D.N.Y. the "separate legal findings" on "the ultimate issue of whether the Plaintiffs will be able to execute on, or attach, the Bitcoin" in that district); id. at 20 (noting the factors relevant to a TRIA § 201 analysis but abstaining from any decision under the TRIA). Moreover, as the Court has stressed, § 1610(c) orders "are not writs of execution or attachment" for any assets. Bitcoin O&O at 9.

## II.    The Plaintiffs Establish the Requirements of § 1610(c)

At this stage, the Plaintiffs must establish only § 1610(c)'s two requirements: (1) that notice as required under § 1608(e) has been given, and (2) that a reasonable period of time has elapsed following entry of their Iran Judgments and the provision of proper notice. Because the Court previously granted the Plaintiffs § 1610(c) orders for other purportedly Iranian assets, the Court relies on these findings in addition to the Plaintiffs' pending motions. All Plaintiffs make the two required showings.

### A.   Iran and the Iranian Defendants Received Notice of the Plaintiffs' Judgments

The Plaintiffs must have notified Iran and the Iranian Defendants of their judgments pursuant to the FSIA's methods for serving foreign states and their agencies or instrumentalities. See 28 U.S.C. § 1608(a)(1)–(4) (foreign states and political subdivisions); id. § 1608(b)(1)–(3) (agencies or instrumentalities of foreign states). Because the Havlish and Hoglan Plaintiffs have judgments against both Iran and the Iranian Defendants, they needed to comply with the service provisions under both § 1608(a) and (b). All other Plaintiffs have judgments against Iran only, and § 1608(a) governed their service processes.

Iran and the Iranian Defendants received notice of the Plaintiffs' judgments consistent with § 1608. First, all of the Plaintiffs properly served Iran pursuant to § 1608(a)(4). The FSIA specifies four methods of serving foreign states (and their political subdivisions) in descending order of preference. See 28 U.S.C. § 1608(a). The Court previously found, for these same Plaintiffs and Iran Judgments, that the Plaintiffs properly served Iran via "diplomatic channels." 28 U.S.C. § 1608(a)(4); see Bitcoin O&O at 10–11. Under this method, the Plaintiffs delivered to the Clerk of Court copies of their default judgments against Iran and all other required documents, and the Clerk then dispatched these packages to the State Department. The State Department, through diplomatic channels, then effected service of these packages on Iran and provided the Clerk with certified copies of the diplomatic notes confirming that service. See ECF Nos. 12108-4 at 3 (Breitweiser), 12111-4 at 2 (Ryan), 12154-1 (Havlish, incorporating service documentation filed and reviewed for Bitcoin O&O). Service on a foreign state is "deemed to have been made . . . as of the date of transmittal indicated in the certified copy of the diplomatic note." 28 U.S.C. § 1608(c)(1). The Appendix lists, for each of the Plaintiffs' judgments against Iran, the relevant diplomatic notes and the transmittal date (Columns H and J).

Second, the Havlish and Hoglan Plaintiffs properly served the Iranian Defendants pursuant to § 1608(b)(3)(A). The Court has found multiple times that the Havlish and Hoglan Plaintiffs served their Iran Judgments on the Iranian Defendants through diplomatic channels (similar to the service on Iran for all other Plaintiffs). See Bitcoin O&O at 11–12; ECF Nos. 6134 (Havlish), 6129 (Hoglan); see also ECF No. 12154-1 (incorporating prior service information for the Havlish and Hoglan judgments). The Appendix lists, for the Havlish and Hoglan Plaintiffs' judgments against the Iranian Defendants, the relevant filings, including the diplomatic notes and the transmittal dates (Columns H and J).

### B.    A Reasonable Period of Time Has Elapsed Since Iran and the Iranian Defendants Received Notice of the Plaintiffs' Judgments

The Plaintiffs must next show that "a reasonable period of time has elapsed" since they gave notice to Iran and the Iranian Defendants of the Iran Judgments. See Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan, 134 F. Supp. 2d 528, 536 (S.D.N.Y. 2001) (for default judgments against foreign states, the period runs "from the time notice of the judgment was given to the foreign state under § 1608(e)"). Section 1610(c) provides no express guidance on assessing whether a period of time is "reasonable." The Court should, however, consider several factors: (1) "procedures, including legislation, that may be necessary for payment of a judgment by a foreign state, which may take several months"; (2) "representations by the foreign state of steps being taken to satisfy the judgment"; or (3) "evidence that the foreign state is about to remove assets from the jurisdiction to frustrate satisfaction of the judgment." Gadsby & Hannah v. Socialist Republic of Romania, 698 F. Supp. 483, 486 (S.D.N.Y. 1988) (citing H.R. Rep. No. 94-1487 at 30 (1976)). As the Court previously explained, periods between six weeks and eleven months are reasonable when "there is no evidence that the defendant has taken any

9

steps toward the payment of its debt." Ned Chartering & Trading, Inc. v. Republic of Pakistan, 130 F. Supp. 2d 64, 67 (D.D.C. 2001); see Bitcoin O&O at 16–17 (collecting cases).

A reasonable period of time has elapsed for all of the Iran Judgments. The Appendix lists the confirmed dates of service of the Iran Judgments on Iran and the Iranian Defendants. See Appendix, Column J. The time elapsed since these service dates ranges from approximately one year to over 13 years. See ECF No. 2737-9 (confirming service on Feb. 13, 2013 [Appendix, entry #1]); ECF No. 12154-1 (reaffirming service on May 19, 2025 [Appendix, entry #8]). Iran and the Iranian Defendants have neither appeared in this litigation nor voluntarily paid any money to these Plaintiffs—or any plaintiffs holding judgments against Iran related to its terrorist activities. See Bitcoin O&O at 17; In re Islamic Republic of Iran Terrorism Litig., 659 F. Supp. 2d 31, 85 (D.D.C. 2009); Estate of Heiser v. Islamic Republic of Iran, 807 F. Supp. 2d 9, 24 (D.D.C. 2011). The Plaintiffs thus plainly clear this timing hurdle.

CONCLUSION

The Court GRANTS the Plaintiffs' § 1610(c) motions. See ECF Nos. 12105, 12108, 12111. A reasonable period of time has elapsed since the entry of the Plaintiffs' Iran Judgments and the provision of notice of each judgment to Iran and the Iranian Defendants. The Plaintiffs are authorized, under 28 U.S.C. § 1610(c), to enforce the Iran Judgments by any lawful means, including the attachment of, or execution on, the Tether Assets. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 12105, 12108, and 12111.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:      July 9, 2026
            New York, New York

10

**APPENDIX: Tether Assets Section 1610(c) Motions and Iran Judgments**

| # | (A) Date of Tether Motion to Enforce Judgment | (B) ECF No. of Tether Motion to Enforce Judgment | (C) MDL Member Case in which Underlying Judgment Entered | (D) Date of Underlying Judgment | (E) ECF No. of Underlying Judgment | (F) Defendant Groups | (G) FSIA Service Method | (H) Documentation of Service of Underlying Judgment | (J) Date of Service of Underlying Judgment |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 6/9/2026 | 12105 | Havlish, 03-cv-09848 | 10/12/2012 | 2624 | Iran, Iranian political subdivisions | 1608(a)(4) | 2737-8, 2737-9 | 2/13/2013 |
| 2 | 6/9/2026 | 12105 | Havlish, 03-cv-09848 | 10/12/2012 | 2624 | Iranian agencies & instrumentalities | 1608(b)(3)(A) 1608(a)(4) | 2737-11 | 5/22/2013 |
| 3 | 6/9/2026 | 12105 | Hoglan, 11-cv-07550 | 10/31/2016 | 3384 | Iran, Iranian political subdivisions | 1608(a)(4) | 6022-5, 6022-6 | 10/18/2018 |
| 4 | 6/9/2026 | 12105 | Hoglan, 11-cv-07550 | 10/31/2016 | 3384 | Iranian agencies & instrumentalities | 1608(b)(3)(A) 1608(a)(4) | 5100, 5113-19, 6022-7, 6022-8, 6022-14 | 7/17/2019 |
| 5 | 6/9/2026 | 12105 | Hoglan, 11-cv-07550 | 2/26/2018 | 3905 | Iran, Iranian political subdivisions | 1608(a)(4) | 6022-5, 6022-6 | 10/18/2018 |
| 6 | 6/9/2026 | 12105 | Hoglan, 11-cv-07550 | 2/26/2018 | 3905 | Iranian agencies & instrumentalities | 1608(a)(4) 1608(b)(3)(A) | 5100, 5113-19, 6022-7, 6022-8, 6022-14 | 7/17/2019 |
| 7 | 6/9/2026 | 12105 | Ray, 19-cv-00012 | 2/19/2020 | 5985 | Iran | 1608(a)(4) | Ray 223, 11465-2 | 8/16/2020 |
| 8 | 6/9/2026 | 12105 | Ray, 19-cv-00012 | 9/20/2024 | 10387 | Iran | 1608(a)(4) | Ray 345, 11465-4 | 5/19/2025 |
| 9 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 3/8/2016 | 3226 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 10 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 9/12/2016 | 3341 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 11 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 10/31/2016 | 3387 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 12 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 11/29/2016 | 3399 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 13 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 11/30/2016 | 3402 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 14 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 12/1/2016 | 3403 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 15 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 12/5/2016 | 3408 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 16 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 1/30/2020 | 5771 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 17 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 1/30/2020 | 5772 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 18 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 1/30/2020 | 5773 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 19 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 1/30/2020 | 5775 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 20 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 1/30/2020 | 5776 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 21 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 1/30/2020 | 5779 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 22 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 1/30/2020 | 5780 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 23 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 1/30/2020 | 5781 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 24 | 6/9/2026 | 12105 | Bauer, 02-cv-07236 | 2/14/2020 | 5947 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 25 | 6/9/2026 | 12105 | Parker, 18-cv-11416 | 9/4/2019 | 5073 | Iran | 1608(a)(4) | 5766 | 12/18/2019 |
| 26 | 6/9/2026 | 12105 | Parker, 18-cv-11416 | 1/7/2020 | 5450 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |

**APPENDIX: Tether Assets Section 1610(c) Motions and Iran Judgments**

| # | (A) Date of Tether Motion to Enforce Judgment | (B) ECF No. of Tether Motion to Enforce Judgment | (C) MDL Member Case in which Underlying Judgment Entered | (D) Date of Underlying Judgment | (E) ECF No. of Underlying Judgment | (F) Defendant Groups | (G) FSIA Service Method | (H) Documentation of Service of Underlying Judgment | (J) Date of Service of Underlying Judgment |
|---|---|---|---|---|---|---|---|---|---|
| 27 | 6/9/2026 | 12105 | Parker, 18-cv-11416 | 1/30/2020 | 5775 | Iran | 1608(a)(4) | 6423-1 | 7/14/2020 |
| 28 | 6/9/2026 | 12105 | Maher, 20-cv-00266 | 3/8/2016 | 3226 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 29 | 6/9/2026 | 12105 | Maher, 20-cv-00266 | 10/31/2016 | 3387 | Iran | 1608(a)(4) | Bauer 36 | 9/19/2017 |
| 30 | 6/9/2026 | 12105 | Maher, 20-cv-00266 | 2/21/2020 | 5999 | Iran | 1608(a)(4) | Maher 14, 11819-1, 11895 | 10/27/2020 |
| 31 | 6/9/2026 | 12105 | Maher, 20-cv-00266 | 3/6/2020 | 6036, 6201 | Iran | 1608(a)(4) | Maher 14, 11819-1, 11895 | 10/27/2020 |
| 32 | 6/10/2026 | 12108 | Ashton, 02-cv-06977 Burlingame, 02-cv-7230 Ashton, 17-cv-02003 Ryan, 20-cv-00266 **(Breitweiser Plaintiffs)** | 3/18/2016 | 3226 | Iran | 1608(a)(4) | 4107, 11892-1, 12108-4 | 12/6/2018 |
| 33 | 6/10/2026 | 12108 | Ashton, 02-cv-06977 Burlingame, 02-cv-7230 Ashton, 17-cv-02003 Ryan, 20-cv-00266 **(Breitweiser Plaintiffs)** | 5/29/2018 | 4011 | Iran | 1608(a)(4) | 4107, 11892-1, 12108-4 | 12/6/2018 |
| 34 | 6/10/2026 | 12111 | Ashton, 02-cv-06977 Bauer, 02-cv-07236 Ashton, 17-cv-02003 Ryan, 02-cv-00266 **(Ryan Plaintiffs)** | 3/18/2016 | 3226 | Iran | 1608(a)(4) | 11712-3, 12111-4 | 10/27/2020 |
| 35 | 6/10/2026 | 12111 | Ashton, 02-cv-06977 Bauer, 02-cv-07236 Ashton, 17-cv-02003 Ryan, 02-cv-00266 **(Ryan Plaintiffs)** | 2/21/2020 | 5999 | Iran | 1608(a)(4) | 11712-3, 11894-1, 12111-4 | 10/27/2020 |